**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| **ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD., AND COMFORT BEDDING COMPANY LIMITED,** | ) ) ) ) ) ) |
| **Plaintiffs,** | ) ) |
| **v.** | ) ) |
| **UNITED STATES,** | ) ) |
| **Defendant,** | ) ) |
| **and** | ) ) **Ct. No. 21-00283** |
| **BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,** | ) ) ) ) ) ) ) ) ) ) |
| **Defendant-Intervenors.** | ) ) |

## REPLY TO DEFENDANT'S PARTIAL OPPOSITION TO PLAINTIFFS' MOTION FOR STATUTORY INJUNCTION

Plaintiffs Ashley Furniture Industries, LLC ("AFI"), Ashley Furniture Trading Company ("AFTC"), Wanek Furniture Co., Ltd. ("Wanek"), Millennium Furniture Co., Ltd. ("Millennium"), and Comfort Bedding Company Limited ("Comfort Bedding") (collectively, "Ashley Respondents"), hereby respond to the partial opposition of the Defendant United States

to the Ashley Respondents' motion for statutory injunction.  See Def.'s Partial Opp'n To Pls.' Mot. For Statutory Inj. (Aug. 20, 2021), ECF No. 27 ("Def.'s Opp'n").

The disagreement between the Ashley Respondents and the United States involves one main issue: whether the Ashley Respondents deserve an "open-ended" injunction that would cover their future entries made after the first administrative review period until this litigation and any appeals are resolved.  As fully explained in their Motion for Statutory Injunction, the Ashley Respondents respectfully request that the Court grant the injunction because they are entitled to an injunction that would ensure the entries are properly liquidated in accordance with the Court's decision at the conclusion of this litigation, and any appeals therefrom. See Mot. For Statutory Inj. (July 30, 2021), ECF No. 20 ("Mot. for Statutory Inj.).

While the United States consented to a statutory injunction covering the Ashley Respondents' unliquidated entries through the end of the first administrative review period, it does not agree to the type of injunction sought by the Ashley Respondents.  See Def.'s Opp'n at 2-3. Specifically, the United States claims that the Ashley Respondents have not alleged sufficient facts that they will suffer irreparable harm from a statutory injunction that ends with the first administrative review period.  See id. at 3.

The Ashley Respondents disagree.  The Ashley Respondents are faced with irreparable harm unless the Court grants an injunction that continues while the litigation is ongoing.  Parties in this action are well aware that the timeline for litigating a case such as this one can be lengthy, and it is not uncommon for a case to take several years before reaching a final judgment, including any appeals.  By issuing the requested injunction, this Court will ensure that the Ashley Respondents' entries are properly liquidated in accordance with its final judgement, including any

appeals, and will protect the Ashley Respondents' right to realize the benefit of any final decision in their favor.

For the reasons explained below, the Ashley Respondents respectfully request that this Court grant the injunction sought by the Ashley Respondents that covers all entries through final judgment, including all appeals.

## ARGUMENT

I.      **The Ashley Respondents Have Demonstrated that They Will Suffer Irreparable Harm Absent an Injunction Covering All Entries Made During the Pendency of this Litigation**

Irreparable harm is the most determinative factor in determining whether to issue a statutory injunction to a movant.  See Qingdao Taifa Group Co. v. United States, 581 F.3d 1375, 1378–79 (Fed. Cir. 2009)).  ("A request for a preliminary injunction is evaluated in accordance with a 'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits he need show in order to get the injunction") (quoting Kowalski v. Chi. Tribune Co., 854 F.2d 168, 170 (7th Cir. 1988).  Following a recent telephone conference with this Court, the Ashley Respondents recognize that the test of whether the movant will suffer irreparable harm absent an injunction is the factor that is often scrutinized by the Court.  As explained more thoroughly below, the Ashley Respondents have demonstrated irreparable harm sufficient to support an injunction covering all of its entries during the pendency of this litigation and any appeals therefrom.

