**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |  |
|---|---|---|
| ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| UNITED STATES, | ) ) | |
| Defendant, | ) ) ) | Nonconfidential Version Ct. No. 21-00283 |
| and | ) ) | |
| BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendant-Intervenors. | ) ) ) | |

**REPLY BRIEF IN SUPPORT OF RULE 56.2 MOTION FOR JUDGMENT UPON THE AGENCY RECORD OF PLAINTIFFS ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED**

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Jacob M. Reiskin
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
202.688.3610 (ph)
202.595.8968 (fax)
trade@mowrygrimson.com

March 17, 2022

# TABLE OF CONTENTS

I.   COMMERCE'S RELIANCE ON EMIRATES SLEEP'S FINANCIAL STATEMENTS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE NO REASONABLE MIND WOULD HAVE FOUND THEM TO BE MORE RELIABLE THAN THOSE OF SHEELA FOAM ...................................................................2

   A.   Emirates Sleep's Financial Statements Were Not Contemporaneous with the Period of Investigation................................................................................................ 3

   B.   Emirates Sleep's Financial Statements Were Incomplete .................................. 5

   C.   Emirates Sleep's Financial Statements Do Not Reflect the Business Operations of the Ashley Respondents................................................................................ 8

   D.   Emirates Sleep's Financial Statements Were Not Publicly Available............................ 11

   E.   Commerce's Determination to Reject Sheela Foam's Financial Statements Based on Receipt of Countervailable Subsidies Was Unreasonable ................................ 14

II.  COMMERCE'S RELIANCE ON INDIAN HTS 7320.90.90 TO VALUE THE INNERSPRING UNIT SV WAS NOT SUPPORTED BY EVEN A MERE SCINTILLA OF EVIDENCE ...........................................................................................................18

III. COMMERCE IMPROPERLY REFUSED TO LIST AFI AND AFTC IN ITS CUSTOMS INSTRUCTIONS ...........................................................................................................21

IV.  JUDICIAL ECONOMY SUPPORTS THE REMAND OF COMMERCE'S APPLICATION OF THE COHEN'S D TEST .................................................................22

CONCLUSION ...........................................................................................................................23

# TABLE OF AUTHORITIES

## Cases

Anshan Iron & Steel Co. v. United States, 28 CIT 1728, 358 F. Supp. 2d 1236 (2004)............ 2, 8

Butte Cty. v. Hogen, 613 F.3d 190 (D.C. Cir. 2010).................................................... 20

China First Pencil Co., Ltd. v. United States, 34 CIT 1284, 721 F. Supp. 2d 1369 (2010) .......... 1

Clearon Corp. v. Unites States, 35 CIT 1685, 800 F. Supp. 2d 1359 (2011) ............................. 15

Corus Staal BV v. United States, 502 F.3d 1370 (Fed. Cir. 2007)................................................. 22

CP Kelco U.S., Inc. v. United States, 949 F.3d 1348 (Fed. Cir. 2020) ........................................ 6

Dongguan Sunrise Furniture Co., Ltd. v. United States, 36 CIT 860, 865 F. Supp. 2d 1216 (2012)
...................................................................................................................................... 7

Dongguan Sunrise Furniture Co., Ltd. v. United States, 37 CIT 489, 904 F. Supp. 2d 1359 (2013)
...................................................................................................................................... 6

Downhole Pipe & Equip. v. United States, 37 CIT 1570, 949 F. Supp. 2d 1288 (2013) ............ 19

Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369 (Fed. Cir. 2015)...................... 19

FMC Corp. v. United States, 3 F.3d 424 (Fed. Cir. 1993).......................................................... 20

Fuyao Glass Industrial Group Co. v. United States, 29 CIT 109 (2005).............................. 15, 16

Gleason Indus. Prods. V. United States, 32 CIT 383, 559 F. Supp. 2d 1364 (2008)................... 18

GRK Can., Ltd. v. United States, 761 F.3d 1354 (Fed. Cir. 2014)............................................... 18

Home Meridian Int'l, Inc. v. United States, 36 CIT 1279, 865 F. Supp. 2d 1311 (2012) .......... 3, 4

Home Prods. Int'l, Inc. v. United States, 32 CIT 337, 556 F. Supp. 2d 1338 (2008)................... 3

Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States, 322 F. Supp. 3d 1308 (2018) ... 18

Krupp Stahl A.G. v. United States, 17 CIT 450, 822 F. Supp. 789 (1993) ................................ 21

Mid Continent Steel & Wire, Inc. v. United States, __ CIT __, __, 273 F. Supp. 3d 1348 (2017) 9

Nation Ford Chem. Co. v. United States, 166 F.3d 1373 (Fed. Cir. 1999) ................................... 9

Nippon Steel Corp. v. United States, 458 F.3d 1345 (Fed. Cir. 2006) ..................................... 9, 20

Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378 (Fed. Cir. 2014)..................... 3, 4

Rhone Poulenc, Inc. v. United States, 899 F.2d 1185 (Fed. Cir. 1990)........................................ 3

Rhone-Poulenc, Inc. v. United States, 20 CIT 573, 927 F. Supp. 451 (1996)......................... 3, 20

Samsung Int'l v. United States, 36 CIT 1531, 887 F. Supp. 2d 1330 (2012)........................ 19, 20

Since Hardware (Guangzhou) Co., Ltd. v. United States, 37 CIT at 803, 911 F. Supp. 2d 1362
(2013) ...................................................................................................................... 11

Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530 (Fed. Cir. 1983)........................................... 22

Stupp Corp. v. United States, 5 F.4th 1341 (Fed. Cir. 2021)...................................................... 22

Swiff-Train Co. v. United States, 793 F.3d 1355 (Fed. Cir. 2015).............................................. 20

Timken Co. v. United States, 894 F.2d 385 (Fed. Cir. 1990)...................................................... 19

Vinh Hoan Corp. v. United States, No. 13 - 00156, 2015 CIT LEXIS 156, at *60 (Aug. 3, 2015)4

Weishan Hongda Aquatic Food Co. v. United States, 917 F.3d 1353 (Fed. Cir. 2019)................. 2

## Statutes

19 U.S.C. § 1677b.................................................................................................... 1, 2

## Other Authorities

1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China, 74 Fed.
    Reg. 10,545 (Dep't of Commerce Mar. 11, 2009) .................................................................. 12

