Slip Op. 22-29

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ASHLEY FURNITURE INDUSTRIES, LLC; ASHLEY FURNITURE TRADING COMPANY; WANEK FURNITURE CO., LTD.; MILLENNIUM FURNITURE CO., LTD.; AND COMFORT BEDDING COMPANY LIMITED**, | |
| Plaintiffs, | |
| v. | **Before: Timothy M. Reif, Judge** |
| **UNITED STATES**, | **Court No. 21-00283** |
| Defendant, | |
| and | |
| **BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO**, | |
| Defendant-Intervenors. | |

## <u>OPINION</u>

[Granting plaintiffs' motion for statutory injunction in part and denying plaintiffs' motion in part.]

Dated: <u>March 28, 2022</u>

Kristin H. Mowry, Mowry & Grimson, PLLC, of Washington, D.C., argued for plaintiffs. With her on the brief were Jeffrey S. Grimson, Sarah M. Wyss, and Wenhui (Flora) Ji.

Kara M. Westercamp, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant.  With her on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and L. Misha Preheim, Assistant Director.  Of counsel on the brief was Vania Wang, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

* * *

Reif, Judge: This action arises from a challenge by plaintiffs, Ashley Furniture Industries, LLC ("AFI"), Ashley Furniture Trading Company ("AFTC"), Wanek Furniture Co., Ltd. ("Wanek"), Millennium Furniture Co., Ltd. ("Millennium"), and Comfort Bedding Company Limited ("Comfort Bedding") (collectively, "plaintiffs") to certain aspects of the final affirmative determination by the U.S. Department of Commerce ("Commerce") in the antidumping duty ("AD") investigation and order on mattresses from the Socialist Republic of Vietnam ("Vietnam").  *See Mattresses from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less than Fair Value* ("Final Determination"), 86 Fed. Reg. 15,889 (Dep't of Commerce Mar. 25, 2021) (final determination) and accompanying Issues and Decision Memorandum, A-552-827 (Dep't of Commerce Mar. 18, 2021) ("IDM"); *Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia* ("Vietnam Mattresses Order"), 86 Fed. Reg. 26,460 (Dep't of Commerce May 14, 2021) (antidumping duty order).

Plaintiffs move for a statutory injunction pursuant to section 516A(c)(2) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(c)(2) (2018),[1] and United States Court of International Trade ("USCIT" or the "Court") Rules 7(b) and 56.2(a) ordering that defendant, United States, is enjoined during the pendency of this litigation, including any appeals, from issuing instructions to liquidate or permitting the liquidation of certain unliquidated entries of mattresses from Vietnam.  Mot. for Stat. Inj. ("Pls. Br.") at 1-2, ECF No. 20; *see also* Reply to Def.'s Partial Opp'n to Pls.' Mot. for Stat. Inj. ("Pls. Reply Br.") at 2-3, ECF No. 32.  Plaintiffs move specifically to enjoin defendant from liquidating any entries that: (1) were imported by AFI or AFTC and produced and/or exported by Wanek, Millennium or Comfort Bedding; (2) were the subject of Commerce's Final Determination and Vietnam Mattresses Order; and (3) were entered, or withdrawn from warehouse, on or after November 3, 2020, excluding any merchandise entered, or withdrawn from warehouse, between May 2, 2021, and May 13, 2021.[2]  Pls. Br. at 2.

---

[1] Further citations to the Tariff Act of 1930, as amended, are also to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

[2] In the Vietnam Mattresses Order, Commerce noted that 19 U.S.C. § 1673b(d) provides that suspension of liquidation pursuant to a preliminary affirmative determination may not remain in effect for more than six months.  *See* Vietnam Mattresses Order.  Since Commerce published its Preliminary Determination on November 3, 2020, *Mattresses from the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures* ("Preliminary Determination"), 85 (footnote continued)

Defendant partially opposes plaintiffs' motion.  *See* Def.'s Partial Opp'n to Pls.'

Mot. for Stat. Inj. ("Def. Resp. Br."), ECF No. 27.  Although defendant consents to a

statutory injunction covering plaintiffs' unliquidated entries through April 30, 2022, the

end of the period of review ("POR") for the first administrative review ("AR"), defendant

opposes the injunction of indeterminate scope[3] that plaintiffs seek that would cover any

unliquidated entries that might be made through to the conclusion of this litigation.  *Id.* at

2-3; *see* Pls. Br. at 2.  Accordingly, plaintiffs and defendant dispute only whether the

---

Fed. Reg. 69,591 (Dep't of Commerce Nov. 3, 2020) (preliminary determination), the
six-month period starting on that date ended on May 1, 2021.  Consequently, in
accordance with 19 U.S.C. § 1673b(d), Commerce instructed U.S. Customs and Border
Protection ("Customs") to terminate the suspension of liquidation of and to liquidate —
without regard to antidumping duties — any unliquidated entries entered, or withdrawn
from warehouse, during the "gap period" from May 2, 2021, the first day on which the
provisional measures were no longer in effect, through May 13, 2021, the day preceding
the publication of the final affirmative injury determination of the U.S. International Trade
Commission ("Commission").  *See* Vietnam Mattresses Order; Pls. Br. at 2; *see also
Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and
Vietnam*, 86 Fed. Reg. 26,545 (ITC May 14, 2021).  Plaintiffs and defendant agree that
entries made during this gap period are excluded properly from the requested
injunction.  *See* Pls. Br. at 2; Def.'s Partial Opp'n to Pls.' Mot. for Stat. Inj. at 3, ECF No.
27.

[3] Plaintiffs and defendant characterize plaintiffs' proposed statutory injunction as an
"open-ended" injunction.  *See* Pls. Br. at 2; Def. Resp. Br. at 2.  The court, however,
refers to plaintiffs' proposed injunction as an injunction of indeterminate scope.  *See
Indeterminate*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining indeterminate as "[n]ot
definite, distinct, or precise; impossible to know about definitely or exactly").  Plaintiffs'
proposal is indeterminate, rather than open-ended, because the proposed injunction
would not enjoin the liquidation of a "definite, distinct, or precise" subset of plaintiffs'
entries.  *Id.*  Rather, the injunction would cover all of plaintiffs' entries that might be
made over the course of the instant action, the end date of which is not predetermined.

injunction on liquidation should cover entries that might be made after April 30, 2022 (plaintiffs' "future entries").

For the reasons discussed below, the court grants plaintiffs' motion in part and denies the motion in part.

## BACKGROUND

On March 31, 2020, Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, The International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively, "petitioners") filed a petition with Commerce and the Commission to impose antidumping duties on imports of mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey ("Turkey") and Vietnam, and to impose countervailing duties ("CVD") on mattress imports from the People's Republic of China ("China").  *See Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Initiation of Less-than-Fair-Value Investigations*, 85 Fed. Reg. 23,002 (Dep't of Commerce Apr. 24, 2020) (initiation of antidumping duty investigations).  On April 24, 2020, Commerce initiated AD investigations on mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, Turkey and Vietnam, as well as a CVD investigation on mattresses from China.  *See id.*; *Mattresses from the People's Republic of China:*

*Initiation of Countervailing Duty Investigation*, 85 Fed. Reg. 22,998 (Dep't of Commerce

April 24, 2020) (initiation of countervailing duty investigation).

On November 3, 2020, Commerce published its Preliminary Determination in

Commerce's AD investigation of mattresses from Vietnam.  *See Mattresses from the*

*Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less*

*than Fair Value, Postponement of Final Determination, and Extension of Provisional*

*Measures* ("Preliminary Determination"), 85 Fed. Reg. 69,591 (Dep't of Commerce Nov.

3, 2020) (preliminary determination) and accompanying Preliminary Decision

Memorandum, A-552-827 (Dep't of Commerce Oct. 27, 2020) ("PDM").  In its

Preliminary Determination, Commerce collapsed Wanek, Millennium and Comfort

Bedding into a single entity pursuant to 19 C.F.R. § 351.401(f) — a decision that was

not contested by plaintiffs or other parties in the investigation.  *See* Second Am. Compl.

at 5, ECF No. 24; PDM at 2 n.11.

On December 29, 2020, plaintiffs filed a case brief disputing Commerce's

Preliminary Determination.  *See* IDM at 2, 17-24, 36-39.  Subsequently, Commerce held

a hearing in its AD investigation on February 11, 2021.  *See id.* at 2.

On March 18, 2021, Commerce issued its Final Determination, which it published

in the Federal Register on March 25, 2021.  *See* Final Determination.  Considering

certain adjustments made in the Final Determination, Commerce assigned a 144.92%

weighted-average dumping margin to Wanek, Millennium and Comfort Bedding.  *Id.*

On May 14, 2021, Commerce published the Vietnam Mattresses Order.  *See* Vietnam Mattresses Order.  In addition, on May 14, 2021, the Commission published its final affirmative injury determination on mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey and Vietnam.  *See Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, 86 Fed. Reg. 26,545 (ITC May 14, 2021).

## STANDARD OF REVIEW

This Court has jurisdiction to hear the underlying action pursuant to 28 U.S.C. § 1581(c) and has authority to grant the requested injunctive relief pursuant to 19 U.S.C. § 1516a(c)(2).  Pursuant to 19 U.S.C. § 1516a(c)(2), the Court "may enjoin the liquidation of some or all entries of merchandise covered by a determination of the Secretary, the administering authority, or the Commission, upon a request by an interested party for such relief and a *proper showing* that the requested relief should be granted *under the circumstances*."  19 U.S.C. § 1516a(c)(2) (emphasis supplied).

## LEGAL FRAMEWORK

## I.      Statutory framework for the suspension of liquidation

The United States employs a "retrospective" duty assessment system for the collection of antidumping and countervailing duties.  19 C.F.R. § 351.212(a).  Commerce's regulations specify the way in which "final liability for antidumping and countervailing duties is determined after merchandise is imported" as follows:

> Generally, the amount of duties to be assessed is determined in a review of the order covering a discrete period of time.  If a review is not requested, duties are assessed at the rate established in the completed review covering the most recent prior period or, if no review has been completed, the cash deposit rate applicable at the time merchandise was entered.

*Id.*

Accordingly, liability for antidumping duties "accrues upon entry of subject merchandise" into the United States.  *SSAB N. Am. Div. v. U.S. Bureau of Customs & Border Prot.*, 32 CIT 795, 797, 571 F. Supp. 2d 1347, 1350 (2008) (citing *Parkdale Int'l v. United States*, 475 F.3d 1375, 1376-77 (Fed. Cir. 2007)).  However, "the amount of actual liability may not be determined for some time after the entry occurs," and does not become final until the point at which Customs liquidates the subject merchandise.[4] *Am. Power Pull Corp. v. United States*, 39 CIT __, __, 121 F. Supp. 3d 1296, 1300 (2015).

Several statutory provisions form the framework providing for the suspension of liquidation of entries prior to the point at which Commerce instructs Customs to liquidate those entries.  19 U.S.C. § 1673b(d)(2)(A) establishes that should Commerce issue and publish a preliminary affirmative determination in an AD investigation, Commerce "shall order the suspension of liquidation of all entries of merchandise subject to the determination which are entered . . . for consumption on or after . . . the date on which notice of the determination is published in the Federal Register."  This determination

---

[4] "Liquidation" is defined as "the final computation or ascertainment of duties on entries for consumption or drawback entries."  19 C.F.R. § 159.1.

provides the legal basis for the suspension of liquidation until Commerce publishes an

AD order, provided that such an order is published.  *See Am. Power*, 39 CIT at __, 121

F. Supp. 3d at 1300-01.

Should Commerce and the Commission then issue and publish final affirmative

determinations in an AD investigation, Commerce is required to publish an AD order.

19 U.S.C. §§ 1673d(b), 1673e(a).  This order provides "the legal basis for the

suspension of liquidation of imports of subject merchandise that enter for consumption

on or after the date of publication of that order, throughout the life of the order, and until

the order is revoked."  *Am. Power*, 39 CIT at __, 121 F. Supp. 3d at 1301.

The AD order provides the legal basis for the continued suspension of liquidation

of entries.  However, the suspension of liquidation for "any given entry is not indefinite."