It is well established that "{t}he danger of liquidation pending judicial review of an investigation constitutes irreparable harm. . . . {T}he procedural complexities in the administration of antidumping and countervailing duty orders renders the threat of irreparable harm sufficiently imminent to warrant injunctive relief in connection with judicial review of an investigation." Mid

Continent Steel & Wire, Inc. v. United States, __ CIT __, __, 427 F. Supp. 3d 1375, 1382 (2020) (emphasis added) (internal citation omitted).  "Congress considered an injunction against liquidation to be so significant to the judicial review of a determination in an {unfair trade} proceeding that it expressly provided the opportunity for such an injunction in 19 U.S.C.S. § 1516a(c)(2)."  Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. v. United States, __ CIT __, 61 F. Supp. 3d 1358, 1365 (2015) (quoting Union Steel v. United States, 33 CIT 614, 625, 617 F. Supp. 2d 1373, 1383 (2009)).  The action in this proceeding is not your typical case.  As explained in the Motion for Statutory Injunction, there is a high probability that the Department of Commerce ("Commerce") will recalculate a zero or de minimis dumping margin for Wanek, Millennium, and Comfort Bedding, which would result in the revocation of the antidumping duty order on mattresses from Vietnam ("AD Order") with regard to the Ashley Respondents.  See Mot. for Statutory Inj. at 7.

The Ashley Respondents' assertion on irreparable harm is not inappropriate or even unusual.  In fact, the Court's Rules require that an injunction is sought within 30 days of the complaint and therefore always necessitate consideration of future unknown events.  See USCIT R. 56.2(a).  As such, the evaluation of the irreparable harm prong is always made at the outset of the litigation.  The threat of automatic liquidation at the 144.92 percent rate determined by Commerce in the final determination applies to all of the Ashley Respondents' entries until this litigation is ultimately resolved and that threat only increases as the litigation carries on.  The following are scenarios that could occur during the course of this litigation that could trigger automatic liquidation for Ashley Respondents' entries: 1) an administrative review is not requested or initiated, 2) an administrative review is requested and then withdrawn within 90 days of initiation, resulting in termination of the review, 3) an administrative review is conducted and is

4

not subject to litigation or 4) an administrative review is conducted and is subject to litigation and no injunction is sought.  As the years go on, more review periods pile up and the scenarios under which Ashley's entries could liquidate multiply.   In other words, the Ashley Respondents' entries are threatened with liquidation at any time during these periods.[1] The United States assumes that an administrative review will be conducted, and an injunction will be sought for each period of review.  It is not reasonable to make such an assumption at this time.

Under 19 U.S.C. § 1516a(c)(2), this Court has the authority to grant an "open-ended injunction" and enjoin the Ashley Respondents' liquidation until this litigation is resolved.  The statute does not limit the period of injunction sought by a movant.  See id.  Regardless of the result of an administrative review and ensuing appeal, if the Ashley Respondents prevail on the instant appeal from the investigation, then liquidation would occur pursuant to the injunction in this and only this appeal pursuant to 19 U.S.C. § 1516a(c)(2), rendering all subsequent reviews, non-reviews, appeals from reviews, etc., moot as a matter of law.  This is why an injunction in an appeal of an investigation has ongoing prospective effect and therefore differs from and is wholly independent from injunctions for any discrete review periods.

The option to request an administrative review lies with domestic producers, importers, wholesalers, and exporters/producers that are covered by the AD order.  See 19 C.F.R. § 351.213(b)(1).  While the Ashley Respondents acknowledge that antidumping assessment rates are not settled until the completion of the first administrative review, no one can predict what the future might hold for an administrative review that will not begin for months from the date of this filing.   "Although Commerce administratively suspends liquidation of entries during

---

[1] These scenarios presume CBP liquidation by affirmative act.  CBP also sometimes liquidates entries prematurely that are or should be suspended by operation of law, awaiting instructions from Commerce.