Certain Hot-Rolled Carbon Steel Flat Products From India: Final Results of Countervailing Duty
    Administrative Review, 75 Fed. Reg. 43,488 (Dep't of Commerce July 26, 2010) ................ 15

Certain Preserved Mushrooms from the People's Republic of China, 76 Fed. Reg. 56,732 (Dep't
    of Commerce Sept. 14, 2011) ................................................................................................... 12

Certain Quartz Surface Products from India: Final Affirmative Countervailing Duty
    Determination and Final Affirmative Determination of Critical Circumstances, In Part, 85 Fed.
    Reg. 25,398 (Dep't of Commerce May 1, 2020) ..................................................................... 16

Circular Welded Carbon-Quality Steel Pipe From India:  Final Affirmative Countervailing Duty
    Determination, 77 Fed. Reg. 64,468 (Dep't of Commerce Oct. 22, 2012) .............................. 15

Hardwood and Decorative Plywood from the People's Republic of China: Final Determination of
    Sales at Less Than Fair Value, 78 Fed. Reg. 58,273 (Dep't of Commerce Sept. 23, 2013) ....... 3

Multilayered Wood Flooring From the People's Republic of China: Final Results of
    Antidumping Duty Administrative Review and New Shipper Review and Final Determination
    of No Shipments; 2017-2018, 85 Fed. Reg. 78,118 (Dep't of Commerce Dec. 3, 2020) ......... 21

Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of the
    Antidumping Duty Administrative Review and New Shipper Review, Preliminary
    Determination of No Shipments, and Rescission of Review, in Part; 2017-2018, 85 Fed. Reg.
    6,911 (Dep't of Commerce Feb. 6, 2020) ................................................................................ 21

Persulfates from the People's Republic of China: Final Results of Antidumping Duty
    Administrative Review, 68 Fed. Reg. 68,030 (Dep't of Commerce Dec. 5, 2003) ................. 17

Plaintiffs Ashley Furniture Industries, LLC ("AFI"), Ashley Furniture Trading Company ("AFTC"), Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd. and Comfort Bedding Company Limited (collectively, "Ashley Respondents"), respectfully submit this reply to the response briefs of Defendant United States and Defendant-Intervenors Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises, Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively, "Petitioners").

The obligation of the Department of Commerce ("Commerce") to select the "best available information" on the record to calculate the Ashley Respondents' surrogate values ("SV") is not diluted by agency discretion.  See 19 U.S.C. § 1677b(c)(1)(B).  In doing so, "Commerce 'may not act arbitrarily in reaching its decision', and if the Court finds that no reasonable mind could conclude that the information relied upon was the best available, the agency's decision will be set aside."  China First Pencil Co., Ltd. v. United States, 34 CIT 1284, 1290, 721 F. Supp. 2d 1369, 1375 (2010), aff'd 466 Fed. Appx. 881 (Fed. Cir. 2012).  Neither the United States nor the Petitioners has provided sufficient justification to show that any reasonable mind would support Commerce's selection of the financial statements of Emirates Sleep Systems Private Limited ("Emirates Sleep") or the SV for innerspring units in the face of copious record evidence showing superior SV candidates.  See Def.'s Mot. to Partially Dismiss and Resp. to Pl.'s Mot. for J. Upon the Agency R. (Feb. 17, 2022), ECF No. 45 ("Def. Br."); Mattress Pet'rs' Resp. Br. in Opp'n to Ashley's Rule 56.2 Mot. for J. on the Agency R. (Feb. 17, 2022), ECF No. 44 ("Pet'rs' Br.").[1]

---

[1] All references to parties' briefs are to the nonconfidential version unless otherwise noted.

I.   **COMMERCE'S RELIANCE ON EMIRATES SLEEP'S FINANCIAL STATEMENTS WAS UNSUPPORTED BY SUBSTANTIAL EVIDENCE BECAUSE NO REASONABLE MIND WOULD HAVE FOUND THEM TO BE MORE RELIABLE THAN THOSE OF SHEELA FOAM**

Contrary to the United States' and the Petitioners' arguments, Commerce's selection of Emirates Sleep's financial statements, which were seriously flawed and incomplete, over those of Sheela Foam Limited ("Sheela Foam"), which were without disqualifying flaws, was unsupported by substantial evidence because no reasonable mind could find that Emirates Sleep was the superior choice.  The statute requires Commerce to value inputs using the "best available information regarding the values of such factors in a market economy country or countries considered to be appropriate."  19 U.S.C. § 1677b(c)(1)(B).  Because "best available information" is a standard involving comparison of record evidence, Commerce was required to have weighed the two financial statements to determine which one was "best."  Weishan Hongda Aquatic Food Co. v. United States, 917 F.3d 1353, 1367-68 (Fed. Cir. 2019).

During the investigation, the Petitioners provided the non-contemporaneous and non-public financial statements of Emirates Sleep - a company with an entirely different business model than the Ashley Respondents - that omitted key information on likely subsidies.  Despite the Ashley Respondents' identification of these deficiencies, Commerce made no effort to obtain the missing key information.  The Petitioners then pointed to supposed subsidies in Sheela Foam's financial statements to obfuscate the omission of the likely subsidy information in the Emirates Sleep statements.   The record evidence supporting the use of Emirates Sleep was wholly inadequate.  The Court "has consistently held that deference is not due an agency determination which relies upon inadequate factual basis."  Anshan Iron & Steel Co. v. United States, 28 CIT 1728, 1736, 358 F. Supp. 2d 1236, 1243 (2004) (citing Rhone-Poulenc, Inc. v. United States, 20

2

CIT 573, 575, 927 F. Supp. 451, 454 (1996)).  The Court should not defer to Commerce because Commerce refused to obtain the full financial statements of Emirates Sleep.

### A. Emirates Sleep's Financial Statements Were Not Contemporaneous with the Period of Investigation

In an effort to justify that Emirates Sleep's financial statements were the best available information, the United States argues that Emirates Sleep's financial statements were non-contemporaneous only by a single fiscal year.  See Def. Br. at 11.  Contemporaneity is a "yes" or "no" characteristic and the degree to which financial statements are stale is of no moment. Commerce's practice is to calculate surrogate financial ratios based on financial statements that are fully contemporaneous with the POI.  See Hardwood and Decorative Plywood from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, 78 Fed. Reg. 58,273 (Dep't of Commerce Sept. 23, 2013), and accompanying Issues and Dec. Mem. at 61 ("{T}he Department has a clear preference for and well-established practice of calculating surrogate financial ratios based on financial statements that are contemporaneous with the POI."). "Beyond that, 'Commerce generally considers the quality, specificity, and contemporaneity of the available financial statements.'"  Home Prods. Int'l, Inc. v. United States, 32 CIT 337, 342, 556 F. Supp. 2d 1338, 1342 (2008)) (citation omitted).  Contemporaneity is thus necessary to determine the most accurate dumping margin as required by the statute.  See Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1191 (Fed. Cir. 1990).