*Id.*  19 U.S.C. § 1675 details the periodic process — known as the administrative review

process — through which Commerce determines the duties to be assessed on entries

of subject merchandise.  Each year, during the anniversary month in which Commerce

published the AD order, interested parties are entitled to request that Commerce

conduct an AR to determine the antidumping duties to be applied to entries covered by

that AR.  19 U.S.C. § 1675(a); *see also* 19 C.F.R. § 351.213.  If an interested party

does not request an AR, then the entries covered by that AR are "not examined to

determine the duties to be assessed."[5]  *OKI Elec. Indus. Co. v. United States*, 11 CIT

624, 627, 669 F. Supp. 480, 483 (1987).  Rather, Commerce instructs Customs to

assess antidumping duties at the cash-deposit rates in effect at the time of entry of the

merchandise, which Customs is required to do within six months.[6]  *See id.* at 627-28,

669 F. Supp. at 483; 19 U.S.C. § 1504(d).

 If an interested party requests an AR, Commerce is required to determine the

antidumping duties to be assessed on entries covered by that AR.  19 U.S.C. §

1675(a)(1).  As Commerce conducts this review, the suspension of liquidation continues

with respect to the entries covered by the requested AR.  *See Am. Power*, 39 CIT at __,

121 F. Supp. 3d at 1301 ("It has long been recognized that . . . the suspension of

liquidation of an entry must remain in effect throughout an administrative review."); *see

also Ambassador Div. of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed.

Cir. 1984).  "The publication of the final results of the administrative review provides the

---

[5] If a request for an AR is timely received, then that AR covers entries made "during the 12 months immediately preceding the most recent anniversary month."  19 C.F.R. § 351.213(e)(1)(i).  If the request for an AR is received during the first anniversary month after the publication of the AD order, then that first AR covers entries made "during the period from the date of suspension of liquidation . . . to the end of the month immediately preceding the first anniversary month."  *Id.* § 351.213(e)(1)(ii).  Regardless of whether an interested party ultimately requests an AR, there is always a POR covering entries made during the period of time immediately preceding the AR-request period.  *Id.* § 351.213(e)(1)(i)-(ii).

[6] Defendant contends that Commerce's consistent practice is to wait 35 days "before sending out liquidation instructions" to Customs.  Def. Resp. Br. at 8 n.1.  Plaintiffs do not contest this contention.  In this case, the court evaluates the liquidation of plaintiffs' entries with reference to such a 35-day waiting period.

notice to Customs of the lifting of the suspension of liquidation." *Am. Power*, 39 CIT at

__, 121 F. Supp. 3d at 1301 (citing *Int'l Trading Co. v. United States*, 281 F.3d 1268,

1275 (Fed. Cir. 2002)).

**II.     Authority of the U.S. Court of International Trade to enjoin liquidation**

An interested party may appeal to the Court a final affirmative determination by

Commerce in an AD investigation.  *See* 19 U.S.C. §§ 1516a(a)(2)(B)(i), 1673d.  If a

party commences such an appeal, it may move, pursuant to 19 U.S.C. § 1516a(c)(2),

that the Court enjoin the liquidation of "some or all" entries covered by the determination

pending a final conclusion to the appeal.

The purpose of this statutory injunction on liquidation is to "preserve the status

quo during judicial proceedings so that relief may be provided in accordance with the

final litigation results." *Am. Cast Iron Pipe Co. v. United States*, 43 CIT __, __, 399 F.

Supp. 3d 1362, 1366 (2019); *see also Ugine & Alz Belgium v. United States*, 452 F.3d

1289, 1292 (Fed. Cir. 2006).  Although injunctions on liquidation have become "almost

automatic" in AD and CVD proceedings, they remain "an extraordinary remedy never

awarded as of right."  *Sumecht NA, Inc. v. United States*, 923 F.3d 1340, 1345 (Fed.

Cir. 2019) (quoting *Wind Tower Trade Coal. v. United States*, 741 F.3d 89, 95 (Fed. Cir.

2014)); *Altx, Inc. v. United States*, 26 CIT 735, 736, 211 F. Supp. 2d 1378, 1380 (2002).

The moving party must make a "clear showing" that an injunction on the statutorily

mandated process of liquidation is warranted under the circumstances.  *See Altx*, 26

CIT at 736, 211 F. Supp. 2d at 1380; *SKF USA Inc. v. United States*, 28 CIT 170, 172, 316 F. Supp. 2d 1322, 1326 (2004).

To obtain a statutory injunction, the moving party is required to establish that: (1) it will suffer irreparable harm without the injunction; (2) it is likely to succeed on the merits; (3) the balance of the equities favors the party; and (4) the injunction will better serve the public interest.  *See Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed. Cir. 1983); *Ugine*, 452 F.3d at 1292; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1366.  "[T]he absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned [to] the other factors, to justify the denial" of an injunction, and this decision lies within the sound discretion of the court.  *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993).

A party moving for a statutory injunction may follow "regular motion practice" to obtain such relief.  USCIT Rules, Appendix of Forms, Specific Instructions - Form 24; *see, e.g.*, *Fuyao Glass Indus. Grp. v. United States* (*Fuyao II*), 27 CIT 1321, 1325 (2003).  However, the Court also permits a party seeking an injunction on liquidation to file a Form 24 proposed order for a statutory injunction upon consent ("Form 24").  *See* USCIT Rules, Appendix of Forms, Specific Instructions - Form 24.  Form 24 "is a streamlined form a party may use to propose a statutory [injunction], pursuant to which the party indicates the consent of the other parties and agreement that they have made 'a proper showing . . . that the requested injunctive relief should be granted under the

circumstances.'"  *YC Rubber Co. (N. Am.) v. United States*, 43 CIT __, __ n.2, 415 F.

Supp. 3d 1240, 1243 n.2 (2019) (citing USCIT Rules, Appendix of Forms, Form 24).

### III.    Application of the Court's statutory injunction authority to the instant case

In this case, plaintiffs appeal certain aspects of the Final Determination — a final

affirmative determination by Commerce in an AD investigation.  *See* Second Am.

Compl. at 2.  Plaintiffs have not yet requested an AR, as the earliest point at which a

first AR can be requested is May 2022 — the first anniversary month of the Vietnam

Mattresses Order.  *See* 19 C.F.R. § 351.213(b).  However, in this case an injunction on

the liquidation of plaintiffs' entries that would be covered by an AR 1, should it be

requested, is not in dispute.  Defendant consents to plaintiffs' motion for a statutory

injunction insofar as the injunction covers plaintiffs' entries that would be covered by an

AR 1 — *i.e.*, entries made from November 3, 2020, through April 30, 2022 (excluding

any entries made from May 2, 2021, through May 13, 2021).  *See* Def. Resp. Br. at 2-3.

Accordingly, plaintiffs and defendant dispute only whether the court should issue

an injunction on the liquidation of plaintiffs' entries made after April 30, 2022 — *i.e.*,

entries that would be covered by an AR 2 or any subsequent ARs.  The court evaluates

plaintiffs' motion with respect to these future entries in light of the Court's four-factor test

for injunctive relief.  The court addresses each factor in turn and concludes that: (1) the

threat of liquidation of plaintiffs' future entries does not pose irreparable harm; (2)

plaintiffs do not demonstrate a likelihood of success on the merits; (3) the balance of the

equities tips in plaintiffs' favor; and (4) an injunction of indeterminate scope as proposed

by plaintiffs does not better serve the public interest.

On this basis, plaintiffs do not make a proper showing under the circumstances

that they are entitled to a statutory injunction of indeterminate scope.  Consequently, the

court grants an injunction on liquidation that covers plaintiffs' entries made from

November 3, 2020, through April 30, 2022 (excluding any entries made during the gap

period from May 2, 2021, through May 13, 2021).

## DISCUSSION

Congress enacted 19 U.S.C. § 1516a(c)(2) as part of the Trade Agreements Act

of 1979 ("1979 Act").  Pub. L. No. 96-39, § 1001(a), 93 Stat. 144, 302-03 (1979)

(codified as amended at 19 U.S.C. § 1516a(c)(2) (2018)).  The legislative history of the

1979 Act states that Congress enacted section 516a(c)(2) to "permit the Customs Court

to enjoin, during the period of judicial review, liquidation of some or all entries of

merchandise covered by a determination of the administering authority or the

[Commission] during a [CVD] or [AD] investigation."  S. Rep. No. 96-249, at 28 (1979),

*as reprinted in* 1979 U.S.C.C.A.N. 381, 414.  As enacted in 1979, 19 U.S.C. §

1516a(c)(2) provided:

> (2) INJUNCTIVE RELIEF. — In the case of a determination described in
> paragraph (2) of subsection (a) by the Secretary, the administering
> authority, or the Commission, the United States Customs Court may enjoin
> the liquidation of some or all entries of merchandise covered by a
> determination of the Secretary, the administering authority, or the
> Commission, upon a request by an interested party for such relief and a
> proper showing that the requested relief should be granted under the

circumstances.  In ruling on a request for such injunctive relief, the court shall consider, among other factors, whether —

> (A) the party filing the action is likely to prevail on the merits,
>
> (B) the party filing the action would be irreparably harmed if liquidation of some or all of the entries is not enjoined,
>
> (C) the public interest would best be served if liquidation is enjoined, and
>
> (D) the harm to the party filing the action would be greater if liquidation of some or all of the entries is not enjoined than the harm to other persons if liquidation of some or all of the entries is enjoined.

1979 Act § 1001(a).

Further, the legislative history of the 1979 Act states that Congress did not intend for section 516a(c)(2) "to be construed as granting the Customs Court full equity powers in all situations."  S. Rep. No. 96-249, at 252.

The following year, Congress enacted the Customs Courts Act of 1980.  Pub. L. No. 96-417, 94 Stat. 1727 (1980) (codified as amended in scattered sections of 28 U.S.C.).  The Customs Courts Act of 1980, which created the U.S. Court of International Trade, provided the Court, through 28 U.S.C. § 2643(c)(1), full powers in equity, "including, but not limited to, declaratory judgments, orders of remand, injunctions, and writs of mandamus and prohibition."  Customs Courts Act of 1980, §§ 101, 301.

With respect to the Court's power to grant injunctions, the legislative history of the Customs Courts Act of 1980 states that Congress decided to not include language in 28 U.S.C. § 2643(c)(1) enumerating "standards for issuance of a preliminary or permanent injunction, thereby allowing the Court to apply the same standards as those

employed by the district courts."  H.R. Rep. No. 96-1235, at 41 & n.37 (1980), *as*

*reprinted in* 1980 U.S.C.C.A.N. 3729, 3753 & n.37 (citing Customs Courts Act of 1980,

Hearing on H.R. 6394 Before the Subcomm. on Monopolies & Commercial Law of the

H. Comm. on the Judiciary, 96th Cong. 310 (letter of Homer E. Moyer, Jr., Gen.

Counsel of the U.S. Dep't of Commerce) ("The deletion [from the proposed version of

28 U.S.C. § 2643(c)(1)] we propose would allow the [Court] to rely on the case law in

considering whether to grant an injunction.")).  Further, to conform the version of 19

U.S.C. § 1516a(c)(2) enacted in 1979 to 28 U.S.C. § 2643(c)(1), Congress amended

the former to remove the second sentence "pertaining to the factors to be considered by

the Court to determine if it is appropriate to issue an injunction."  H.R. Rep. No. 96-

1235, at 69.

Accordingly, Congress intended for the 1980 amendment of 19 U.S.C. §

1516a(c)(2) to accomplish two objectives: (1) to conform 19 U.S.C. § 1516a(c)(2) to 28

U.S.C. § 2643(c)(1); and (2) to direct the Court to "apply the same standards as those

employed by the district courts" in deciding motions for injunctions brought pursuant to

19 U.S.C. § 1516a(c)(2).  H.R. Rep. No. 96-1235, at 41, 69.[7]

Since 1980, Congress has not further amended 19 U.S.C. § 1516a(c)(2).  In

addition, the decisions whose "standards" Congress directed the Court to "apply" in

---

[7] The House Report states in full: "The amendment adopts a recommendation of the
Department of Commerce to delete language that would have enumerated standards
for issuance of a preliminary or permanent injunction, thereby allowing the Court to
apply the same standards as those employed by the district courts."  H.R. Rep. No. 96-
1235, at 41.

deciding motions for injunctions brought pursuant to 19 U.S.C. § 1516a(c)(2) —

comprising the decisions of the USCIT, the Court of Appeals for the Federal Circuit

("Federal Circuit"), and other federal courts — establish that the four factors must be

satisfied for an injunction to be granted, and, with respect to irreparable harm, that such

harm must be immediate or imminent.  *See, e.g.*, *Altx*, 26 CIT at 736-37, 211 F. Supp.

2d at 1380; *Kwo Lee, Inc. v. United States*, 38 CIT 1496, 1498, 24 F. Supp. 3d 1322,

1326 (2014); *Zenith*, 710 F.2d at 809; *Qingdao Taifa Grp. Co. v. United States*, 581

F.3d 1375, 1378 (Fed. Cir. 2009); *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011,

1020, 1022 (9th Cir. 2016).