{administrative reviews}, not all entities seek {administrative reviews}." <u>Mid Continent</u>, __ CIT at __, 427 F. Supp. 3d at 1382.   Parties often chose not to undergo a lengthy and burdensome administrative review, particular mandatory respondents that must expend the most time and resources.   Here, the Ashley Respondents believe that they have a high chance in succeeding in the AD Order being revoked as to their shipments.   "Where no {} review request based on substantive grounds has been made, the statute does not require a party to make a {review} request merely to provide a jurisdictional basis for the granting of meaningful relief." <u>Ipsco, Inc. v. United States</u>, 12 CIT 676, 681, 692 F. Supp. 1368, 1373 (1988).   The mere possibility of an "{a}utomatic liquidation in the midst of this complex litigation threatens the purpose of the litigation and is contrary to Congress' intent of having duties imposed according to law." <u>Sonco Steel Tube Div., Ferrum, Inc. v. United States</u>, 12 CIT 990, 996, 698 F. Supp. 927, 932 (1988).   Thus, without a Court-ordered injunction, the Ashley Respondents would be irreparably harmed if the entries are liquidated at the 144.92 percent dumping margin during the pendency of this action, which in and of itself challenges the legal basis of the AD Order and the 144.92 percent dumping margin applicable to the Wanek, Millennium, and Comfort Bedding.

In its response, the United States argues that the Ashley Respondents are not entitled to a preliminary injunction covering entries made after the first administrative review period because they have not established that it will suffer irreparable harm. <u>See</u> Def's Opp'n at 7.   This argument is meritless because the injunctive relief afforded by the statute does not differentiate in requesting an injunction between investigations or administrative review proceedings. <u>See</u> 19 U.S.C. § 1516a(c)(2).   "{The statute} plainly grants a plaintiff statutory right to seek an injunction against liquidation of entries covered by a determination of Commerce, <u>including</u> a determination of the final results of an administrative review." <u>SKF USA Inc. v. United States</u>, 33 CIT 370, 385, 611

F. Supp. 2d 1351, 1364 (2009) (emphasis added).  The Ashley Respondents are appealing the investigation determination of Commerce.  There is no basis for the United States to argue for limiting the injunction only to the first period of review while in fact there is no dividing line between injunctions sought during an appeal of Commerce's final determination in an investigation or final result in an administrative review.

The United States' citation to Sandoz Chemicals Corp. v. United States, 17 CIT 1061, 1064 (1993) to argue that the threat of liquidation to the Ashley Respondents does not constitute irreparable harm is unavailing.  See Def.'s Opp'n at 8-9.  Sandoz is about an appeal of a negative injury determination by the U.S. International Trade Commission.  The Court in Sandoz explicitly stated that "in cases involving negative injury determinations, a party seeking a preliminary injunction must submit actual evidence of irreparable harm rather than relying on the mere fact of liquidation." Id. at 1063.  The action in this proceeding is not such case.

The United States criticized the Ashley Respondents' reliance on Husteel Co. v. United States, __ CIT __, 34 F. Supp. 3d 1355 (2014) in its response to the Motion for Statutory Injunction. See Def.'s Opp'n at 13.  In Husteel, the Court issued an injunction against liquidation of future entries when plaintiff in that case challenged Commerce's final determination in an investigation.  See id. at __, 34 F. Supp. at 1358.  The defendant-intervenors then argued "that there is no immediate threat of liquidation, and thus there is no irreparable harm that is imminent to justify an injunction." Id. at __, 34 F. Supp. 3d at 1360.  The Court in Husteel recognized the importance of issuing an injunction on plaintiff's future entries until litigation is resolved.  See id. at 1361-62. Defendant-intervenors' reason for opposition in Husteel is similar to the United States' argument in this action.  In Husteel, the United States argued that the motion for statutory injunction was premature because there was no threat of liquidation faced by the plaintiff.   See