The cases cited by the United States to support the use of non-contemporaneous statements are not compelling.  See Def. Br. at 14 (citing Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014) and Home Meridian Int'l, Inc. v. United States, 36 CIT 1279, 865 F. Supp. 2d 1311, 1319 (2012)).  In Qingdao Sea-Line, the U.S. Court of Appeals for the Federal Circuit ("CAFC") sustained Commerce's determination to use non-contemporaneous

prices because another factor (size) was a more important issue.  See Qingdao Sea-Line, 766 F.3d at 1386-87 (finding size-specific information to be more important than contemporaneity because "consumers rely primarily on size when purchasing {subject merchandise}").  Here, other issues such as completeness, similarity of operations and public availability were critical to Commerce's evaluation of whether the surrogate company's financial statements were "the best available information."  Each of these factors supports the use of Sheela Foam as the only reasonable choice.  In Home Meridian the Court found that "{w}here two data sets are equally accurate, Commerce may prefer the contemporaneous data set over the non-contemporaneous data set."  Home Meridian, 36 CIT at 1287, 865 F. Supp. at 1319 (emphasis added).  Here, by contrast, the two financial statements in contention were not equally accurate because Sheela Foam more accurately reflected the production experience of the Ashley Respondents in every other way.

The Court has determined that "Commerce may depart from its past practice in selecting non-contemporaneous financial statements only when no other reliable and representative financial statements exist on the record."  Mem. of P. & A. in Support of Rule 56.2 Mot. for J. Upon the Agency R. of Pls. AFI, AFTC, Wanek, Millennium, and Comfort Bedding at 16 (Nov. 19, 2021), ECF No. 40 ("Ashley Br.") (citing Vinh Hoan Corp. v. United States, No. 13 - 00156, 2015 CIT LEXIS 156, at *60 (Aug. 3, 2015) ("Vinh Hoan")).  The Court's reasoning in Vinh Hoan is compelling here because record evidence shows that Sheela Foam's financial statements were the only reliable and representative option.  Sheela Foam's financial statements fulfill all of Commerce's SV criteria in that they are publicly available, are product-specific, reflect a broad market average, and are contemporaneous with the period of investigation.  See Letter on Behalf of the Ashley Respondents to Dep't of Commerce re: SV Cmts. at Ex. SV-4 (July 30, 2020) ("Ashley SV Cmts.") (P.R. 278-281).  The Emirates Sleep financial statements share none of these

characteristics.   A reasonable mind could therefore find that only Sheela Foam's financial statements represent the best available information because they are the only financial statements that were, among other factors, fully contemporaneous.

For these reasons Commerce's use of non-contemporaneous financial statements was unsupported by substantial evidence.

## B. Emirates Sleep's Financial Statements Were Incomplete

The Court should reject the United States' argument that Emirates Sleep's financial statements were complete and "reliable enough" to use.  See Def. Br. at 15.  Emirates Sleep's financial statements were indeed missing several annexures contained within the notes to the financial statements, including Annexure 5 within Note 13 detailing "Balances with government authorities" amounting to approximately 12 percent of Emirates Sleep's revenue.  See Letter on Behalf of Petitioners to Dep't of Commerce re: Petitioners' SVs Submission at Ex. 11 p. 402 (July 30, 2020) ("Pet'rs' SV Cmts.") (P.R. 276-77).  During the investigation, the Ashley Respondents raised the issue of this missing key information to aid Commerce in pursuing the complete information from the Petitioners, yet Commerce failed to do so.  See Letter from the Ashley Respondents to Dep't of Commerce re: Resp. to Pet'rs' Oct. 21, 2020 Submission at 8 (Oct. 22, 2020) (Public Version) (P.R. 431) (demonstrating that "{b}y failing to provide these specifically referenced parts of the auditor's notes, the Petitioners have deprived Commerce of information needed to determine if Emirates Sleep itself benefitted from government subsidies, a possibility that is very real considering the relatively huge amount of loans it took from the government").  Having withheld the information relating to "Balances with government authorities" during the investigation phase, the Petitioners cannot now credibly claim before this Court that "there is no explicit evidence of receipt of countervailable subsidies."  Pet'rs' Br. at 18.

5

The Court must also consider the incompleteness of the financial statements in the context of what was withheld, namely key sections of the notes related to likely government subsidies. The courts have sustained Commerce's practice not to rely on incomplete financial statements that are missing critical information.  See CP Kelco U.S., Inc. v. United States, 949 F.3d 1348, 1359 (Fed. Cir. 2020) (upholding Commerce's determination in rejecting incomplete financial statements because the missing information was of "critical importance" and could provide vital information that can significantly impact the surrogate financial ratios); Dongguan Sunrise Furniture Co., Ltd. v. United States, 37 CIT 489, 497-98, 904 F. Supp. 2d 1359, 1367 (2013). Here, the incomplete financial statements are not reliable because the missing information contains details that would significantly impact Commerce's subsidy analysis.