**I.      Irreparable harm**

**A.      Legal framework**

Irreparable harm is a "type of injury that is serious and cannot be undone."

*Shandong Huarong Gen. Grp. v. United States*, 24 CIT 1279, 1282, 122 F. Supp. 2d

1367, 1370 (2000) (internal quotation marks omitted); *see also Zenith*, 710 F.2d at 809.

As such, the moving party "bears an extremely heavy burden" to establish that

irreparable harm exists, *Shandong Huarong*, 24 CIT at 1282, 122 F. Supp. 2d at 1369-

70 (citing *Queen's Flowers de Colombia v. United States*, 20 CIT 1122, 1125, 947 F.

Supp. 503, 506 (1996)), and failure to establish irreparable harm "virtually dooms" the

motion.  *Nucor Corp. v. United States*, 29 CIT 1452, 1464-65, 412 F. Supp. 2d 1341,

1352 (2005); *see also Altx*, 26 CIT at 738, 211 F. Supp. 2d at 1382 (citing *Trent Tube*

*Div., Crucible Materials Corp. v. United States*, 14 CIT 587, 588, 744 F. Supp 1177, 1179 (1990)).

The Court's standard for irreparable harm requires that the party moving for a statutory injunction establish that the liquidation of its entries poses a "presently existing, actual" threat.[8]  *Zenith*, 710 F.2d at 809 (quoting *S.J. Stile Assocs. Ltd. v. Snyder*, 68 CCPA 27, 30, C.A.D. 1261, 646 F.2d 522, 525 (1981)); *see also Husteel Co. v. United States*, 38 CIT 1887, 1891, 34 F. Supp. 3d 1355, 1360 (2014); *Comm. Overseeing Action for Lumber Int'l Trade Investigations or Negots. v. United States*, 43 CIT __, __, 393 F. Supp. 3d 1271, 1276-77 (2019) (quoting *Shree Rama Enters. v. United States*, 21 CIT 1165, 1167, 983 F. Supp. 192, 194-95 (1997)).  The court examines first whether the threat is "presently existing," and then whether the threat is "actual."

This Court evaluates whether the threat of liquidation is "presently existing" in reference to the immediacy or imminence of the threat.  *See Zenith*, 710 F.2d at 809 (citing *S.J. Stile*, 68 CCPA at 30, 646 F.2d at 525; *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)) (requiring that the moving party

---

[8] With respect to the instant motion, the alleged irreparable harm that the parties address involves the harm that is associated with the threat of liquidation of any of plaintiffs' future entries prior to the conclusion of this litigation.  *See* Pls. Br. at 4-8 ("Plaintiffs would face *irreparable harm* if the entries are *liquidated* before a final and conclusive decision from this Court." (emphasis supplied)); Def. Resp. Br. at 8-9 (arguing that plaintiffs fail to demonstrate an "imminent *threat of liquidation*" (emphasis supplied)).  Unless otherwise noted, the court evaluates plaintiffs' allegations of irreparable harm in view of this threat of liquidation.  *See Zenith*, 710 F.2d at 810; *Husteel*, 38 CIT at 1890-91, 34 F. Supp. 3d at 1360.

show that it "will be *immediately* and irreparably injured" (emphasis supplied)); *Husteel*,

38 CIT at 1891-92, 34 F. Supp. 3d at 1360-61 (concluding that the moving parties faced

"a sufficiently *imminent* and serious harm" to support a showing of a "presently existing,

actual threat" (emphasis supplied)).

     The Court's evaluation of irreparable harm aligns with the legislative history of 19

U.S.C. § 1516a(c)(2).  Specifically, the decisions whose "standards" Congress directed

the Court to "apply" in deciding motions for injunctions brought pursuant to 19 U.S.C. §

1516a(c)(2) provide that irreparable harm must be "immediate" or "imminent."  H.R.

Rep. No. 96-1235, at 41, 69; *see, e.g.*, *Altx*, 26 CIT at 736-37, 211 F. Supp. 2d at 1380;

*Kwo Lee*, 38 CIT at 1498, 24 F. Supp. 3d at 1326; *Zenith*, 710 F.2d at 809; *Qingdao*,

581 F.3d at 1378; *Boardman*, 822 F.3d at 1022.  *Cf.* discussion of recent decisions of

the USCIT that take a different view, *infra* Section I.C.1.

     In *Altx*, for example, a 2002 USCIT decision in which the plaintiffs, domestic

producers, sought to enjoin the liquidation of certain entries of circular seamless

stainless steel hollow products from Japan, the court determined that the plaintiffs did

not provide sufficient evidence establishing that "immediate irreparable harm" was likely

to occur without the injunction.  *Altx*, 26 CIT at 735-37, 211 F. Supp. 2d at 1379-80.

The court there underscored the importance for a moving party to provide specific

allegations or evidence of harm that would result from liquidation as, absent such a

showing, "it is left to speculation whether liquidating entries" poses irreparable harm.  *Id.*

at 737-38, 211 F. Supp. 2d at 1381-82.

Turning to *Kwo Lee*, a 2014 USCIT decision, the court granted a motion to enjoin Customs from imposing a heightened bond requirement on the plaintiff's entries of fresh garlic from China.  *See Kwo Lee*, 38 CIT at 1496, 24 F. Supp. 3d at 1324-25.  This requirement would have exceeded significantly the typical cost to importers to obtain single transaction bonds for their entries, and the plaintiff provided evidence that it would be unable to post "full collateral for the millions of dollars" that would be required to obtain bonds for its entries.  *Id.* at 1500, 24 F. Supp. 3d at 1328.  Due to the likelihood of "imminent and immediate bankruptcy, loss of business, and, therefore, loss of access to meaningful judicial review," the court concluded that the plaintiff faced irreparable harm.  *Id.* at 1500-01, 24 F. Supp. 3d at 1326.  The court added, in holding for plaintiff, that "the immediate threat of bankruptcy" and the "imminent and immediate . . . loss of business . . . [and] loss of access to judicial review" constituted irreparable harm because these threats were "immediate and viable," not merely speculative or possible.  *Id.* at 1500, 1504, 24 F. Supp. 3d at 1326, 1331.

The Federal Circuit has taken a similar approach in deciding motions for injunctions brought pursuant to 19 U.S.C. § 1516a(c)(2).  In *Zenith*, the Federal Circuit held that in an appeal of the final results of an AR, the liquidation of "all of the entries occurring during the review period will be . . . immediate[]" and poses irreparable harm because such liquidation precludes "effective judicial review" of the contested entries. *Zenith*, 710 F.2d at 810.  In *Qingdao*, a decision also involving an appeal of the final results of an AR, the Federal Circuit held that for the same reasons as in *Zenith*, the

moving party faced "immediate and irreparable harm" with respect to its entries made during the review period, as the liquidation of those entries would deprive the party of "later recourse in the event that the liquidation rate is determined to be incorrect." *Qingdao*, 581 F.3d at 1380-81.  These decisions demonstrate further the requirement that the threat of liquidation be "immediate" to pose irreparable harm.

Notably, the House Report language directs this court to "apply the same standards as those employed by the district courts," not just the decisions of this Court and those of the Federal Circuit.  H.R. Rep. No. 96-1235, at 41.  In *Boardman*, for example, a Ninth Circuit decision, the court applied the standard for injunctive relief that the Supreme Court pronounced in *Winter v. Nat. Res. Def. Council, Inc.  Boardman*, 822 F.3d 1011; *Winter*, 555 U.S. 7, 20 (2008).  In *Boardman*, the plaintiffs, a group of fishermen, brought an antitrust action against certain seafood processor entities and sought an injunction to prevent the acquisition of one such entity by another entity. *Boardman*, 822 F.3d at 1016-17.  The Ninth Circuit upheld the district court's decision to grant the requested injunction.  *Id.* at 1025.  With respect to irreparable harm, the Ninth Circuit concluded that the plaintiffs' alleged threat of "monopsony in multiple seafood input markets on the West Coast" constituted a type of irreparable harm recognized within the Circuit.  *Id.* at 1022-23.  Further, the Ninth Circuit determined that this threat was "sufficiently immediate" and warranted injunctive relief due to the likelihood that the plaintiffs would suffer the alleged harm "before a trial on the merits could be held."  *Id.* at 1023.

"Immediate" is defined as: "Occurring without delay; instant . . . .  Not separated by other persons or things . . . .  Having a direct impact; without an intervening agency." *Immediate*, BLACK'S LAW DICTIONARY (11th ed. 2019).  "Imminent" is defined as: "(Of a danger or calamity) threatening to occur immediately; dangerously impending . . . . About to take place."  *Imminent*, BLACK'S LAW DICTIONARY (11th ed. 2019).[9]

These definitions of "immediate" and "imminent" as well as decisions of this court indicate that a threat is presently existing if the entries at issue face immediate liquidation or liquidation as soon as the POR then-underway concludes.  In particular, the Court previously has issued statutory injunctions that cover entries that already have been made and that face the immediate prospect of liquidation without further notice. *See, e.g.*, *Asociación de Exportadores e Industriales de Aceitunas de Mesa v. United States*, Ct. No. 18-00195, Order for Stat. Inj. upon Consent (Jan. 19, 2021), ECF No. 65; *Dalian Meisen Woodworking Co. v. United States*, Ct. No. 20-00110, Order (Oct. 18, 2021), ECF No. 75; *see also* 19 C.F.R. § 351.212(b)-(c).  Several recent decisions of

---

[9] Other sources provide similar definitions of "immediate" and "imminent."  *See, e.g.*, *Immediate*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/immediate (last visited Mar. 23, 2022) ("[O]ccurring, acting, or accomplished without loss or interval of time."); *Immediate*, AM. HERITAGE DICTIONARY, https://www.ahdictionary.com/word/search.html?q=immediate (last visited Mar. 23, 2022) ("Occurring at once; happening without delay."); *Imminent*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/imminent (last visited Mar. 23, 2022) ("[R]eady to take place . . . happening soon."); *Imminent*, AM. HERITAGE DICTIONARY, https://www.ahdictionary.com/word/search.html?q=imminent (last visited Mar. 23, 2022) ("About to occur; impending.").  Unless otherwise noted, the court uses the terms "imminent" and "immediate" interchangeably with respect to the court's evaluation of the irreparable harm factor.

the Court include within the scope of what faces a "presently existing" threat of liquidation entries that have not yet been made, but which will be made during the POR underway at the time that the respective decisions were issued.  *See, e.g.*, *Husteel*, 38 CIT at 1890-93, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3, 1369; *Am. Cast Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15.

The Court also has previously addressed circumstances in which a threat of liquidation is presently existing with respect to a subset of future entries but is not presently existing with respect to other subsets.  *See, e.g.*, *Changzhou Hawd Flooring Co. v. United States*, Ct. No. 12-00020, Order (Jan. 9, 2018), ECF No. 190, Order (Sept. 20, 2018), ECF No. 212, Order (Aug. 13, 2019), ECF No. 215.  In these circumstances, the Court has issued successive injunctions covering subsets of a party's entries upon a proper showing that the injunction on liquidation of each respective subset of entries is warranted.  *See, e.g.*, *Changzhou Hawd*, Ct. No. 12-00020, Order (Jan. 9, 2018), ECF No. 190, Order (Sept. 20, 2018), ECF No. 212, Order (Aug. 13, 2019), ECF No. 215; *Linyi Chengen Import and Export Co. v. United States*, Consol. Ct. No. 18-00002, Order for Stat. Inj. upon Consent (Dec. 26, 2018), ECF No. 65, Am. Order for Stat. Inj. upon Consent (Feb. 11, 2019), ECF No. 76, Order for Stat. Inj. upon Consent (Mar. 26, 2021), ECF No. 153.

Turning to the requirement that the threat of liquidation must be "actual," the Court has applied this term to mean that the threat may be neither "speculative . . . [n]or

determined by surmise." *Lumber*, 43 CIT at __, 393 F. Supp. 3d at 1276 (citing *Am.*

*Inst. for Imported Steel, Inc. v. United States*, 8 CIT 314, 318, 600 F. Supp. 204, 209

(1984); *Elkem Metals Co. v. United States*, 25 CIT 186, 192, 135 F. Supp 2d 1324,

1331 (2001)).  "It is not enough to establish a mere possibility of injury, even where

prospective injury is great."  *Id.* at 1276-77 (quoting *Shree Rama*, 21 CIT at 1167, 983

F. Supp. at 194-95).  Further, the threat of liquidation is speculative if this threat is within

the moving party's "power to prevent" — *i.e.*, the "possibility" of liquidation does not

present an "actual" threat if it is feasible for the moving party to pursue recourse to avoid

"the eventuality of such harm."  *Fuyao Glass Indus. Grp. v. United States* (*Fuyao I*), 27

CIT 1166, 1170 (2003); *see also Zenith*, 710 F.2d at 809 ("Only a viable *threat of*

*serious harm which cannot be undone* authorizes exercise of a court's equitable power

to enjoin before the merits are fully determined." (quoting *S.J. Stile*, 68 CCPA at 30, 646

F.2d at 525)).