7

id., 34 F. Supp. 3d at 1360; Def.'s Opp'n at 15.  The Court rejected this argument, explaining that the prematurity argument might have "greater force" during the time when the statute requires administrative reviews to be conducted every year as was the case under the prior law. See Husteel, at __, 34 F. Supp. 3d at 1360.   Under current law, administrative reviews are only required if an interested party request one.  See id.  When no review is requested, entries are liquidated at the cash deposit rate without further notice.  See id. (citing 19 C.F.R. § 351.212(c)).  The threat of automatic liquidation is a concern for the Ashley Respondents because, absent a review, U.S. Customs and Border Protection ("CBP") may liquidate the Ashley Respondents' entries without further notice at any time during this litigation.  See Mot. for Statutory Inj. at 5-6 (stating that AFI's and AFTC's entries may be subject to automatic liquidation at 144.92 percent if Wanek, Millennium, and Comfort Bedding do not participate in the first administrative review).

Likewise, the United States' reliance on Committee Overseeing Action for Lumber International Trade Investigations or Negotiations v. United States, __ CIT __, 393 F. Supp. 3d 1271 (2019) ("Lumber") to argue that liquidation does not constitute irreparable harm is unpersuasive.  See Def.'s Opp'n at 4.  In Lumber, the Court determined that liquidation of entries does not constitute irreparable harm in an action brought by a domestic producer to Commerce's final results.  See Lumber, __ CIT at __, 393 F. Supp. 3d at 1279-80.   "Liquidation of entries . . . generally does not constitute irreparable harm in a challenge brought by a domestic producer to an investigation determination." Id. at __, 393 F. Supp. 3d at 1278 (emphasis added).  This, again, is different from the action in this proceeding where foreign exporters/producers are acting as plaintiffs in challenging Commerce's final determination.  The Court in Lumber recognized this fact and explained that a foreign exporter would have a "direct financial stake in the rate at which entries would be liquidated." Id. at __, 393 F. Supp. 3d at 1279.  Contrary to the United States'

claim, therefore, the <u>Lumber</u> case supports the Ashley Respondents' position by recognizing that the threat of liquidation does indeed constitute irreparable harm for foreign exporters/producers such as Wanek, Millennium, and Comfort Bedding.

Given the circumstances, current statutory structure and case precedents discussed above, the Ashley Respondents have demonstrated a presently existing and actual threat of irreparable harm in support of its Motion of Statutory Injunction covering all entries until this litigation and any appeals thereof are resolved.

## II.   The United States Is Incorrect in its Statements that the Court has Consistently Limited Statutory Injunctions to Only the First Administrative Review Period

The United States argues that it has consistently opposed open-ended injunctions in recent years and an open-ended injunction sought by the Ashley Respondents is not consistent with the type of injunctions that the Court has issued in other cases involving investigations. <u>See</u> Def.'s Opp'n at 5-6.  The United States is mistaken.  There are examples where the United States has consented to, and the Court has granted open-ended injunctions.  <u>See</u> Order, <u>Zhejiang Native Produce & Animal By-Products Imp. & Exp. Corp. et. al. v. United States</u>, Ct. No. 02-00064,  ECF No. 52 (Apr. 27, 2015) (granting an injunction for entries that were entered "on or after May 11, 2001"); <u>Husteel</u>, __ CIT __, 34 F. Supp. 3d at 1358 (indicating that the United States consents to the motion for preliminary injunction);  <u>Ugine-Savoie Imphy v. United States</u>, 24 CIT 1246, 1246, 121 F. Supp. 2d 684, 685 (2000) (where both the United States and Court consented to the injunction to liquidate any and all unliquidated entries of stainless-steel wire rod from France); Order, <u>Baroque Timber Industries (Zhongshan) Co., Ltd. et al v. United States</u>, Ct. No. 12-00007, ECF No. 163 (Apr. 23, 2014) (providing that subject entries in this proceeding are to be liquidated in accordance with the final court decision).