The United States claims that Commerce explained its reasoning behind its decision that the missing annexures did not render Emirates Sleep's financial statements unusable or unreliable and that the "missing annexure had no bearing on Commerce's calculation of its financial ratios." Def. Br. at 16.  To the contrary, the missing information in question, Annexure 5, provides details of balances with government authorities representing 12 percent of total revenue.  See Ashley Br. at 32.  The United States fails to provide a reasonable explanation as to why Commerce's determination that potential receipt of negligible subsidies amounting to merely 0.001 percent of Sheela Foam's total revenue, and with no impact on surrogate financial ratios, is damning for Sheela Foam whereas the omitted balances with government authorities in Emirates Sleep's financial statements (amounting to 12 percent of revenue) is not.  See id. at 34.  The Court has previously rejected Commerce's determination to use financial statements missing certain information even when Commerce stated that the information has no bearing on its SV calculation. For example, in Dongguan I, the Court remanded Commerce's final determination because

Commerce relied on surrogate financial statements with a missing tax line item despite Commerce's explanation that it did not "rely on taxes in calculating financial ratios and thus, the lack of a tax line alone {did} not render the statement unreliable." Dongguan Sunrise Furniture Co., Ltd. v. United States, 36 CIT 860, 886, 865 F. Supp. 2d 1216, 1242 (2012) ("Dongguan I"), aff'd 669 F. App'x 571 (Fed. Cir. 2016). There, the Court rejected Commerce's argument, finding that "{a}lthough Commerce does not use taxes directly when calculating SV, Commerce sometimes relies on notes to the tax line to determine whether the entity received disqualifying subsidies" and ultimately remanded Commerce's final determination because "{w}ithout further information, the court cannot determine whether Commerce has decided unreasonably to use a dubious financial statement." Id. at 886-87; 865 F. Supp. 2d at 1243. The Court's reasoning in Dongguan I is compelling here because the missing Annexure 5 represents a key section of the notes with even more direct implications to likely subsidies. Commerce cannot reasonably conclude that the missing "balances with government authorities" amounting to 12 percent of revenue represent mere "balances" without further information. See Mattresses from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value, 86 Fed. Reg. 15,889 (Dep't of Commerce Mar. 25, 2021) ("Final Determination") (P.R. 525), and accompanying Issues and Dec. Mem. at 30 ("I&D Mem.") (P.R. 505). Commerce's conclusion regarding the viability of Emirates Sleep's financial statements was based on assumptions about information it did not possess, and was thus inherently unreasonable.

Further, the Court should reject the Petitioners' claim that "'Balances with Government Authorities' is a common itemized entry in many companies' financial statements," and that Sheela Foam's financial statements "also include{} an item for 'Balances with Statutory/Government authorities." Pet'rs' Br. at 19. Assuming, *arguendo*, that "Balances with

Government authorities" is a common line item, the "Balances with Statutory/Government authorities" in Sheela Foam's financial statements were available on the record whereas the same information in Emirates Sleep's financial statements was omitted.  <u>Compare</u> Pet'rs' SV Cmts. at Ex. SV-11 (P.R. 276-77) <u>with</u> Ashley SV Cmts. at Ex. SV-4 (P.R. 278-81) (disclosing "Balances with Statutory/Government authorities" under note 19).  Without supporting evidence, Commerce cannot reasonably conclude that Emirates Sleep is free from any countervailable subsidies, especially when the key annexure was withheld from the record.

### C. Emirates Sleep's Financial Statements Do Not Reflect the Business Operations of the Ashley Respondents

The United States egregiously perpetuates a pure error of fact made by Commerce in its Final Determination regarding whether the Ashley Respondents maintained retail operations in Vietnam.  <u>See</u> Def. Br. at 18 (citing to Commerce's erroneous decision at page 31 of the I&D Mem.).  The Court "has consistently held that deference is not due an agency determination which relies upon inadequate factual basis…" <u>Anshan Iron</u>, 28 CIT at 1736, 358 F. Supp. 2d at 1243.  In the investigation, the Ashley Respondents submitted evidence on the record demonstrating that neither AFI nor any of its affiliates owned or operated any retail locations in Vietnam.  <u>See</u> Letter on Behalf of AFI to Dep't of Commerce re: Resp. to Pt'rs' Cmts. at 2 (Apr. 17, 2020) (P.R. 41) (rebutting "that Ashley owns Homestore Ho Chi Minh, a licensee store located in Vietnam").  The Ashley Respondents' submission was also supported by record evidence in the form of Wanek's, Millennium's and Comfort Bedding's financial statements, [ ███████████████████████ ████████████████████████ ].  <u>See</u> Letter on Behalf of Ashley Resp'ts to Dep't of Commerce re: Section A Questionnaire Resp. at Exs. A-I-3, A-II-3, A-III-4 (June 19, 2020) (Business Proprietary Document) ("Sec. A Resp.") (C.R. 108-122).  Merely repeating an untrue

statement does not make it true, and as noted in the Court's decision in <u>Anshan Iron</u>, the United

States' continued reliance on a falsehood merits no deference.

Furthermore, the primary activity of Emirates Sleep as a major retailer (as opposed to the

Ashley Respondents with zero retail presence in Vietnam) demonstrated that the business activity

of the surrogate company did not reflect the production experience of the respondent.  Commerce

should consider a respondent's production experience in selecting SV and "prioritize{} the data

on the record that best reflected the respondent's production experience."  <u>Mid Continent Steel &</u>

<u>Wire, Inc. v. United States</u>, __ CIT __, __, 273 F. Supp. 3d 1348, 1352 (2017).  "The 'best available

information' concerning the valuation of a particular factor of production may constitute

information from the surrogate country that is directly analogous to the production experience of

the NME producer."  <u>Nation Ford Chem. Co. v. United States</u>, 166 F.3d 1373, 1377 (Fed. Cir.

1999).  In making its determination, Commerce must consider the record as a whole including

whatever in the record "fairly detracts from its weight."  <u>Nippon Steel Corp. v. United States</u>, 458

F.3d 1345, 1351 (Fed. Cir. 2006).  Contrary to the United States' and Petitioners' claims,

manufacture of (some) mattresses did not render Emirates Sleep comparable to the Ashley

Respondents.  <u>See</u> Def. Br. at 17; Pet'rs' Br. at 23-24 (claiming that "76.71 percent of 'total

turnover of the company' relates to 'manufacture of furniture'").  Unlike the Ashley Respondents'

operations in Vietnam as mattress manufacturers with no retail operations, Emirates Sleep's

primary business activity is in retail and not manufacturing.  <u>See</u> Ashley Br. at 21-22.  In fact,

Emirates Sleep was "established {as} a franchise business model for retail franchise operations in

India . . ."  Letter on Behalf of Ashley Resp'ts to Dep't of Commerce re: Case Br. at 13 (Dec. 29,

2020) (Public Version) ("Admin. Case Br.") (P.R. 488).  Unlike Sheela Foam's financial

statements showing no showroom expenses, Emirates Sleep's financial statements explicitly

provide line items for multiple showrooms in India accounting for [　　　　] of Commerce's total calculated SG&A expenses.  See Ashley Br. at 22 (Confidential Version).  The franchise business model and/or showroom expenses shown in Emirates Sleep's financial statements bear no resemblance whatsoever to the Ashley Respondents' operations in Vietnam because none of these entities are franchisees, nor do they incur any expenses related to retail operations in Vietnam.  See id.  The Petitioners' contention that 76.71 percent of Emirates Sleep's turnover relates to manufacture of mattresses inflates its supposed manufacturing within one of only two basket categories ("Manufacture of furniture" and "Marketing fee") in this section and obscures Emirates Sleep's purchase and resale of furniture from its parent company amounting to 21.3 percent of total revenue.  See Pet'rs' SV Cmts. at Ex. SV-11, Annex. A (P.R. 276-77); Admin. Case Br. at 14 (P.R. 488).  The disparity in business activity between Emirates Sleep and the Ashley Respondents is yet another factor rendering Emirates Sleep's financial statements inferior to Sheela Foam's financial statements.