  The moving party has the burden to show that under the circumstances, the

threat of liquidation is "presently existing" and "actual" and, consequently, poses

irreparable harm.  *See* 19 U.S.C. § 1516a(c)(2).

  **B.    Positions of the parties**

  Plaintiffs argue that the threat of liquidation of their future entries is "presently

existing" and "actual" and, consequently, poses irreparable harm.  *See* Pls. Br. at 5, 7;

Pls. Reply Br. at 5, 13.  Plaintiffs allege that this irreparable harm stems from the

"possibility of not having the remedy to seek judicial review and economic loss" if

Commerce instructs Customs to liquidate plaintiffs' future entries prior to the conclusion of this litigation.  Pls. Br. at 7.

### 1.    Whether threat of liquidation is "presently existing"

Plaintiffs contend first that the threat of liquidation of their future entries is "presently existing" because the threat becomes imminent as soon as Commerce publishes the underlying AD or CVD order.  *See* Pls. Br. at 5, 7; Pls. Reply Br. at 7-8, 10-12.  Plaintiffs argue that three decisions of this Court — *Husteel*, *Mid Continent* and *Mosaic* — support their interpretation of a "presently existing" threat.  *Husteel*, 38 CIT 1887, 34 F. Supp. 3d 1355; *Mid Continent Steel & Wire, Inc. v. United States*, 44 CIT __, 427 F. Supp. 3d 1375 (2020); *Mosaic Co. v. United States*, 45 CIT __, 540 F. Supp. 3d 1330 (2021).

Plaintiffs point first to *Husteel*, a 2014 USCIT decision in which the court issued injunctions of limited scope that covered the moving parties' entries made during the first POR, then underway, of the underlying AD order.[10]  *See* Pls. Br. at 5-6; Pls. Reply Br. at 7-8 (citing *Husteel*, 38 CIT at 1888, 1890-93, 34 F. Supp. 3d at 1358, 1360-62).  The court identified a "confluence of considerations" leading it to conclude that the injunctions were proper, including that the threat of harm caused by liquidation without further notice pursuant to 19 C.F.R. § 351.212(c) was "sufficiently imminent," and that

---

[10] In *Husteel*, the court issued multiple injunctions because several consolidated plaintiffs filed separate motions for statutory injunctions pursuant to 19 U.S.C. § 1516a(c)(2).  *See Husteel*, 38 CIT at 1895, 34 F. Supp. 3d at 1363 ("The court accordingly grants the movants' motions.  One typical injunction is attached hereto for clarity.  Individual orders regarding the other movants' motions will enter separately.").

the injunctions would protect the parties from "any negative ramifications of an erroneous liquidation" of those entries.  *Husteel*, 38 CIT at 1891-92, 34 F. Supp. 3d at 1360-61.  Referencing *Husteel*, plaintiffs in this case contend that the threat of liquidation of their future entries is "presently existing" and consequently warrants the issuance of an injunction of indeterminate scope.  *See* Pls. Br. at 5-6; Pls. Reply Br. at 7-8.

Plaintiffs point also to two recent decisions in which the Court issued injunctions fashioned similarly to the injunction of indeterminate scope that plaintiffs request.  First, plaintiffs reference *Mid Continent*, a 2020 decision in which the court, approximately five years after the underlying litigation had commenced, issued an injunction of indeterminate scope because the moving parties had "established a 'presently existing, actual threat' of irreparable harm for entries subject to [the first] and subsequent administrative reviews."  *Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1379, 1382 (quoting *Zenith*, 710 F.2d at 809); *see* Pls. Br. at 5-7.  The court reasoned that the threat of liquidation became "sufficiently imminent" when Commerce published the underlying AD order, as the "potential harm flows from the results of the investigation" leading to the order.  *Id.* at __, 427 F. Supp. 3d at 1383-84.

Second, plaintiffs reference *Mosaic*, a 2021 decision in which the court echoed the conclusion of the *Mid Continent* court that the threat of liquidation becomes immediate and presently existing upon "the publication of the CVD Order."  *See* Notice Suppl. Auth., ECF No. 35; *Mosaic*, 45 CIT at __, 540 F. Supp. 3d at 1334, 1336.  Unlike

the *Mid Continent* court, however, the *Mosaic* court issued an injunction of indeterminate scope before an interested party could request an AR of entries made during the first POR. *Mosaic*, 45 CIT at __, 540 F. Supp. 3d at 1335, 1337. Relying on these decisions, plaintiffs argue that the threat of liquidation of all of their entries — including their future entries — became imminent and irreparable when Commerce published the Vietnam Mattresses Order. *See* Notice Suppl. Auth. at 2; Pls. Br. at 7-8. Consequently, according to plaintiffs, this "presently existing" threat of liquidation warrants the issuance of an injunction of indeterminate scope. *See* Pls. Br. at 7-8.

Defendant argues that plaintiffs do not establish that the threat of liquidation of their future entries is "presently existing." *See* Def. Resp. Br. at 11. Defendant challenges the interpretation of a "presently existing" threat that plaintiffs advance. *See id.* at 11-14. Contesting plaintiffs' reliance on *Husteel*, defendant notes that the court in that decision did not issue an injunction of indeterminate scope similar to the injunction that plaintiffs request in this case, but rather issued injunctions of limited scope covering the moving parties' entries made during the first POR. *See id.* at 13 (citing *Husteel*, 38 CIT at 1895-96, 34 F. Supp. 3d at 1364).

Defendant challenges also plaintiffs' reliance on *Mid Continent* and *Mosaic*. Defendant points out that the *Mid Continent* court granted an injunction of indeterminate scope approximately five years into the litigation, after the first two ARs were completed and the next two ARs were underway. *See id.* at 12. Defendant notes that plaintiffs in

this case seek an injunction of indeterminate scope "long before any of the

administrative reviews are even scheduled to *commence*."  *Id.* (emphasis supplied).

Next, defendant challenges plaintiffs' reliance on *Mosaic*.  *See* Def.'s Resp.

Notice Suppl. Auth., ECF No. 37.  Defendant argues that the conclusion in *Mosaic* that

statutory injunctions granted pursuant to 19 U.S.C. § 1516a(c)(2) are not "extraordinary"

remedies is inconsistent with past decisions of the Federal Circuit.  *See id.* at 2-3 (citing

*Wind Tower*, 741 F.3d at 95; *Zenith*, 710 F.2d at 809-10).  Defendant points also to the

*Mosaic* decision's "heav[y]" reliance upon the language and principles of *Mid Continent*,

a decision that, according to defendant, is factually dissimilar to this case.  *See id.* at 3-

4.

Further, defendant argues that the alleged threat posed by the liquidation of

plaintiffs' future entries does not accord with the interpretation that a threat is "presently

existing" if the entries at issue face immediate liquidation or liquidation as soon as the

POR then-underway concludes.  *See* Def. Resp. Br. at 5-6, 11; *see also Asociación de

Exportadores*, Ct. No. 18-00195, Order for Stat. Inj. upon Consent (Jan. 19, 2021), ECF

No. 65; *Dalian*, Ct. No. 20-00110, Order (Oct. 18, 2021), ECF No. 75; *Husteel*, 38 CIT at

1890-93, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec.

18, 2014), ECF No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3,

1369; *Am. Cast Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15.  To

support this argument, defendant details Commerce's administrative procedure for

lifting the suspension of liquidation and directing that Customs liquidate entries of

merchandise.  *See* Def. Resp. Br. at 6-8.  Defendant points out that under the

applicable regulation, interested parties are entitled to request an AR during each

anniversary month of the Vietnam Mattresses Order — the month of May.  *See id.* at 6;

19 C.F.R. § 351.213(b)(1); Vietnam Mattresses Order.  Defendant consents to an

injunction of limited scope covering plaintiffs' entries that would be covered by an AR 1,

which can be requested in May 2022.  *See* Def. Resp. Br. at 2.  Notably, defendant's

consent to an injunction of limited scope covering such entries is not contingent on

plaintiffs or any other interested party requesting an AR 1 in May 2022.[11]  *See id.*

> For entries that would be covered by an AR 2 — which would cover entries made

between May 1, 2022, and April 30, 2023 — plaintiffs or any other interested party are

entitled to request that AR in May 2023.  19 C.F.R. § 351.213(b)(1).  Accordingly,

defendant argues that the earliest date that plaintiffs' entries could be subject to

liquidation is July 6, 2023.[12]  Based on the statutory timeline for the liquidation of entries

---

[11] It is the practice of the United States to consent to injunctions of limited scope without requiring that the moving parties request ARs of the entries corresponding to each injunction.  *See, e.g.*, *Cheng Shin Rubber Ind. Co. v. United States*, Ct. No. 21-00398, Def.'s Opp. Pl.'s Mot. Modify Inj. (Jan. 18, 2022) at 12, ECF No. 40; *Best Mattresses Int'l Co. v. United States*, Consol. Ct. No 21-00281, Def.'s Partial Opp. Pls.' Mot. for Stat. Inj. (Aug. 20, 2021) at 2, 7, ECF No. 25; *Mosaic*, Consol. Ct. No. 21-00116, Gov.'s Partial Opp. OCP S.A.'s Mot. for Stat. Inj. in Case No. 21-00218 (July 23, 2021) at 8 n.2, ECF No. 28; *Camso Inc. v. United States*, Consol. Ct. No. 17-00060, Consent Mot. for Prelim. Inj. (June 12, 2017), at 5, ECF No. 31.

[12] As discussed in note 6, *supra*, the court evaluates the liquidation of plaintiffs' entries with reference to Commerce's consistent practice of waiting 35 days before sending (footnote continued)

subject to the Vietnam Mattresses Order, defendant contends that the threat of

liquidation of plaintiffs' future entries is not "presently existing."  *See* Def. Resp. Br. at 9-

11.

### 2.    Whether threat of liquidation is "actual"

Plaintiffs contend also that the threat of liquidation of their future entries is

"actual."  Plaintiffs articulate two reasons that the "premature[]" liquidation of their future

entries presents a sufficiently non-speculative threat.  Pls. Reply Br. at 5 n.1.

First, plaintiffs argue that their entries face an actual threat of liquidation that

"increases as the litigation" proceeds.  *See id.* at 4-5, 8.  Plaintiffs allege that the threat

of liquidation of their future entries at the 144.92% rate set by Commerce in its Final

Determination is non-speculative because at this moment in time — when plaintiffs'

motion for a statutory injunction is being deliberated — that rate applies equally to all of

their entries, including all entries that have not yet been made.  *See id.* at 4-5.  Plaintiffs

contend further that it is "not reasonable" for defendant to assume that plaintiffs will

make certain decisions that could affect whether this rate will in fact apply to their future

entries.  *Id.* at 5.  These decisions include whether plaintiffs will exercise their rights to

_____

liquidation instructions to Customs.  *See also* Def. Resp. Br. at 8 n.1.  Accordingly, July
6, 2023 (35 days following the conclusion of the May 2023 AR-request period) is the
earliest date on which Commerce could send liquidation instructions to Customs —
though it is not necessarily the case that liquidation will commence on this date.  19
C.F.R. § 351.212(c).  Subsequently, Customs must within six months liquidate the
covered entries, or else those entries will be deemed liquidated at the cash-deposit rate
in effect at the time of entry.  19 U.S.C. § 1504(d); *see also Am. Power*, 39 CIT at __,
121 F. Supp. 3d at 1301-02.

request any future ARs, and, if they make such a request with respect to one or more

ARs, whether plaintiffs might choose on one or more occasions to appeal to this Court

the results of the respective AR, and whether plaintiffs will seek future injunctions in

conjunction with any such appeals.  *See id.* at 4-5.  Accordingly, plaintiffs argue that

since defendant cannot presume how plaintiffs will make any of these decisions, "[a]s

the years go on" the scenarios under which plaintiffs' future entries face an actual threat

of liquidation at the 144.92% rate will "multiply."  *Id.* at 5.

Second, plaintiffs contend that potential miscommunication or errors by the

United States that could result in the "premature[]" liquidation of their future entries pose

an actual, non-speculative threat.  *See id.* at 5 n.1, 10, 13-14.