In 2014, for example, the Court granted an open-ended injunction to plaintiff-intervenor Fine Furniture (Shanghai) Ltd. covering entries that were entered on or after May 26, 2011, until the litigation challenging the AD order on multilayered wood flooring from China is resolved.  See Order, Changzhou Hawd Flooring Co., Ltd., et. al. v. United States, Ct. No. 12-00020, ECF No. 48 (May 20, 2014).   The United States opposed plaintiff-intervenor's motion for preliminary injunction in that case.  See Def.'s Resp. in Opp'n to Plaintiff-Intervenor's Mot. for Prelim. Inj., Changzhou Hawd Flooring Co., Ltd., et. al. v. United States, Ct. No. 12-00020, ECF No. 47 (May 19, 2014).  Despite the United States' opposition, the Court in Changzhou Hawd granted the injunction sought by the plaintiff-intervenor because the Court found the plaintiff-intervenor met the "good cause" standard.  There, as here, at stake was possible revocation of the order and, as history later showed, revocation as to Fine Furniture did in fact occur.  See Changzhou Hawd Flooring Co. v. United States, ___ CIT ___, 324 F. Supp. 3d 1317, 1321 (Ct. Int'l Trade 2018), aff'd 947 F.3d 781 (Fed. Cir. 2020). Without the open-ended injunction in Changzhou Hawd, the Court would have had to issue a new injunction at least five times, starting from when the commencement of the litigation before the Court in 2014 until the U.S. Court of Appeals for the Federal Circuit issued its decision in 2020.  This process would involve, five separate instances, where: 1) the parties had to file briefs in favor and in opposition to an injunction, 2) the Court had to consider the parties' positions and issue an order, 3) Commerce had to issue instructions to CBP and 4) CBP had to implement such instruction (and implement them correctly in every instance).  The Court in Changzhou Hawd realized that by granting the open-ended injunction, all parties would save a significant amount of time, resources and, more importantly, saving of any inadvertent errors that would result from the administration of the forgoing processes.  Recently in 2020, the Court in Mid Continent Steel & Wire, Inc. v. United States, ___ CIT ___, 427 F. Supp. 3d 1375

(2020) granted an open-ended injunction covering entries that were subject to the AD order on steel nails from Taiwan from May 20, 2015, until a final court decision is reached. Like this action, the plaintiffs in Mid Continent challenged Commerce's final determination. Mid Continent, __ CIT at __, 427 F. Supp. 3d at 1382. The United States argues that the Ashley Respondents' reliance to Mid Continent in their Motion for Statutory Injunction is irrelevant because the injunctions in that case were issued several years after litigation commenced. See Def.'s Opp'n at 12. This fact is immaterial. The Court in Mid Continent discussed and recognized the importance of issuing a statutory injunction that would cover all entries made on or after a specific date through the pendency of litigation. Indeed, the Court confirmed that "the danger of liquidation becomes sufficiently imminent when an ADD order is published." Mid Continent, __ CIT __, 427 F. Supp. 3d at 1383. The Court further explained its reasoning that issuing the injunction was "'proper at this time even if the threat of injury is not 'imminent' in the same sense it is following an administrative review' because it would ensure that movants would receive the 'full benefit' of their judicial challenge and possibly 'obviate' the need for future administrative reviews." Id. (citing Husteel, __ CIT __, 34 F. Supp. 3d at 1360). Thus, the United States' attempt to characterize the Court's practice in issuing injunctions is misplaced. The United States may have a recent practice of objecting to open-ended injunctions, but the Court regularly overrules those objections and grants plaintiffs' motions for open-ended injunctions where the facts and law require it, as is the case here. There is no established practice for the United States or the Court to rely upon in opposing or granting injunctions as each case is distinct and presents a unique set of facts. As discussed, there is in fact, a pattern in the precedent of the Court issuing open-ended injunctions where plaintiffs establish that they have satisfied good cause and the Court's four factors in support of granting statutory injunctions. While the United States continues to disagree,

the Ashley Respondents respectfully submit that they are entitled to receive the open-ended injunction sought.