Contrary to the United States' and Petitioners' specious arguments, Sheela Foam's financial statements remain the best available information because they confirm a primary business activity of mattress production, as is the case for Wanek, Millennium and Comfort Bedding, rather than mattress retail, as is the case for Emirates Sleep.  See Ashley SV Cmts. at Ex. SV-4 p. P-95 (P.R. 278-81).  The Petitioners reference Sheela Foam's "retail presence" to attempt to elide the true distinctions between Commerce's options for surrogate financial statements.  See Pet'rs' Br. at 24.  Sheela Foam's financial statements enumerate no revenue from retail operations in note 30 nor list any retail operations for subsidiaries in note 5.1, suggesting a strategy of third-party ownership of retail stores also utilized by the Ashley Respondents.  See Ashley SV Cmts. at Ex. SV-4 (P.R. 278-81); Sec. A Resp. at Ex. A-IV-7.a (describing how Ashley Respondents [

10

███████████████████████████████████████████ ]) (Business Proprietary Document)

(C.R. 108-122).

In sum, Commerce improperly concluded that Emirates Sleep's retail operations in India are comparable to Wanek's, Millennium's and Comfort Bedding's manufacturing operations in Vietnam, rendering its determination that the financial statements of Emirates Sleep were the best available information unsupported by substantial evidence.

### D.  Emirates Sleep's Financial Statements Were Not Publicly Available

The United States and Petitioners attempt to bolster Commerce's decision by incorrectly maintaining that Emirates Sleep's financial statements were publicly available and that interested parties were able to independently access the information.  See Def. Br. at 20; Pet'rs' Br. at 15. The Court should reject these arguments because they are false.  Record evidence shows that Emirates Sleep's financial statements were not publicly available because they were not obtained from a public source and no information on the source of these financial statements was ever requested by Commerce or provided by the Petitioners.  See Ashley Br. at 24-27.

In the Final Determination, Commerce inaccurately stated that "Emirates Sleep's financial statements are publicly available" based on "record evidence demonstrating that the Emirates Sleep financial statements was obtained from a non-proprietary source because Ashley Group argued, and the petitioners agreed, that the Emirates Sleep financial statements were obtained through a subscription database."  I&D Mem. at Cmt. 2 (P.R. 505).  A party's mere assertion of public availability does not render this information publicly available.  When public availability of the financial statements is at issue, Commerce's practice is to require a detailed step-by-step explanation by the submitter of how the financial statements were obtained so "any party would be able to replicate these steps" in acquiring the financial statements.  See Since Hardware (Guangzhou) Co., Ltd. v. United States, 37 CIT at 803, 809, 911 F. Supp. 2d 1362, 1369 (2013).

11

The Ashley Respondents demonstrated that the Emirates Sleep's financial statements are not publicly available because Emirates Sleep is a private company that does not maintain a website and does not publish its own financial statements.  See Letter on Behalf of the Ashley Resp'ts to Dep't of Commerce re: Rebuttal SV Cmts. at 41 (Aug. 17, 2020) (P.R. 311-13).  Despite the Ashley Respondents raising the issue of public availability, the Petitioners never revealed the source of obtaining Emirates Sleep's financial statements and Commerce never requested this information.  See Investigation of the Antidumping Duty Order on Mattresses from Vietnam, Hr'g Tr. at 53-54 (C. Dunn) (Feb. 11, 2021) (P.R. 501) ("Hr'g Tr.") (admitting that the Petitioners have not explained how they obtained Emirates Sleep's financial statements despite the Ashley Respondents' expressed difficulty in obtaining the same copy of the financial statements).  The Ashley Respondents also notified Commerce that the Emirates Sleep financial statements that were provided by the Petitioners were different from what was available on the Indian Ministry of Corporate Affairs ("MCA") website, which "{did} not show Emirates Sleep's financial statements as publicly available and shows no POI-contemporaneous financial statements for Emirates Sleep."  Letter on Behalf of the Ashley Resp'ts to Dep't of Commerce re: Factual Info. Submission at 32 (Oct. 7, 2020) (Public Version) ("Factual Info. Submission") (P.R. 406-11); Admin. Case Br. at 33 (P.R. 488).

The United States further argues that "Commerce explained the fact that information {} from a subscription database does not mean that information is not publicly available."  Def. Br. at 20 (citing 1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China, 74 Fed. Reg. 10,545 (Dep't of Commerce Mar. 11, 2009) ("HEDP"), and accompanying Issues and Dec. Mem. at Cmt. 1 ("HEDP I&D Mem.") and Certain Preserved Mushrooms from the People's Republic of China, 76 Fed. Reg. 56,732 (Dep't of Commerce Sept. 14, 2011) ("Preserved

12

Mushrooms"), and accompanying Issues and Dec. Mem. at Cmt. 4) ("Mushrooms I&D Mem.")).

Unlike here, in HEDP Commerce was able to conclude that the surrogate financial statements were

publicly available because it found the statements online and notified interested parties by sending

a letter to the parties that included the necessary website link.  See HEDP I&D Mem. at Cmt. 1.

Because neither Commerce nor the Petitioners provided similar information during the

investigation, that case is irrelevant here.  The United States' citation to Preserved Mushrooms

also fails for the same reason.  In Preserved Mushrooms, Commerce stated that "{i}f a publisher

makes information available to the public {Commerce} consider{s} it to be publicly available

even if a fee is required to obtain it."  Mushrooms I&D Mem. at Cmt. 4.  Unlike in Preserved

Mushrooms, fee payment to obtain Emirates Sleep's financial statements was never an issue

because the Ashley Respondents never found the version of the Emirates Sleep financial

statements placed on the record by the Petitioners from any source, whether free or otherwise.