Defendant challenges plaintiffs' assertion that the "premature liquidation" of their

future entries presents a sufficiently non-speculative threat.  *See* Def. Resp. Br. at 15-

16.  Defendant contends, rather, that it is plaintiffs' requested relief that is premature, as

the alleged threat to their future entries is speculative.  *See id.* at 15.

Defendant points to *Fuyao I* and *Fuyao II*, two 2003 decisions of this Court

concerning successive motions to enjoin the liquidation of the moving party's entries

that were subject to an AD order.  *See id.* at 14-15 (citing *Fuyao I*, 27 CIT 1166; *Fuyao

II*, 27 CIT 1321).  In *Fuyao I*, the court denied the moving party's first motion for an

injunction, concluding that the party's argument on the irreparable harm factor was not

persuasive.  *See Fuyao I*, 27 CIT at 1168.  The party had argued that it was in the

process of reevaluating its decision to request an AR, and should it withdraw its request,

that it would suffer irreparable harm because its entries covered by the AR would be liquidated.  *See id.*  The court rejected this argument, reasoning that because the moving party had not yet decided to withdraw its request, the irreparable harm was "wholly within [the party's] power to prevent" and was "more in the way of a possibility than a present threat."  *Id.* at 1170.  Consequently, the court concluded that the irreparable harm associated with liquidation was too speculative to warrant the issuance of an injunction.  *Id.* (citing *S.J. Stile*, 68 CCPA at 30, 646 F.2d at 525).

Following the court's decision, the moving party withdrew its AR request and moved a second time for an injunction.  *See Fuyao II*, 27 CIT at 1321-22.  This time, the court concluded that the party had "established the 'crucial element' of immediate irreparable harm" because the prospect of the liquidation of its entries was no longer speculative.  *Id.* at 1324 (quoting *Corus Grp. PLC v. Bush*, 26 CIT 937, 942, 217 F. Supp. 2d 1347, 1354 (2002), *aff'd in part sub nom. Corus Grp. PLC v. Int'l Trade Comm'n*, 352 F.3d 1351 (Fed. Cir. 2003)).  Accordingly, the court issued an injunction covering the party's entries that would have been subject to the withdrawn AR.  *See id.* at 1322, 1324.

Defendant argues that the circumstances in this case resemble the circumstances in *Fuyao I*.  *See* Def. Resp. Br. at 14-15.  According to defendant, plaintiffs are entitled "when the time is appropriate" to request one or more ARs or to move for one or more injunctions on the liquidation of their future entries.  *Id.* at 10, 16-17.  Defendant contends that the availability to plaintiffs of this recourse renders the

liquidation of plaintiffs' future entries more of a possibility than an "actual" threat.  *See id.* at 14-15.

### C.    Analysis

Plaintiffs do not demonstrate that the threat of liquidation of their future entries is "presently existing" and "actual."  Accordingly, plaintiffs do not face irreparable harm without an injunction of indeterminate scope.

### 1.    Whether threat of liquidation is "presently existing"

The threat of liquidation of plaintiffs' future entries is not "presently existing."  To start, the alleged threat posed by the liquidation of plaintiffs' future entries does not accord with the understanding that a threat is presently existing if the entries at issue face immediate liquidation or liquidation as soon as the POR then-underway concludes. *See, e.g.*, *Asociación de Exportadores*, Ct. No. 18-00195, Order for Stat. Inj. upon Consent (Jan. 19, 2021), ECF No. 65; *Dalian*, Ct. No. 20-00110, Order (Oct. 18, 2021), ECF No. 75; *Husteel*, 38 CIT at 1890-93, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3, 1369; *Am. Cast Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15.

Defendant's description of Commerce's process for the suspension of liquidation, which plaintiffs do not contest, establishes that the earliest point at which plaintiffs' future entries might be liquidated is July 6, 2023.  The basis for this conclusion — which the parties do not contest — is that defendant consents already to an injunction that

covers plaintiffs' entries that would be covered by an AR 1 and are made between

November 3, 2020, and April 30, 2022 (excluding any entries made during the gap

period from May 2, 2021, through May 13, 2021).  Defendant consents to the court

enjoining these entries to the end of the litigation.  *See* Def. Resp. Br. at 2.  The first

subset of plaintiffs' entries that faces a threat of liquidation is the subset that would be

covered by an AR 2 and might be made between May 1, 2022, and April 30, 2023 —

entries the review of which plaintiffs or any other interested party is entitled to request in

May 2023.[13]

      This statutory timeline indicates that the threat of liquidation of plaintiffs' future

entries is not "immediate" or "imminent" as the Court previously has interpreted those

terms.  *Cf. Mid Continent*, 44 CIT __, 427 F. Supp. 3d 1375; *Mosaic*, 45 CIT __, 540 F.

Supp. 3d 1330; *Best Mattresses*, 46 CIT __, Slip Op. 22-11 (Feb. 14, 2022).

      Further, of the three decisions that plaintiffs claim support their interpretation of a

"presently existing" threat, *Husteel* is not apposite to this case and *Mid Continent* and

*Mosaic* are not persuasive sources of authority.  To start, *Husteel* does not support

plaintiffs' argument that the threat of liquidation of their future entries is imminent.  In

*Husteel*, the court issued injunctions of limited scope covering a limited and defined

subset of future entries — specifically, entries that would be made during the nine

remaining months of the first POR of the underlying AD order in that case.  *See Husteel*,

---

[13] As discussed *infra*, Section I.C.2.a, plaintiffs may also preserve a suspension of
liquidation on their entries by seeking a Form 24 agreement or pursuing "regular motion
practice."  *See* USCIT Rules, Appendix of Forms, Specific Instructions - Form 24.

38 CIT at 1896, 34 F. Supp. 3d at 1364; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec.

18, 2014), ECF No. 72.  Plaintiffs attempt to analogize the *Husteel* injunctions to

plaintiffs' requested injunction of indeterminate scope, which would cover *all* of plaintiffs'

future entries.  However, contrary to plaintiffs' assertion, the *Husteel* court did not

consider an injunction covering all future entries necessary to ensure "that movants

receive the full benefit of their judicial challenge to the investigation, and possibly to the

order itself."  *See Husteel*, 38 CIT at 1891, 34 F. Supp. 3d at 1360; *see also* Pls. Reply

Br. at 7.  Accordingly, the facts and holding of *Husteel* do not support plaintiffs'

argument.

   Turning to *Mid Continent*, the court does not find persuasive plaintiffs' reliance on

the conclusion in that decision that the harm of liquidation becomes "sufficiently

imminent" when Commerce publishes an AD or CVD order, on the grounds that the

"potential harm flows from the results of the investigation" leading to the order.  *Mid*

*Continent*, 44 CIT at __, 427 F. Supp. 3d at 1383-84.  Typically, the Court has issued

statutory injunctions that cover entries facing immediate liquidation or liquidation as

soon as the POR then-underway concludes.  *See, e.g.*, *Asociación de Exportadores*, Ct.

No. 18-00195, Order for Stat. Inj. upon Consent (Jan. 19, 2021), ECF No. 65; *Dalian*,

Ct. No. 20-00110, Order (Oct. 18, 2021), ECF No. 75; *Husteel*, 38 CIT at 1890-93, 34.

F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF

No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3, 1369; *Am. Cast*

*Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15.  Once that POR

concludes, Customs typically does not liquidate entries made during the ensuing POR

for, at minimum, approximately 14 months.[14]   *See* 19 C.F.R. § 351.213(b)(1), (e)(1).

Further, with respect to entries that would be covered by the ensuing POR, a party is

entitled to pursue three options, any one of which would protect those entries: (1) file a

Form 24 with respect to the entries associated with the ensuing POR; (2) follow "regular

motion practice" to secure an injunction on liquidation with respect to the entries

associated with the ensuing POR; or (3) request an AR with respect to the ensuing

POR.  *See Am. Power*, 39 CIT at __, 121 F. Supp. 3d at 1301-02; *YC Rubber*, 43 CIT at

__ n.2, 415 F. Supp. 3d at 1243 n.2; USCIT Rules, Appendix of Forms, Specific

Instructions - Form 24.

On this basis, plaintiffs' circumstance does not meet the standard for an

immediate threat of liquidation because plaintiffs have ample time — well over one year

— before they might suffer the alleged consequences, and irreparable harm, associated

with the liquidation of their future entries.  *See Fuyao II*, 27 CIT at 1324-25 (declining to

grant an injunction of indeterminate scope, reasoning instead that "immediate

---

[14] These ensuing entries typically are not liquidated for, at minimum, approximately 14 months, because Commerce must wait for the combined length of the following time periods to pass prior to sending liquidation instructions to Customs: (1) the 12-month POR during which the entries are made, *see* 19 C.F.R. § 351.213(e)(1); (2) the anniversary month of the underlying order, which serves as a one-month AR request period, *see* 19 C.F.R. § 351.213(b)(1); and (3) Commerce's typical 35-day waiting period to send liquidation instructions to Customs.  In this case, as the court has stated, should plaintiffs decide to not request an AR 2, the earliest point at which Customs may liquidate plaintiffs' entries that would be covered by an AR 2 is July 6, 2023 — approximately sixteen months from the date of the publication of this decision.

irreparable harm" existed only with respect to entries made during the then recently concluded POR); *see also Nucor*, 29 CIT at 1453, 1464, 412 F. Supp. 2d at 1343, 1352 (concluding that the alleged harm to the moving parties' entries made subsequent to the AR whose final results were appealed was not "'immediate,' as the law requires to justify the extraordinary relief" sought).  These consequences — namely, the loss of plaintiffs' statutory right to judicial review and economic loss with respect to their future entries — do not "presently" exist so long before an act of liquidation that could trigger the consequences might occur.  *See Husteel*, 38 CIT at 1890-91, 1896, 34. F. Supp. 3d at 1359-60, 1364 (determining that the consequences of liquidation were "presently existing" only with respect to entries that were already made or that would be made during the nine remaining months of the POR then-underway (quoting *Zenith*, 710 F.2d at 809)); Pls. Br. at 7.  Accordingly, the court concludes that plaintiffs' reliance in this case on *Mid Continent* is not persuasive.[15]

Last, plaintiffs urge the court to adopt the reasoning and conclusions of the *Mosaic* decision.  *See* Notice Supp. Authority; *Mosaic*, 45 CIT at __, 540 F. Supp. 3d at 1330.  The court declines to do so.[16]  *Mosaic*, which relied extensively upon "the

---

[15] The court notes also that the factual circumstances of *Mid Continent* and this case are strikingly different.  In *Mid Continent*, the court issued an injunction of indeterminate scope after the first two ARs were completed and two additional ARs were underway. *See Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1378-80.

[16] *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (explaining that one judge on the USCIT is not bound by the decisions of another judge on the Court).

reasoning of *Mid Continent*, and the principles upon which it is based, as they apply to the issue of irreparable harm," echoed the conclusion in *Mid Continent* that the threat of liquidation becomes immediate and presently existing upon "the publication of the [AD or] CVD Order."  *Mosaic*, 45 CIT at __, 540 F. Supp. 3d at 1335-36.  For the same reasons that plaintiffs' reliance in this case on *Mid Continent* is not persuasive, the court concludes also that plaintiffs' reliance on *Mosaic* is not persuasive.

In addition, the *Mosaic* decision states correctly that the Court frequently grants statutory injunctions on liquidation pursuant to 19 U.S.C. § 1516a(c)(2).  *See id.* at __, 540 F. Supp. 3d at 1334-35.  However, the Court grants *infrequently* statutory injunctions of indeterminate scope such as the one that plaintiffs propose.[17]  *See Nucor*, 29 CIT at 1463 n.15, 412 F. Supp. 2d at 1351 n.15 (identifying cases "in a wide range of contexts" in which the Court has "denied requests to enjoin the liquidation of future entries"); *see also Husteel*, 38 CIT at 1890-93, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3, 1369; *Am. Cast Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15; *cf. Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1386; *Mosaic*, 45 CIT at __, 540 F. Supp. 3d at 1337-38.  Further, the Federal Circuit has long held that "injunctive relief is to be granted only in extraordinary circumstances"

---

[17] In *Husteel*, for instance, the court did not issue injunctions of indeterminate scope, instead concluding that injunctions of limited scope were appropriate to ensure "that movants receive the full benefit of their judicial challenge to the investigation, and possibly to the order itself."  *See Husteel*, 38 CIT at 1891-92, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF No. 72.

and upon a proper showing that the requested relief is warranted. *Zenith*, 710 F.2d at 809; *see also Sumecht*, 923 F.3d at 1345 ("Although preliminary injunctions against liquidation have become almost automatic in antidumping and countervailing duty cases, they are an extraordinary remedy never awarded as of right." (internal quotation marks and citation omitted)).