## III.    The Procedural Requirements to Renew Injunctions Constitute Irreparable Harm

The United States only consents to an injunction that will cover the Ashley Respondents' entries through the end of the first administrative review.  See Def.'s Opp'n at 2-3.  If the injunctions need to be renewed, it proposes that the Ashley Respondents petition the Court for a renewal of the injunction, which, according to the United States, would require the Ashley Respondents to exercise basic due diligence to coordinate with Commerce in updating Form 24 by adding new dates and asking the Court to modify the existing injunctions.  See Def.'s Opp'n at 17.  The United States characterizes these efforts as "an inconvenience," id., but it is rather a certainty that it would require the involvement of the Ashley Respondents, this Court, Commerce, and CBP to renew the injunction every year, potentially for many years.

Indeed, the procedural process of filing injunctions on Form 24 was recently established by the Court in February 2018.  The form was intended to streamline the process of seeking a Court-ordered injunction.  See YC Rubber Co. (N. Am.) LLC v. United States, __ CIT __, 415 F. Supp. 3d 1240, 1243 n.2 (2019).  The United States' approach in renewing injunctions, however, appears nowhere in the Court's rules.  The Court rules establish that within 30 days after service of the complaint, the injunction must be filed with the Court, except where good cause is shown. See USCIT R. 56.2(a).  This language sets a deadline for "statutory motions for injunctions, not define or limit the scope of injunctive relief available.  {It} does not limit the entries to be enjoined to those referenced in the complaint."  Nexteel Co. v. United States, __ CIT __, 393 F. Supp. 3d 1287, 1290 (2019) (emphasis added).  The Court's rules do not create a specific process to renew injunctions.  The Ashley Respondents should not be subject to this ambiguous process when the

law provides a right to a statutory injunction on liquidation of all its entries made during the pendency of this litigation.

The United States seems to make premature promises that it will consent to modification of the injunction in the future if entries from subsequent reviews become subject to liquidation. See Def.'s Opp'n at 13 ("Even if this litigation is not complete {}, the Government would consent to modification of the injunction in the future if entries from subsequent reviews become subject to liquidation."). The United States, however, cannot guarantee this promise, let alone promises as to each remedial step the Ashley Respondents would be required to take to reverse a premature liquidation. Delaying the injunction to the Ashley Respondents  increases the risk of erroneous liquidation which ultimately will expend time and resources for all parties involved. In Yancheng Baolong, the Court held the United States in contempt of the Court's preliminary injunctions when CBP liquidated entries that were subject to the preliminary injunction during the pendency of the litigation. See Yancheng Baolong Biochemical Prods. Co. v. United States, 27 CIT 992, 277 F. Supp. 2d 1349, 1350 (2003). There, the United States argued that "because liquidation was not enjoined pending appeal, Commerce was acting within its powers to instruct Customs to liquidate the subject entries on November 1, 2002, and for the liquidations to take place in January 2003." Id. at 27 CIT at 995, 277 F. Supp. 2d at 1352. Between January 3, 2003 and January 17, 2003, CBP liquidated twenty eight of plaintiff's entries. See id. The Court ultimately found that the preliminary injunction suspended liquidation throughout the appeals process and further determined that

> Until there is a 'final court decision' within the meaning of {19 U.S.C. § 1516a(e)}, the liquidation of the entries remains suspended. As the case law supports, in order to give full effect to § 1516a(e), liquidation must remain suspended under a preliminary injunction issued pursuant to § 1516a(c)(2) until the parties have exhausted their appeals.

Id. at 27 CIT at 1002, 277 F. Supp. 2d at 1358.