Further, the United States and Petitioners wrongly assert that the reason Commerce did not

request further information was because the Ashley Respondents acknowledged that the financials

existed in a subscription database.  See Def. Br. at 20; Pet'rs' Br. at 16.  The Ashley Respondents

admitted only to being unable to find Emirates Sleep's complete financial statements.  See Ashley

Br. at 26.  The Ashley Respondents made a good faith effort to locate the Emirates Sleep's financial

statements through the MCA website but were unsuccessful.  See Admin. Case Br. at 33 (P.R.

488).  Indeed, Commerce acknowledged that the Ashley Respondents were unable to locate the

version of the Emirates Sleep financial statements submitted by the Petitioners, underscoring the

need for Commerce to apply its practice as explained in Since Hardware to verify the public

availability of the statements.  See Hr'g Tr. at 53-54 (A. Elouaradia) (P.R. 501) (stating that the

respondents "tried to find the financial statement and they have not been able to").

13

Despite being aware of the Ashley Respondents' inability to obtain the complete financial statements, Commerce departed from its practice when it declined to inquire how the Petitioners obtained Emirates Sleep's financial statements.  See Factual Info. Submission at 32 (Public Version) (P.R. 406) (illuminating that "Emirates Sleep's financial statements that were provided by the Petitioners are different than what is available on the Indian {MCA} website.").  It was, therefore, unreasonable for Commerce to have concluded that Emirates Sleep's financial statements were publicly available because they did not come from a public source, Petitioners did not provide sufficient information on how they were obtained and Emirates Sleep's complete financial statements remained absent from the record.  While it is the responsibility of interested parties to build the factual record, Petitioners withheld the full version of the statements and the Ashley Respondents cannot provide missing annexures that they cannot find.

In short, the Court should find that Commerce's reliance on Emirates Sleep's financial statements was unsupported by substantial evidence because the record established that these financial statements were not publicly available.

### E. Commerce's Determination to Reject Sheela Foam's Financial Statements Based on Receipt of Countervailable Subsidies Was Unreasonable

The United States and Petitioners argue that Commerce properly rejected Sheela Foam's financial statements because these statements contained evidence of duty drawback and investment subsidies.  See Def. Br. at 22-27; Pet'rs' Br. at 10-14.  The United States and Petitioners assert that both programs share the name of subsidies previously countervailed in Circular Welded Pipe ("CWP") from India and Quartz Products ("QSP") from India.  See Def. Br. at 24; Pet'rs' Br. at 13.  The United States and Petitioners arguments fail for the following reasons.

First, Commerce's determination regarding the investment subsidy program previously found to be countervailable in CWP from India is baseless.  In CWP from India, Commerce based

its determination regarding "investment subsidies" entirely on adverse facts available ("AFA"). See Circular Welded Carbon-Quality Steel Pipe From India:  Final Affirmative Countervailing Duty Determination, 77 Fed. Reg. 64,468 (Dep't of Commerce Oct. 22, 2012), and accompanying Issues and Dec. Mem. at 30-31 (stating that Commerce "previously determined that this program is countervailable" in Certain Hot-Rolled Carbon Steel Flat Products From India: Final Results of Countervailing Duty Administrative Review, 75 Fed. Reg. 43,488 (Dep't of Commerce July 26, 2010) ("HRS"), and accompanying Issues and Dec. Mem. ("HRS I&D Mem.")).   Commerce countervailed the investment subsidy in HRS based on AFA and no respondent was actually found to have used or benefitted from this subsidy except through the application of AFA.  See HRS I&D Mem. at 29 (citing prior determinations of non-use by respondent companies).  In reality, the United States and Petitioners fail to show that the investment subsidy has been found to be countervailable in a formal CVD determination other than through the fiction of AFA.  As acknowledged by the Court in Clearon Corp. v. Unites States, 35 CIT 1685, 1688, 800 F. Supp. 2d 1355, 1359 (2011), Commerce will exclude a financial statement from consideration if it "contains a reference to a specific subsidy program found to be countervailable in a formal CVD determination."  Id.  That Commerce's past findings under this program have been based on AFA illustrates why a "yes" or "no" approach to disqualifying a company based on the existence of a subsidy is not reasonable where, as here, Commerce knows with certainty that the potential benefit obtained by Sheela Foam was barely measurable at only 0.001 percent of its total revenue.

Second, the United States' contention that this Court should not follow the framework set forth in Fuyao Glass Industrial Group Co. v. United States, 29 CIT 109, 114 (2005) in evaluating whether financial statements reflect countervailable subsidies is misplaced.  Under the framework set forth in Fuyao:

> Commerce must demonstrate by specific and objective evidence that (1) subsidies of the industry in question existed in the supplier countries during the {POI}; (2) the supplier in question is a member of the subsidized industry or otherwise could have taken advantage of any available subsidies; and (3) it would have been unnatural for a supplier to not have taken advantage of such subsidies.

Id., 29 CIT at 114.  The United States claims the Court is not required to follow the Fuyao framework because the Court has held that it is not the only reasonable framework for evaluating whether Commerce has met the "believe or suspect" standard in analyzing financial statements with receipt of subsidies.  See Def. Br. at 25.  Even if Commerce has consistently used other frameworks besides that of Fuyao, that does not preclude this Court from applying Fuyao to this case.  There is no evidence on the record that Sheela Foam received the alleged countervailable subsidies because there was no information that the Sheela Foam is a member of the subsidized industry or could have taken advantage of any available subsidies during the POI.  Specifically, Commerce found that the duty drawback subsidy was previously countervailed in QSP from India, but Commerce's findings in that case were, however, specific to the QSP industry:

> We requested the GOI to describe in detail the analysis conducted by the Drawback Committee . . . in effect during the POI for quartz surface products.  We also requested the GOI to describe the verification procedures . . . .  Specifically, we asked about the verification process that occurred with the mandatory respondents and producers of quartz surface products generally, including the number of audits and site visits that took place at the facilities of producers of quartz surface products.