In sum, the court concludes that plaintiffs' reliance on the foregoing decisions is misplaced, and the liquidation of plaintiffs' future entries is not a "presently existing" threat.

### 2. Whether threat of liquidation is "actual"

The threat of liquidation of plaintiffs' future entries is not "actual" because both of plaintiffs' reasons that the "premature[]" liquidation of their future entries might occur are speculative. Pls. Reply Br. at 5 n.1.

### a. Whether an ongoing *threat* of liquidation that "increases as the litigation carries on" — as described by plaintiffs — is "actual"

The court considers first plaintiffs' allegation that the threat of liquidation is ongoing and "increases as the litigation carries on." *See* Pls. Reply Br. at 4-5, 8. Plaintiffs argue that the threat of liquidation is ongoing because their entries may be liquidated at the 144.92% rate set by Commerce in its Final Determination "until this litigation is ultimately resolved[,] and that threat only increases as the litigation carries on." *Id.* at 4. According to plaintiffs, "[a]s the years go on" the scenarios under which plaintiffs' entries face an actual threat of liquidation rate will "multiply." *Id.* at 5.

The *Fuyao I* and *Fuyao II* decisions demonstrate the reasons that the mere *threat* of liquidation is speculative — even if it is ongoing and "increases as the litigation carries on". *Id.* at 4; *see Fuyao I*, 27 CIT 1166; *Fuyao II*, 27 CIT 1321.  In *Fuyao I*, the court denied the moving party's first motion for an injunction because the court found that the threat of liquidation posed by the party's potential withdrawal of its AR request was "wholly within [the party's] power to prevent" and consequently was "more in the way of a possibility than a present threat."  27 CIT at 1170.  Once the party withdrew its AR request, however, the court concluded that the threat of liquidation was no longer speculative and now posed irreparable harm.  *See Fuyao II*, 27 CIT at 1324.  According to the court, the "possibility" of liquidation did not present an "actual" threat if the moving party was entitled to pursue recourse to avoid "the eventuality of such harm."  *Fuyao I*, 27 CIT at 1170.

In this case, plaintiffs contend that their future entries face an ongoing threat of liquidation at the 144.92% rate set by Commerce in its Final Determination.  *See* Pls. Reply Br. at 4-5.  Plaintiffs point to several scenarios that might occur during the course of this litigation, which, according to plaintiffs, could lead to the premature liquidation of their future entries.  *See id.*  These scenarios include: (1) plaintiffs (and all other interested parties) decide not to request an AR, and one is not initiated; (2) plaintiffs (or any other interested party) request an AR and then withdraw the request within 90 days of initiation, resulting in the termination of the AR; (3) an AR is conducted and is not appealed to this Court; or (4) plaintiffs (or any other interested party) request an AR, the

AR is conducted, plaintiffs (or any other interested party) appeal the final results of the

AR, but then fail to request an injunction during pendency of the litigation before the

Court.  *See id.*

As a threshold matter, it is notable that, as in *Fuyao I*, plaintiffs have within their

power to decide what to do with respect to each scenario, but have not yet done so —

namely, plaintiffs have not decided: (1) whether they will request one or more ARs; (2)

should plaintiffs request one or more ARs, whether plaintiffs will subsequently withdraw

such a request; (3) should Commerce conduct one or more ARs, whether plaintiffs will

appeal to this Court the final results of the respective AR; or (4) should Commerce

conduct one or more ARs — and should plaintiffs appeal to this Court the final results of

the respective AR — whether plaintiffs will seek a future injunction in conjunction with

such an appeal.[18]  *See id.*; *Fuyao I*, 27 CIT 1166.  The mere possibility that plaintiffs will

make certain decisions associated with each scenario does not support plaintiffs'

contention that the liquidation of their future entries that could result from such decisions

---

[18] In *Fuyao I*, the court concluded that the harm resulting from the liquidation of the
moving party's entries would arise only if the party acted to withdraw its request for an
AR.  *See Fuyao I*, 27 CIT at 1170.  Of the four scenarios to which plaintiffs point, only
one — the second scenario — involves a similar decision to undertake action; the three
remaining scenarios might result in irreparable harm only if plaintiffs decide *not* to act.
*See* Pls. Reply Br. at 4-5.  However, this distinction is not material to a consideration of
whether the premature liquidation that plaintiffs allege might result from the foregoing
scenarios presents an "actual" threat.  In *Fuyao I*, the court determined that whether an
alleged harm is speculative does not depend on whether the party undertakes action to
avoid the harm, but on whether the harm is within the party's "power to prevent."  *Fuyao
I*, 27 CIT at 1170.  This "power," the court noted, may result from the party's "action *or*
inaction."  *Id.* (emphasis supplied).

presents an actual and non-speculative threat, as such liquidation remains wholly within plaintiffs' "power to prevent."  *Fuyao I*, 27 CIT at 1170.

With regard to plaintiff's first scenario, the possibility that plaintiffs will decide not to request an AR does not render the threat of liquidation of plaintiffs' future entries actual and non-speculative.  This decision is fully within plaintiffs' control and, consequently, the threat of liquidation that plaintiffs allege is wholly within their "power to prevent."  *Fuyao I*, 27 CIT at 1170.

Turning to plaintiffs' second scenario, the potential decision to withdraw a request for an AR is precisely the decision addressed in *Fuyao I* and *Fuyao II*.  *Id.* at 1166; *Fuyao II*, 27 CIT 1321.  In *Fuyao I*, the court determined that the liquidation of the moving party's entries did not pose an actual threat prior to the point at which the party withdrew its request for an AR.  *See Fuyao I*, 27 CIT at 1170.  Once the party withdrew its AR request, however, the court concluded that the threat of liquidation was no longer speculative and now posed irreparable harm.  *See Fuyao II*, 27 CIT at 1324.  In accordance with the reasoning set forth in *Fuyao I* and *Fuyao II*, the court concludes that the threat of liquidation associated with plaintiffs' second scenario remains speculative prior to the point at which plaintiffs would decide whether to withdraw their potential request of an AR.  *Fuyao I*, 27 CIT 1166; *Fuyao II*, 27 CIT 1321.

With respect to plaintiffs' third scenario, the decision not to appeal to this Court the final results of an AR would indicate plaintiffs' acceptance of those results.  In such a circumstance, it is not clear to the court how the liquidation of plaintiffs' entries at the

rate determined in final results that plaintiffs do not contest would pose irreparable harm

to plaintiffs.  *See Zenith*, 710 F.2d at 810 (reasoning that "the consequences of

liquidation" pose irreparable harm only with respect to entries for which judicial review is

sought).  Further, the decision of whether to appeal the final results of an AR is fully

within plaintiffs' control and, consequently, the alleged threat of liquidation resulting from

plaintiffs' decision not to pursue such an appeal is within plaintiffs' "power to prevent."

*Fuyao I*, 27 CIT at 1170.  Accordingly, the threat of liquidation associated with this

decision is too conjectural to meet the standard of presenting an actual and non-

speculative threat.

　　　　Last, turning to plaintiffs' fourth scenario, the possibility that plaintiffs will fail to

request a future injunction in conjunction with the appeal of the final results of an AR is

not a convincing reason for the court to issue the injunction that plaintiffs propose in this

action.  The Court will not "exercise its injunctive power where [the moving parties] . . .

[are] afforded adequate alternatives to safeguard their rights."  *NTN Bearing Corp. of*

*Am. v. United States*, 12 CIT 1117, 1120, 701 F. Supp. 226, 228 (1988); *see also*

*Fundicao Tupy S.A. v. United States*, 11 CIT 561, 563, 669 F. Supp. 437, 439 (1987);

42 Am. Jur. 2d, Injunctions § 34 ("The power to grant injunctive relief is not properly

exercised to allay a mere fear or apprehension of injury at an indefinite future time.").  In

this case, the opportunity to request one or more future injunctions presents an

"adequate alternative[]" through which plaintiffs are able to "safeguard their rights."  *NTN*

*Bearing*, 12 CIT at 1120, 701 F. Supp. at 228.

In sum, the fact that none of the scenarios that plaintiffs postulate indicates an

actual, non-speculative threat of irreparable harm, added to the fact that plaintiffs have

not even made any of the four stages of decisions as to which, if any, of the scenarios

may actually happen, makes clear that the threat of irreparable harm is speculative and

not "actual" and, therefore, there is not a basis in law to grant the injunction requested

by plaintiffs.

Moreover, and importantly, plaintiffs do not have to request *any* future ARs in

connection with the Vietnam Mattresses Order to protect their future entries from the

threat of liquidation during the conduct of this litigation.  *See, e.g.*, *Fuyao II*, 27 CIT at

1324-25.  In fact, in *Fuyao II*, the court granted the moving party's motion for an

injunction upon the party's decision to *withdraw* its earlier request for an AR.  *Id*.  Even if

plaintiffs do not subsequently request an AR with respect to a future POR, they are

entitled to pursue two alternative and additional options with respect to each POR

covering their future entries: (1) file a Form 24, should defendant consent to an

injunction; or (2) follow "regular motion practice" to secure an injunction covering the

entries of the POR, should defendant oppose an injunction.[19]  USCIT Rules, Appendix

---

[19] The court conducted an electronic and public search on CM/ECF of actions before
the USCIT, filed between March 10, 2017, and March 10, 2022, that involved appeals of
final determinations by Commerce and the Commission in investigations brought
pursuant to 19 U.S.C. § 1516a(a)(2)(B)(i)-(ii).  Based on this search, parties in 58 cases
requested injunctions on liquidation.  The parties made these requests through the filing
of a Form 24 or through "regular motion practice."  Of the 58 cases, the Court granted
(footnote continued)

of Forms, Specific Instructions - Form 24; *see also Fuyao II*, 27 CIT at 1321, 1325.

Form 24 presents an option of minimal cost and burden that enables plaintiffs to protect

adequately their future entries from the threat of liquidation.  Accordingly, in view of the

Form 24 and "regular motion practice" options, plaintiffs are incorrect to assert that they

would be harmed by a decision "not to undergo a lengthy and burdensome

administrative review."  Pls. Reply Br. at 5-6; USCIT Rules, Appendix of Forms, Specific

Instructions - Form 24; *see also Mid Continent*, 44 CIT at __, 427 F. Supp. 3d at 1384.

To conclude, the liquidation of plaintiffs' future entries is "more in the way of a

possibility than a present threat" and, consequently, is too conjectural to meet the

standard of presenting an actual and non-speculative threat.  *Fuyao I*, 27 CIT at 1170.

The prospect of the premature liquidation of plaintiffs' future entries depends on

presumptions about decisions that plaintiffs have not yet made — decisions that are

---

the requests for injunctive relief in 52 instances; motions are pending in two cases.  Of the four remaining cases, the motion for an injunction was denied in one action due to the moving party's failure to establish standing, *see Synthos S.A. v. United States*, Consol. Ct. No. 17-00250, Order (Feb. 9, 2018), ECF No. 31, and the motions were denied as moot in the other three actions.  *See Am. Cast Iron Pipe Co. v. United States*, Ct. No. 19-00082, Judgment (Dec. 16, 2019), ECF No. 37 (motion mooted following dismissal for lack of subject matter jurisdiction); *Am. Cast Iron Pipe Co. v. United States*, Ct. No. 19-00088, Judgment (Oct. 16, 2019), ECF No. 36 (motion mooted following dismissal for lack of subject matter jurisdiction); *Am. Cast Iron Pipe Co. v. United States*, Ct. No. 19-00084, Mot. for Prelim. Inj. (July 29, 2019), ECF No. 17 (motion mooted following voluntary dismissal of action).

Consequently, the Court has granted injunctions on liquidation in approximately 90% of the cases involving appeals of investigations filed in the past five years in which such relief has been requested.

completely within their control to make such that premature liquidation is completely

within plaintiffs' "power to prevent."  *Id*.

In determining whether the opportunity for future recourse renders the threat of

liquidation speculative, the Court has evaluated the feasibility of such recourse to the

moving party.  *See Fuyao I*, 27 CIT at 1170 (stating that the option available to the

moving party to withdraw its request for an AR would render the threat of liquidation of

the party's entries non-speculative).  Further, the Court has stated that for judicial

review "to be meaningful, it must be capable of providing a party with effective relief and

the ability to enforce its rights" prior to the point at which the party's entries might be

liquidated.  *NSK Corp. v. United States*, 31 CIT 1962, 1965 (2007) (quoting *NMB*

*Singapore Ltd. v. United States*, 24 CIT 1239, 1244, 120 F. Supp. 2d 1135, 1140

(2000)).