The Court's determination in Yancheng Baolong is compelling because it shows the importance for an injunction that would cover the Ashley Respondents' entries until this litigation, including any appeals, is resolved.  By ordering an injunction against the liquidation of Ashley Respondents' entries, the risk of any potential errors or miscommunications as to liquidating the Ashley Respondent' entries can be avoided. In sum, granting the injunction to the Ashley Respondents will not only save all parties' time and energy but will also be effective as to avoid the unnecessary errors or miscommunication in the future.

## IV.   Ashley Respondents Have Demonstrated the Likelihood of Success on the Merits

Ashley Respondents have raised several challenges to Commerce's final determination of the AD Order.  As provided in Section I, if these challenges are successful, it would result in a zero or de minimis dumping margin for Wanek, Millennium, and Comfort Bedding and the revocation of the AD Order as to these exporters/producers.   "A request for a preliminary injunction is evaluated in accordance with a 'sliding scale' approach: the more the balance of irreparable harm inclines in the plaintiff's favor, the smaller the likelihood of prevailing on the merits {is needed} in order to get the injunction." Qingdao Taifa Grp. Co. v. United States, 581 F.3d 1375, 1378-79 (Fed. Cir. 2009).   As discussed extensively in Section I above, Ashley Respondents have demonstrated substantial risk of irreparable harm absent the injunction covering all of its entries until the litigation is resolved.  Specifically, the United States "do not concede that {Ashley Respondents have} demonstrated that it is likely to prevail on the merits."  Def.'s Opp'n at 16.  Thus, given Ashley Respondents have shown irreparable harm absent the injunction from the Court, consistent with the Court's decision in Qingdao Taifa, there is a lower burden in showing likelihood of success on the merits, and subsequently Ashley Respondents have demonstrated a

likelihood of success on the merits sufficient to satisfy the Court's standard in granting the statutory injunction.

## V. Ashley Respondents Have Demonstrated the Balance of Equities Weigh in Their Favor

The United States argues that Ashley Respondents "failed to articulate any harm from an injunction with a specific end date." Def.'s Opp'n at 16. To the contrary, the Ashley Respondents have established that a limited period injunction creates a foreseeable harm to their interests in the form of erroneous liquidation of their entries prior to the conclusion of this litigation. Further, the United States has not established that injunction renewal process will be as simple as updating the Form 24 and adding new dates year after year. See id. at 17. The Ashley Respondents are also faced with the risk of possible errors that may happen during this administrative procedure, such as miscommunication between Commerce and CBP that may result in early liquidation of Ashley Respondents' entries during the course of this litigation, or the outright inadvertent liquidation of entries by CBP that sometimes occurs contrary to suspension of liquidation by operation of law. These reasonably foreseeable errors can be prevented by the Court issuing an open-ended injunction covering all of Ashley Furniture's entries until the pendency of litigation.

The United States further argues that an injunction covering entries made after the first period of review "could hamper Commerce's ability to perform its statutory mandate and unnecessarily interfere with matters that are within the province of the Executive Branch." Id. This argument lacks merit. The United States fails to provide any justification or explanation how an open-ended injunction could hamper its ability to perform its statutory mandate. "Congress considered an injunction against liquidation to be so significant to the judicial review of a determination in an unfair trade proceeding that it expressly provided the opportunity for such an injunction in 19 U.S.C.S. § 1516a(c)(2)." Zhejiang Native Produce, __ CIT at __ , 61 F. Supp. 3d

at 1365 (citing <u>Union Steel v. United States</u>, 33 CIT 614, 625, 617 F. Supp. 2d 1373, 1383 (2009)). Congress also recognized that "{t}he harm that flows from liquidation is irreparable; there seems to be no harm at all to the government or domestic parties stemming from an injunction on liquidation; and, ultimately, ensuring duties are imposed only when warranted is within the public's interest." <u>Mid Continent,</u> __ CIT at __, 427 F. Supp. 3d at 1385 n.12.  The United States has further indicated that it will consent to further extensions of injunctions against liquidation in this litigation, thus the United States cannot claim that issuing open-ended injunction to Ashley Respondents would hamper Commerce's ability to perform its functions.  Moreover, the gravamen of the Ashley Respondents' appeal is that there should be no antidumping order with respect to the Ashley Respondents, and that therefore all subsequent actions by the Executive Branch are unlawful.  To the extent that an injunction issued in this context may have some constraint on future actions of Commerce is not harm to the government but rather the entire point of the injunction.  Thus, the balance of equities weighs in the Ashley Respondents favor and support the injunction that would cover all of their entries until the litigation is resolved.