Certain Quartz Surface Products from India: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, In Part, 85 Fed. Reg. 25,398 (Dep't of Commerce May 1, 2020), and accompanying Issues and Dec. Mem. at Cmt. 6 (emphasis added).  In other words, no reasonable mind could find that Sheela Foam is in receipt of the alleged subsidies because Sheela Foam is a mattress - not quartz -manufacturer.

Third, Commerce has previously relied on financial statements that contained evidence of countervailable subsidies over other potential surrogate financial statements that were missing

16

information.  See Ashley Br. at 18-19 (citing CP Kelco, 949 F.3d at 1359).  As noted, Emirates

Sleep's financial statements were incomplete because key information was omitted (Annexures 1

through 5) that was vitally important to Commerce's analysis and likely reveals government

subsidies representing 12 percent of total revenue, rendering Emirates Sleep's financial statements

unreliable.  See Ashley Br. at 32-35.  The alleged subsidies in Sheela Foam's financial statements,

in comparison, amounted to at most 0.001 percent of total revenue.  See id. at 34.  In the past,

Commerce "has rejected the use of financial statements of surrogate producers receiving

government subsidies because of the totality of the circumstances rather than the sole fact that the

surrogate producer was being subsidized."  Persulfates from the People's Republic of China: Final

Results of Antidumping Duty Administrative Review, 68 Fed. Reg. 68,030 (Dep't of Commerce

Dec. 5, 2003), and accompanying Issues and Dec. Mem. at Cmt. 3.  Given the miniscule quantum

of alleged subsidies in Sheela Foam's financial statements, no reasonable mind could find such a

small amount of subsidization to be distortive.

     In sum, Commerce unreasonably rejected Sheela Foam's financial statements in favor of

Emirates Sleep's statements based on unsubstantiated evidence of the alleged receipt of distortive

countervailable subsidies.  Because Sheela Foam's financial statements are fully complete,

contemporaneous with the POI, publicly available, captured similar production experience as the

Ashley Respondents and exhibited no receipt of distortive subsidies, Commerce's rejection of

Sheela Foam's financial statements and reliance on Emirates Sleep's statements as the best

available information to value the surrogate financial ratios was unsupported by substantial

evidence.

## II.   COMMERCE'S RELIANCE ON INDIAN HTS 7320.90.90 TO VALUE THE INNERSPRING UNIT SV WAS NOT SUPPORTED BY EVEN A MERE SCINTILLA OF EVIDENCE

The record confirms not only substantial but overwhelming evidence supporting the classification of innerspring units under Harmonized Tariff Schedule ("HTS") 9404.29.90. Despite this overwhelming evidence, the United States and Petitioners argue that Commerce's selection of HTS 7320.90.90 for this SV was supported by substantial evidence. See Def. Br. at 27-31; Pet'rs' Br. at 25-36. These arguments fail for several reasons.

First, the United States and Petitioners claim that the General Rules of Interpretation ("GRI") are not binding for Commerce's SV analysis. See Def. Br. at 28; Pet'rs' Br. at 26-27 (citing Gleason Indus. Prods. V. United States, 32 CIT 383, 559 F. Supp. 2d 1364, 1370 (2008)). Commerce should conduct an analysis, however, based on tariff classification rules and principles to determine the "best available information" of a certain input. See Jiangsu Senmao Bamboo & Wood Indus. Co. v. United States, 322 F. Supp. 3d 1308, 1322 (2018). In that case, the Court utilized the GRI to determine the best available information between two competing HTS headings because established HTS tariff classification principles were the only reliable basis for determining a correct heading. See id., 322 F. Supp. 3d at 1322; see also GRK Can., Ltd. v. United States, 761 F.3d 1354, 1362 (Fed. Cir. 2014) ("the GRIs are the interpretive framework that govern tariff classifications"). Acknowledging Commerce's lack of GRI analysis in the Final Determination, the Petitioners in their response brief engage in a prolonged and flawed analysis of Commerce's "implicit" GRI analysis. See Pet'rs' Br. at 27-29. The Court should reject the Petitioners' own post-hoc rationalization given the presence on the record of six unrebutted classification opinions from Indian customs experts. See Factual Info. Submission at SV2-16, SV2-17 (P.R. 406-11); see also Letter on Behalf of Ashley Respondents to Dep't of Commerce re: Comments on Pet'rs SV

Comments at Ex. SV3-1 to SV3-4 (Public Document) ("Cmts. on Pet'rs' SV") (P.R. 420-21); Timken Co. v. United States, 894 F.2d 385, 389 (Fed. Cir. 1990) ("Agency action cannot be sustained on post hoc rationalizations supplied during judicial review."). During the investigation, the Ashley Respondents provided the only expert evidence regarding the correct HTS code for innerspring units, namely six classification opinions from Indian customs experts confirming HTS 9404.29.90 as the correct code. See Factual Info. Submission at SV2-16, SV2-17 (P.R. 406-11); see also Cmts. on Pet'rs' SV at Ex. SV3-1 to SV3-4 (P.R. 420-21). No contrary Indian customs expert opinions or other conflicting information regarding the classification of the item in India were proffered by any party. While the CAFC does not find that the statute requires Commerce to use the GRI in cases where "virtually no legal analysis contravene{s}" Commerce's "well-supported and fully explained" heading selection, here, the substantial evidence supported a finding that HTS 9404.29.90 was a superior classification. Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1378-79 (Fed. Cir. 2015). Under its own past practice, Commerce has buttressed contested SV decisions in which it did not rely on the GRI by at least minimally verifying the correct HTS codes, including by consulting experts. See Downhole Pipe & Equip. v. United States, 37 CIT 1570, 949 F. Supp. 2d 1288, 1294 (2013), aff'd 776 F.3d 1369 (Fed. Cir. 2015). Commerce failed to follow its own past practice of relying on expert opinions, the GRI or both when it wrongly selected HTS 7320.90.90.

Second, the United States' and Petitioners' arguments that Commerce had no obligation to adhere to the unanimous, unrebutted opinions of six Indian customs experts was an errant oversimplification of Commerce's obligations. See Def. Br. at 28-29; Pet'rs' Br. at 31-34. The United States cites to Samsung Int'l v. United States, 36 CIT 1531, 1540, 887 F. Supp. 2d 1330, 1338 n.18 (2012) for its claim regarding the lack of binding power of expert opinions. See Def.