In the instant case, should the court grant an injunction of limited scope, plaintiffs

will not be "left without recourse" to avoid the liquidation of their future entries.  *Neo*

*Solar Power Corp. v. United States*, 2016 WL 3247553 at *2 (CIT 2016).  Rather, the

foregoing options — Form 24, "regular motion practice" and the request of one or more

ARs — are available to plaintiffs and are "capable of providing [plaintiffs] with . . . the

ability to enforce [their] rights" with respect to their future entries.  *NSK Corp.*, 31 CIT at

1965 (quoting *NMB Singapore*, 24 CIT at 1244, 120 F. Supp. 2d at 1140).  Accordingly,

the "eventuality" of harm associated with the liquidation of plaintiffs' future entries

remains, at this point, speculative.  *Fuyao I*, 27 CIT at 1170.

> **b.      Whether threat of liquidation resulting from "errors or miscommunication" — as described by plaintiffs — is "actual"**

Plaintiffs allege also that there is an actual threat of premature liquidation that may result from "errors or miscommunications" by the United States.  Pls. Reply Br. at 13-14 (citing *Yancheng Baolong Biochemical Prods. Co. v. United States*, 27 CIT 992, 277 F. Supp. 2d 1349 (2003)).  The fact that Customs may make errors on occasions does not provide a basis for the court to conclude that this *possibility* presents an *actual and non-speculative* threat of liquidation.  *See Sumecht NA, Inc. v. United States*, 42 CIT __, __, 331 F. Supp. 3d 1408, 1412 (2018), *aff'd*, 923 F.3d 1340 (Fed. Cir. 2019) (concluding that plaintiff's allegations that Customs' wrongful liquidation of its entries would deprive plaintiff of the opportunity to challenge Commerce's decisions were "speculative, unsupported . . . [and] not particularized enough to meet the burden of proof required for the issuance of a preliminary injunction").[20]  To the contrary, plaintiffs do not articulate a particularized allegation of mistaken or erroneous liquidation by Customs likely to occur with respect to their future entries.  Accordingly, the court concludes that the mere possibility of future errors by Customs does not constitute an actual, non-speculative threat.

---

[20] It is well established that the Court applies the same four-factor test that it uses in the preliminary injunction context to evaluate motions for injunctions brought pursuant to 19 U.S.C. § 1516a(c)(2).  *See Zenith*, 710 F.2d at 809; *Qingdao*, 581 F.3d at 1378; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1366; *see also* S. Rep. No. 96-249, at 248-49 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 634.

Further, plaintiffs' argument proves too much.  Using plaintiffs' reasoning, the threat of erroneous liquidation by the United States — and, therefore, irreparable harm — would exist necessarily in every investigation or review appealed to this Court, unless the Court were to grant an injunction of indeterminate scope.  Such a use of a statutory injunction would be overly broad.  *See, e.g.*, *Husteel*, 38 CIT 1890-93, 34 F. Supp. 3d at 1360-62; *Husteel*, Consol. Ct. No. 14-00215, Order (Dec. 18, 2014), ECF No. 72; *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1365 n.3, 1369; *Am. Cast Iron Pipe*, Ct. No. 19-00083, Order (Sept. 4, 2019), ECF No. 15; *Fuyao II*, 27 CIT at 1325; *Sumecht*, 42 CIT at __, 331 F. Supp. 3d at 1412 (concluding that plaintiff's allegations that Customs' erroneous liquidation of its entries would pose irreparable harm were "speculative, unsupported . . . [and] not particularized").

Accordingly, the threat of liquidation of plaintiffs' future entries is neither "presently existing" nor "actual," and plaintiffs do not face irreparable harm without an injunction of indeterminate scope.[21]  Following the Supreme Court's 2008 decision in *Winter*, 555 U.S. 7, the Federal Circuit has not decided whether the USCIT is required to evaluate the likelihood of success on the merits, balance of the equities and public interest factors, should a moving party fail to establish irreparable harm.  *See, e.g.*,

---

[21] As already discussed, the court grants the statutory injunction of limited scope that covers plaintiffs' entries made from November 3, 2020, through April 30, 2022 (excluding any entries made during the gap period from May 2, 2021, through May 13, 2021).  The court concludes only that with respect to plaintiffs' proposed injunction of indeterminate scope, plaintiffs fail to demonstrate that the threat of liquidation of their future entries poses irreparable harm.

*Silfab Solar, Inc. v. United States*, 892 F.3d 1340, 1345 (Fed. Cir. 2018) (declining to decide whether the Federal Circuit's "sliding-scale jurisprudence remains good law after *Winter*").  Consequently, following *Winter*, the Court has not consistently considered, or declined to consider, the three remaining factors in cases in which the Court concludes that there is no irreparable harm.  *Compare Lumber*, 43 CIT at __, 393 F. Supp. 3d 1276-77 (noting that the moving party's failure to demonstrate that irreparable harm existed was "grounds for denying injunctive relief"); *Sumecht*, 42 CIT at __, 331 F. Supp. 3d at 1412 ("Because Sumec [sic] has not demonstrated that it will suffer irreparable harm absent a preliminary injunction, the court need not address the remaining three factors."); *with Celik Halat v. Tel Sanayi A.S.*, 44 CIT __, __, 483 F. Supp. 3d 1370, 1377-81 (2020) (evaluating the three remaining factors despite concluding that the moving party failed to establish irreparable harm).  Accordingly, without direction from the Federal Circuit following *Winter*, the court evaluates the parties' arguments with respect to the three remaining factors.

## II.    Likelihood of success on the merits

### A.    Positions of the parties

Plaintiffs contend that they have established a likelihood of success on the merits.  Plaintiffs argue that they have raised several substantial questions challenging Commerce's Final Determination, and that, if they are successful in their challenges, their overall AD margin will drop to zero or to a *de minimis* rate.  *See* Pls. Br. at 8-9. Plaintiffs argue also that they have a lower burden to establish a likelihood of success

on the merits, since "the more the balance of irreparable harm inclines in the [moving

party's] favor, the smaller [is] the likelihood of prevailing on the merits [needed] in order

to get the injunction." *Id.* at 8 (quoting *Qingdao*, 581 F.3d at 1378-79).

      In response to plaintiffs' claims, defendant contends that "Commerce explained

its evaluation of the evidence on the record and the reasons for its final determination."

*See* Def. Resp. Br. at 16.  Defendant argues also that even if plaintiffs show that they

are likely to succeed on the merits (which, defendant maintains, plaintiffs do not), this

factor is not dispositive.  *See id.* (citing *Fuyao I*, 27 CIT at 1171).

### B.  Analysis

      A moving party that fails to establish irreparable harm faces a "significant[] . . .

burden . . . to prove a likelihood of success on the merits."  *Elkem*, 25 CIT at 196, 135 F.

Supp. 2d at 1334-35 (citing *Shandong Huarong Gen. Grp. v. United States*, 24 CIT

1286, 1292, 122 F. Supp. 2d 143, 148 (2000)); *see also Fuyao I*, 27 CIT at 1171.  Even

if the moving party raises "questions which are serious, substantial, difficult, and

doubtful," *PPG Indus., Inc. v. United States*, 11 CIT 5, 8 (1987) (internal quotation

marks omitted), this showing will not satisfy the party's burden to prove a likelihood of

success on the merits.  *See Elkem*, 25 CIT at 196, 135 F. Supp. 2d at 1335 (citing *Am.

Air Parcel Forwarding Co. v. United States*, 1 CIT 293, 298, 515 F. Supp. 47, 52

(1981)).  Further, in cases in which the party fails to establish irreparable harm, a

showing of likely success on the merits is not dispositive of the motion.  *See id.*; *Fuyao

I*, 27 CIT at 1171.

In their complaint, plaintiffs raise a number of issues related to Commerce's Final Determination.  *See* Second Am. Compl.  For example, in counts I and II of the complaint, plaintiffs challenge on the basis of alleged legal and factual errors the weighted-average dumping margin that Commerce assigned to Wanek, Millennium and Comfort Bedding.  *See id.* at 9.  Plaintiffs contend also that Commerce's decision to not list AFI and AFTC as eligible for the rates assigned to the subject merchandise exported by Wanek, Millennium and Comfort Bedding is unsupported by substantial evidence and otherwise not in accordance with law.  *See id.* at 9-10.

Plaintiffs, however, have not established irreparable harm with respect to the liquidation of their future entries, which means that they face a heightened burden to establish a likelihood of success on the merits.  *See Elkem*, 25 CIT at 196, 135 F. Supp. 2d at 1334-35.  The claims that plaintiffs raise — including those noted above, *see* Second Am. Compl. at 9-10 — are insufficient to conclude that this case is one in which "a decision in [plaintiffs'] favor on the merits can be predicted."  *Chilean Nitrate Corp. v. United States*, 11 CIT 538, 540 (1987).  Consequently, plaintiffs do not meet their heightened burden and this factor does not support the issuance of plaintiffs' proposed injunction of indeterminate scope.

## III.    Balance of the equities

### A.    Positions of the parties

On the balance of the equities, plaintiffs present two basic points.  First, they argue that they "have established that a limited period injunction creates a foreseeable

harm to their interests in the form of erroneous liquidation of their entries prior to the

conclusion of this litigation."  Pls. Reply Br. at 15.  Second, plaintiffs argue that

"[c]ontinuing to suspend liquidation of [their] entries identified in the proposed order

during the pendency of litigation, including all appeals, will not impose a significant

hardship on any other party to this proceeding."  Pls. Br. at 10.

Defendant argues that plaintiffs' "request for an [open-ended] injunction . . . is not

necessary to maintain the status quo, because the [future] entries . . . are not in any

danger of being liquidated."  Def. Resp. Br. at 16-17.  In addition, defendant contends

that an injunction of indeterminate scope could "hamper Commerce's ability to perform

its statutory mandate and unnecessarily interfere with matters that are within the

province of the Executive Branch."  *Id.* at 17 (citing *U.S. Steel Corp. v. United States*, 33

CIT 984, 637 F. Supp. 2d 1199 (2009), *aff'd*, 621 F.3d 1351 (Fed. Cir. 2010)).

### B.    Analysis

In the instant appeal, the balance of the equities tips in plaintiffs' favor.  As

discussed, there are three options available to plaintiffs to protect their future entries: (1)

file a Form 24; (2) follow "regular motion practice" to secure an injunction on liquidation;

or (3) request an AR.  *See supra* Section I.C.2.a.  Plaintiffs do not describe with

precision or quantify the cost associated with pursuing any one of these options.

Nonetheless, each option involves a certain expense: (1) with respect to Form 24, the

cost associated with preparing and filing one or more such Forms; (2) with respect to

"regular motion practice," the cost associated with engaging in litigation before this

Court concerning one or more future motions for an injunction; and (3) with respect to

ARs, the cost associated with requesting and participating in one or more ARs.

By contrast, an injunction on the liquidation of all of plaintiffs' entries through the

conclusion of this litigation would not impose upon defendant or defendant-intervenors a

substantial hardship.  *See SKF*, 28 CIT at 175, 316 F. Supp. 2d at 1328.  An injunction

on liquidation "at most inconveniences" the United States, as such an injunction only

delays the United States in collecting or refunding, with interest, "any amounts owed

from or due to" the moving party.  *Id.*  Should the court decide in defendant's favor with

respect to the substantive merits of plaintiffs' action, there is virtually no risk that the

United States will not receive from plaintiffs all of the amounts due and owing.  *See id.*

Further, defendant's argument that an injunction of indeterminate scope could

"hamper Commerce's ability to perform its statutory mandate" is not persuasive.  Def.

Resp. Br. at 17.  Defendant cites to the *U.S. Steel* decision in support of this argument.

*Id.* (citing *U.S. Steel*, 33 CIT 984, 637 F. Supp. 2d 1199).  That decision, which

sustained an administrative decision by Commerce to apply a particular methodology to

calculate weighted-average dumping margins, did not involve a motion for injunctive

relief.  *U.S. Steel*, 33 CIT at 984-85, 637 F. Supp. 2d at 1203-04.  Rather, defendant

references *U.S. Steel* based on the statement in the decision that "[t]he deference

accorded to Commerce's interpretation is at its highest when that agency acts . . . to

harmonize U.S. practices with international obligations" and "allows the Executive

Branch to speak on behalf of the U.S. to the international community on matters of trade

and commerce." *Id.* at 995, 637 F. Supp. 2d at 1212.  Neither this statement, nor the

*U.S. Steel* decision in its entirety, is relevant to a consideration of how the motion for a

statutory injunction before the court "could hamper Commerce's ability to perform its

statutory mandate and unnecessarily interfere with matters that are within the province

of the Executive Branch."  Def. Resp. Br. at 17.  Accordingly, this argument does not

present a consideration that weighs in defendant's favor.