## VI.    The Ashley Respondents Have Demonstrated that the Public Interest Favors an Injunction that Covers All of Ashley Respondents' Entries.

It is imperative that the Ashley Respondents' entries are liquidated with the correct rate. An open-ended injunction protects this interest in ensuring the correct rate will be applied to Ashley Respondents' entries.  The United States argues that the Ashley Respondents' right to a meaningful judicial review is not threatened because Ashley Furniture can petition the Court for an extension of the injunction in the future.  <u>See</u> Def.'s Opp'n at 17.  This argument is unavailing. While it is true that Ashley Respondents can petition the Court to extend the injunction, the Ashley Respondents have a right in seeking the injunction they deserve now, at a time required by the Court's Rules, rather than going to the petition the Court year after year.   Further, in refusing to

consent to the open-ended injunction now, and drawing an arbitrary line at the Court's jurisdiction to enforce a future judgment in the Ashley Respondents' favor, the United States is keeping the option open that it will not consent in the future.  In seeking to renew the injunction, the Ashley Respondents will have the burden again to prove they meet the "good cause" standard to renew the injunctions.  See USCIT R. 56.2(a).  If the United States does not consent to the Ashley Respondents' future injunction, the Ashley Respondents will have to spend considerable resources in drafting another motion for statutory injunction.  See Practice Cmt. to USCIT R. 56.2(a) ("Form 24 may be filed with the Court in lieu of a motion where the parties have consented to the terms of the statutory injunction as set forth in the form.").  While there are indeed future events that are not predictable in the complicated intersection of the antidumping laws and CBP's role in suspending and liquidating entries, one thing that is 100 percent predictable is that renewing an injunction year after year would waste the time and resources of the Ashley Respondents and the Court.  It is, therefore, both in the public interest and in conformity with the objectives of USCIT R. 1 for this Court to grant the Ashley Respondents an injunction covering all of Ashley Respondents entries during the pendency of litigation.

## CONCLUSION

For these reasons, the Ashley Respondents respectfully request that their Motion for Statutory Injunction be granted because Plaintiffs have established that they meet the four-factor test in supporting the requested statutory injunction.  The Ashley Respondents respectfully request that this Court enter the proposed order enjoining liquidation of all Ashley Respondents' entries subject to the AD Order during the pendency of this litigation and any subsequent appeals.

Respectfully submitted,

Dated: <u>September 16, 2021</u>

<u>/s/ Kristin H. Mowry</u>
Kristin H. Mowry
Jeffrey S. Grimson
Sarah M. Wyss
Wenhui (Flora) Ji
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW
Suite 810
Washington, DC 20015
202-688-3610 (ph)
*Counsel to Ashley Furniture Industries, LLC, Ashley Furniture Trading Company, Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd., and Comfort Bedding Company Limited*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the attached Reply to Defendant's Partial Opposition to Plaintiffs' Motion for Statutory Injunction of Ashley Furniture Industries, LLC, Ashley Furniture Trading Company, Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd., and Comfort Bedding Company Limited, filed September 16 2021, contains 5,452 words, including footnotes, and excluding this certificate and counsel's signature block, according to the word count function of the word-processing system used to prepare this brief, and therefore complies with the maximum 7,000 word count limitation for reply briefs set forth in the Court's Standard Chambers Procedures.

/s/ Kristin H. Mowry