Br. at 29.   Indeed, the Court in <u>Samsung</u> found that "{e}xpert opinions are merely advisory, however, and are given weight only to the extent they are consistent with lexigraphic and other reliable sources."   <u>Samsung</u>, 36 CIT at 1540 n.18, 887 F. Supp. 2d at 1338.   In other words, the Court in <u>Samsung</u> acknowledged that expert opinions may not be by themselves dispositive— especially when a dispute "implicates substantial agency expertise." <u>Butte Cty. v. Hogen</u>, 613 F.3d 190, 204 (D.C. Cir. 2010).   "Overly generalized and ambiguous statements, outdated information, and mere speculation will not suffice," especially when Commerce makes a baseless rejection of six unrebutted Indian customs experts.   <u>See</u> <u>FMC Corp. v. United States</u>, 3 F.3d 424, 428 (Fed. Cir. 1993).   The Court must "inquire{} whether the agenc{y} ha{s} based {its} policy choices on reasonable expert evidence." <u>Butte Cty.</u>, 613 F.3d at 204.   Commerce's failure to use the GRI and its rejection of <u>Indian</u> experts for a classification of goods within the <u>Indian</u> HTS rendered Commerce's determination unreasonable for lack of substantial evidence.   Commerce's assertion that it merely disagreed with the Indian experts does not create "an adequate basis for its conclusions," especially in the absence of GRI analysis.   <u>Rhone-Poulenc</u>, 20 CIT at 575, 927 F. Supp. at 454.   Substantial evidence requires "more than a mere scintilla." <u>Swiff-Train Co. v. United States</u>, 793 F.3d 1355, 1359 (Fed. Cir. 2015) (internal citation omitted).   When viewing the record as a whole, including the aforementioned evidence in the "record {that} fairly detracts from its weight," <u>Nippon Steel</u>, 458 F.3d at 1351,   the Court should find the record evidence did not support the HTS used by Commerce.

Third, the Petitioners' claim that the use of HTS 7320.90.90 was supported by substantial evidence based on Commerce's use of this HTS in Mattresses from China is also unconvincing. <u>See</u> Pet'rs' Br. at 30.   Commerce's longstanding practice is to treat each investigation or review as separate as "each investigation and administrative review present it with a unique set of facts and

circumstances." Krupp Stahl A.G. v. United States, 17 CIT 450, 457, 822 F. Supp. 789, 795 (1993). Commerce's HTS selection for the "bonnel spring" SV in Mattresses from China has no bearing on its determination on this case because Commerce's SV selection is made on a case-by-case basis taking into consideration respondent-specific information. The Ashley Respondents have continuously maintained that HTS 9404.29.90 is the best available information to value its innersprings because it is most specific to the Ashley Respondents' input. See Ashley Br. at 36-39.

For these reasons, Commerce's determination to use HTS 7320.90.90 rather than HTS 9404.29.90 was unsupported by substantial evidence.

## III.   COMMERCE IMPROPERLY REFUSED TO LIST AFI AND AFTC IN ITS CUSTOMS INSTRUCTIONS

The United States' assertion that AFI and AFTC are not eligible for inclusion in Commerce's customs instructions is inaccurate. See Def. Br. at 31-34. Commerce has previously included market-economy resellers in its customs instructions in non-market economy cases. See Multilayered Wood Flooring From the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review and New Shipper Review, Preliminary Determination of No Shipments, and Rescission of Review, in Part; 2017-2018, 85 Fed. Reg. 6,911 (Dep't of Commerce Feb. 6, 2020), unchanged in Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Review and Final Determination of No Shipments; 2017-2018, 85 Fed. Reg. 78,118 (Dep't of Commerce Dec. 3, 2020). The Court should find that Commerce erred in excluding AFI and AFTC, resellers of subject merchandise produced by the Ashley Respondents, from its customs instructions.

## IV.    JUDICIAL ECONOMY SUPPORTS THE REMAND OF COMMERCE'S APPLICATION OF THE COHEN'S D TEST

Contrary to the United States' argument that "plaintiffs seek an advisory opinion when they have suffered no injury," Def. Br. at 40, the faulty assumptions upon which Commerce's differential pricing analysis rested represent key barriers to any potential relief granted to the Ashley Respondents.  Continued application of the Cohen's *d* test upon remand could require additional rounds of briefing regarding an inflated antidumping duty and would waste the resources of the Court and all parties to this proceeding.  See Ashley Br. at 44-47.  In the interests of judicial economy, accuracy and to avoid unnecessary repetition and duplicative efforts, the Court should not delay in remanding this issue to Commerce.  See Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed. Cir. 1983) ("The result being unchanged, a remand for reconsideration of the evidence would in this case constitute a waste of resources for the courts and the parties").

Additionally, the United States and Petitioners argue that the Ashley Respondents failed to exhaust administrative remedies regarding this issue.  See Def. Br. at 40-43; Pet'rs' Br. at 38-39.  Respondents may be excused from this exhaustion requirement if "an important court decision {was} . . . issued after the party's case brief would have been filed." Corus Staal BV v. United States, 502 F.3d 1370, 1381 (Fed. Cir. 2007).  The CAFC issued its opinion in Stupp Corp. v. United States, 5 F.4th 1341 (Fed. Cir. 2021) after the Final Determination, rendering impossible any discussion of this decision during administrative briefing.  The Court should exercise its discretion to allow discussion of this issue.  See Corus Staal, 502 F.3d at 1381 ("applying exhaustion principles in trade cases is subject to the discretion of the judge of the Court of International Trade").

## CONCLUSION

For the foregoing reasons, the Court should grant the Ashley Respondents' Motion for Judgement Upon the Agency Record because Commerce's Final Determination with regard to the surrogate financial ratios, SV for innersprings, Customs instructions and application of the Cohen's d test was unsupported by substantial evidence or otherwise not in accordance with law.

Dated: March 17, 2022

Respectfully submitted,

/s/ Kristin H. Mowry
Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Jacob M. Reiskin
*Counsel to Ashley Furniture Industries,*
*LLC, Ashley Furniture Trading Company,*
*Wanek Furniture Co., Ltd., Millennium*
*Furniture Co., Ltd., and Comfort Bedding*
*Company Limited*

23

**CERTIFICATE OF COMPLIANCE**

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitations set forth in Paragraph 2(B) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificate of counsel, the word count for this brief is 6,923 words.

/s/ Kristin H. Mowry
Kristin H. Mowry