In addition, should the court issue an injunction of indeterminate scope,

defendant would be able to move subsequently to modify or dissolve such an injunction.

In seeking to modify or dissolve an injunction, a party must establish that changed

circumstances make the modification or dissolution necessary and the continuation of

the original injunction inequitable.  *See SolarWorld Americas, Inc. v. United States*, 41

CIT __, __, 279 F. Supp. 3d 1343, 1347 (2017); *see also AIMCOR Alabama Silicon, Inc.*

*v. United States*, 23 CIT 932, 938, 83 F. Supp. 2d 1293, 1299 (1999).  It is true that

dissolution requires a "very compelling demonstration," and the standard for

modification also imposes upon the moving party a high burden.  *See AIMCOR*, 23 CIT

at 939, 83 F. Supp. 2d at 1299; *SNR Roulements v. United States*, 31 CIT 1762, 1764-

65, 521 F. Supp. 2d 1395, 1397-98 (2007).  Nonetheless, in this case, the court

concludes that this potential burden to defendant is outweighed by a greater burden to

plaintiffs.

On the basis of the foregoing considerations, the court concludes that the

balance of the equities tips in plaintiffs' favor.  Nonetheless, the court's conclusion in

this regard does not alter its decision that plaintiffs' requested injunction of

indeterminate scope is not warranted based on the language and legislative history of

19 U.S.C. § 1516a(c)(2).  *See also NTN Corp. v. United States*, 34 CIT 1532, 1538-39,

744 F. Supp. 2d 1370, 1377 (2010) (denying the moving parties' motion for an injunction

despite concluding that the balance of the hardships tipped in the parties' favor); *FMC

Corp.*, 3 F.3d at 427 ("If the injunction is denied, the absence of an adequate showing

with regard to any one factor may be sufficient, given the weight or lack of it assigned

the other factors, to justify the denial.").

## IV.     Public interest

### A.     Positions of the parties

Plaintiffs articulate several arguments to buttress their view that an injunction of

indeterminate scope — rather than an injunction of limited scope — would better serve

the public interest.  In particular, plaintiffs argue that the injunction they favor would

better preserve the statutory right to meaningful judicial review, ensure the effective

enforcement of trade laws, promote the accurate collection of antidumping duties and

foster judicial economy.  *See* Pls. Br. at 10-12; Pls. Reply Br. at 16-17.

Defendant contends that "no valid public interest is served by enjoining the

liquidation of future entries that are not subject to liquidation in the first place."  Def.

Resp. Br. at 17-18.  In addition, defendant argues that plaintiffs are not deprived of

meaningful judicial review because they are required only to "exercise basic due

diligence [and] coordinate with Commerce to update the Form 24 to add new dates" to

protect their future entries as the case progresses.  *Id.* at 17.

## B.    Analysis

Plaintiffs do not meet their burden of establishing that their proposed injunction

better serves the public interest.  *See Zenith*, 710 F.2d at 809; *Ugine*, 452 F.3d at 1292;

*Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1366.  Plaintiffs fail to establish

that an injunction of limited scope restricts their access to judicial review, as such an

injunction allows plaintiffs — through Form 24, "regular motion practice" and the request

for one or more ARs — to maintain access to "meaningful" judicial review and "enforce

[their] rights" with respect to their future entries.  *NSK Corp.*, 31 CIT at 1965 (quoting

*NMB Singapore*, 24 CIT at 1244, 120 F. Supp. 2d at 1140).

In addition, plaintiffs do not demonstrate that an injunction of indeterminate scope

would ensure the effective enforcement of trade laws any more than would an injunction

of limited scope.  Likewise, plaintiffs fail to make such a showing with respect to the

accurate collection of antidumping duties.

Last, plaintiffs point to the benefits in terms of the judicial economy of their

proposed injunction of indeterminate scope.  *See* Pls. Br. at 10-11; Pls. Reply Br. at 17.

Defendant does not contest this argument.  The court concludes that plaintiffs'

argument on this point is persuasive.[22]  However, the court notes also that the purpose

of an injunction on liquidation is to "preserve the status quo during judicial proceedings

---

[22] It is possible that Congress, when it enacted the provisions of law discussed *supra* pertaining to statutory injunctions on liquidation, did not contemplate the nature or complexities of current Commerce, Commission and Customs practice under title VII of the Tariff Act of 1930.  In 1980, Congress revised 19 U.S.C. § 1516a(c)(2) to remove the second sentence of the provision, which stated:

> (2) INJUNCTIVE RELIEF. — . . . In ruling on a request for . . . injunctive relief, the court shall consider, among other factors, whether —
>
> > (A) the party filing the action is likely to prevail on the merits,
> >
> > (B) the party filing the action would be irreparably harmed if liquidation of some or all of the entries is not enjoined,
> >
> > (C) the public interest would best be served if liquidation is enjoined, and
> >
> > (D) the harm to the party filing the action would be greater if liquidation of some or all of the entries is not enjoined than the harm to other persons if liquidation of some or all of the entries is enjoined.

1979 Act § 1001(a).

In revising this provision, Congress directed the Court to "apply the same standards as those employed by the district courts" in deciding on motions for statutory injunctions brought pursuant to 19 U.S.C. § 1516a(c)(2).  H.R. Rep. No. 96-1235, at 41, 69.

In 1984, Congress revised 19 U.S.C. § 1675, the statute regulating the AR process, to require an AR "only when an interested party requests one."  *Husteel*, 38 CIT at 1891, 34 F. Supp. 3d at 1360.  Subsequent to the 1984 revision of the AR process, Congress has not amended 19 U.S.C. § 1516a(c)(2), nor has Congress provided the Court with any further direction as to the Court's evaluation of motions for injunctions in view of the revised AR process.  *See Antidumping and Countervailing Duties; Administrative Reviews on Request; Transition Provisions*, 50 Fed. Reg. 32,556, 32,556 (footnote continued)

so that relief may be provided in accordance with the final litigation results." *Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1366; *see SKF*, 28 CIT at 172, 316 F. Supp. 2d at 1326 ("The purpose of a preliminary injunction is to preserve the relative positions of the parties pending adjudication by the court.").  In the instant case, plaintiffs do not establish that their proposed injunction is *required* to preserve the status quo during the judicial proceedings, as an injunction of limited scope would accomplish the same objective.  *See Am. Cast Iron Pipe*, 43 CIT at __, 399 F. Supp. 3d at 1366.  Accordingly, the judicial economy that an injunction of indeterminate scope would foster does not outweigh that such an injunction would exceed its purpose to preserve the parties' relative positions pending adjudication.  *SKF*, 28 CIT at 172, 316 F. Supp. 2d at 1326.

In addition, any benefits of plaintiffs' proposed injunction in terms of judicial economy are not "sufficient to outweigh the serious deficienc[ies]" with respect to plaintiffs' positions on irreparable harm and likelihood of success on the merits.  *NSK Ltd. v. United States*, 34 CIT 1344, 1350 (2010).  Based on plaintiffs' inability to demonstrate irreparable harm or likelihood of success on the merits, the court concludes that the public interest in this case is better served by the decision not to grant plaintiffs' proposed injunction of indeterminate scope.

---

(Dep't of Commerce Aug. 13, 1985).  In particular, Congress has not provided the Court with further direction as to the Court's application of the "standards . . . employed by the district courts."  H.R. Rep. No. 96-1235, at 41, 69.  Without such direction, the Court evaluates plaintiffs' motion using the direction that Congress provided in 1980.  *See id.*  To the extent that Congress did not contemplate in 1980 the nature of current practice under title VII of the Tariff Act of 1930, it is the prerogative of Congress to consider modifications to the foregoing provisions related to statutory injunctive relief.

## CONCLUSION

The musical *Once Upon a Mattress*,[23] which premiered in May 1959, was an adaptation of Hans Christian Andersen's fairy tale, *The Princess and the Pea*.[24]  Set in a fictional 15th century medieval kingdom in Europe, one element of the story has Prince Dauntless the Drab meeting Winnifred, the 13th princess who seeks to marry him (the first 12 declined his invitation after meeting him).

Minstrel: "And the princess only *looked* as though she'd come in from a storm."

Winnifred: "Actually, I swam the moat.  But never mind.  If I just stand right here, there's a nice draft.  I'll be dry in no time."

Queen: "You swam the moat?"

Winnifred: "All right, I was a little anxious. My friend, Sir Harry uh — he's still out there — he told me you had an opening for a princess.  *Any* princess.  I figured: the Early Bird . . . .  Anyway, here I am.  Who's the lucky man?"

Queen: (After a song) "You swam the moat?"

Winnifred: "Does she ever say anything else except 'You swam the moat?'"

1st knight: "Why don't you ask her yourself?"

Winnifred: "Do you ever say anything except 'You swam the . . .'"

Dauntless: "No, wait!"

---

[23] Mary Rodgers, *Once Upon a Mattress* (1959).

[24] Hans Christian Andersen, "The Princess and the Pea," *in Fairy Tales Told for Children.  First Collection* (1835).

Winnifred: "You're the one, I guess."

Dauntless: "Sure, I'm Prince Dauntless the Drab."

Winnifred: "Well, glad to have met you."

Dauntless: "No, please don't go.  I like you.  Everybody does.  Well, almost everyone."

Winnifred: "Dauntless, I'd like to stay here, but I wouldn't want to come between you and your mother.  So, I guess I'll just face the facts, cut my losses, and just head back to the swamps."

Dauntless: "But I really like you."

Winnifred: "You do?  Why?"

Dauntless: "You swam the moat!"

Following this exchange, the Queen hatches a scheme, indicating that she will permit Dauntless to marry Winnifred if Winnifred is unable to sleep one night due to a pea being placed beneath 20 thick, downy mattresses.  She passes the test, but it is revealed that the King, who favored the marriage, had actually placed jousting equipment and various other sharp items in the mattresses.

* * *

The court notes that there is no indication in the record that the mattresses that are the subject of Commerce's investigation in this action contained jousting equipment, other sharp objects or a pea.

For the reasons stated above, the court concludes that: (1) the threat of

liquidation of plaintiffs' future entries does not pose irreparable harm; (2) plaintiffs do not

demonstrate a likelihood of success on the merits; (3) the balance of the equities tips in

plaintiffs' favor; and (4) an injunction of indeterminate scope as proposed by plaintiffs

does not better serve the public interest.  On this basis, plaintiffs do not establish

entitlement to an injunction of indeterminate scope.  Consequently, the court grants a

statutory injunction covering entries imported by AFI or AFTC, and produced and/or

exported by Wanek, Millennium or Comfort Bedding,[25] from November 3, 2020, through

April 30, 2022, excluding any entries made from May 2, 2021, through May 13, 2021.


                                        /s/      Timothy M. Reif
                                        Timothy M. Reif, Judge


Dated: March 28, 2022
          New York, New York

---

[25] Defendant notes that because Vietnam is a non-market economy ("NME") country
and "Commerce's non-market economy practice uses a chain rate, the Government
consents to enjoin entries produced *and* exported by" Wanek, Millennium or Comfort
Bedding.  Def. Resp. Br. at 18 n.2 (emphasis supplied).  Plaintiffs' proposed injunction,
however, would enjoin the liquidation of entries "produced *and/or* exported by" Wanek,
Millennium or Comfort Bedding.  Pls. Br. at 2 (emphasis supplied).

Pursuant to 19 C.F.R. § 351.107(b)(1)(i), Commerce "may establish a 'combination'
cash deposit rate," also known as a "chain" rate, in AD proceedings involving an NME
country.  However, Commerce's discretion to use a chain rate in AD proceedings
involving an NME country does not *require* that the Court issue an injunction using the
specific terms that defendant proposes.  Further, the Court previously has issued
injunctions covering entries "produced and/or exported" by parties that have appealed
AD proceedings involving NME countries.  *See, e.g.*, *Dalian*, Ct. No. 20-00110, Order
(Oct. 18, 2021), ECF No. 75; *Trans Texas Tire, LLC v. United States*, Consol. Ct. No.
19-00189, Order for Stat. Inj. upon Consent (Sept. 4, 2020), ECF No. 43.  Accordingly,
the court grants an injunction covering entries imported by AFI or AFTC, and produced
and/or exported by Wanek, Millennium or Comfort Bedding.