A-552-827
Remand
Slip Op. 22-131
POI:  07/01/2019 – 12/31/2019
**Public Document**
E&C/OIV:  DP

***Ashley Furniture Industries, LLC; Ashley Furniture Trading Company; Wanek Furniture Co., Ltd.; Millennium Furniture Co., Ltd.; and Comfort Bedding Company Limited v. United States***
**Court No. 21-00283, Slip Op. 22-131 (CIT November 28, 2022)**
**Mattress from the Socialist Republic of Vietnam**

### FINAL RESULTS OF REDETERMINATION
### PURSUANT TO COURT REMAND

## I.    SUMMARY

The U.S. Department of Commerce (Commerce) prepared these final results of redetermination pursuant to the *Remand Order* by the U.S. Court of International Trade (the Court), issued on November 28, 2022.[1]  These final results of redetermination concern Commerce's final determination in the antidumping duty (AD) investigation of mattresses from the Socialist Republic of Vietnam (Vietnam).[2]  In the *Remand Order*, the Court remanded Commerce's *Final Determination* for further explanation or reconsideration of Commerce's selection of financial statements as a basis for surrogate financial ratios used in the *Final Determination*.[3]  The Court also directed Commerce to further explain or reconsider its conclusions that the financial statements used in the *Final Determination*, *i.e.*, those of Emirates Sleep Systems Private Limited (Emirates Sleep), were complete and publicly available.[4]

---

[1] *See Ashley Furniture Industries, LLC; Ashley Furniture Trading Company; Wanek Furniture Co., Ltd.; Millennium Furniture Co., Ltd.; and Comfort Bedding Company Limited v. United States*, Court No. 21-00283, Slip Op. 22-131 (CIT November 28, 2022) (*Remand Order*).
[2] *See Mattresses from the Socialist Republic of Vietnam:  Final Affirmative Determination of Sales at Less Than Fair Value*, 86 FR 15889 (March 25, 2021) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[3] *See Remand Order* at 59.
[4] *Id.*

Accordingly, the Court ordered Commerce to issue its remand redetermination on or before February 26, 2023.[5]

In accordance with the *Remand Order*, Commerce has reexamined the evidence on the record, *i.e.*, Emirates Sleep's financial statements, Sheela Foam Limited's (Sheela Foam) financial statements, and the petitioners'[6] further explanation of how they retrieved Emirates Sleep's financial statements and how this retrieval process constitutes publicly available information.[7]  For these final results of redetermination, we have continued to determine that Emirates Sleep's 2018-2019 audited financial statements are complete and publicly available, and we have continued to use Emirates Sleep's 2018-2019 audited financial statements to derive surrogate financial ratios.  Consequently, Commerce has not revised the surrogate financial ratios used in the calculation of the weighted-dumping margins in the *Final Determination*.

## II.      BACKGROUND

On March 25, 2021, Commerce published the *Final Determination*, which examined two mandatory respondents, Vietnam Glory[8] and Ashley Group,[9] for the period of investigation (POI) July 1, 2019, through December 31, 2019.[10]  As part of its *Final Determination*, Commerce used the financial statements of Emirates Sleep, an Indian producer of mattresses, to

---

[5] *Id*. at 60.

[6] The petitioners are Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO.

[7] *See* Commerce's Letter, "Remand on the Antidumping Duty Investigation of Mattresses from the Socialist Republic of Vietnam:  Denial of Request to Reject Errata Letter from the Record," dated January 24, 2023 (Denial Letter).

[8] Vietnam Glory Home Furnishings Co., Ltd. and Glory (Viet Nam) Industry Co., Ltd. (collectively, Vietnam Glory).

[9] Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd., and Comfort Bedding Co., Ltd. (collectively, Ashley Group).

[10] *See Final Determination.*

calculate surrogate financial ratios for the respondents.[11]  Commerce used Emirates Sleep's financial statements as a basis for surrogate financial statements because they reflect a profit from the production and sale of identical merchandise, are publicly available, represent a manufacturer of all types and kinds of mattresses (*i.e.*, subject merchandise), are representative of a broad market average, and show no evidence to have reason to believe or suspect receipt of subsidies from Indian programs we have found to be countervailable.[12]

Ashley Group filed a complaint before the Court seeking judicial review of Commerce's *Final Determination*.  On November 28, 2022, the Court sustained in part and remanded in part Commerce's *Final Determination*.[13]  On January 4, 2023, we reopened the record and issued a supplemental questionnaire to the petitioners, requesting further explanation of the source and process by which they retrieved Emirates Sleep's financial statements and how this process, as well as the financial statements themselves, constituted publicly available information.[14]  On January 11, 2023, the petitioners submitted their response to the supplemental questionnaire,[15] and on January 18, 2023, Ashley Group submitted comments rebutting the petitioners' response.[16]  On January 19, 2023, the petitioners submitted an errata letter correcting a minor error in their supplemental questionnaire response.[17]  Although Ashley Group requested that

---

[11] *See Final Determination* IDM at Comment 2.  For Vietnam Glory, Commerce relied on total facts available with an adverse inference and, therefore, did not apply any surrogate financial ratios derived from Emirate Sleep's financial statements for the *Final Determination*.  *Id.* at Comment 1.
[12] *Id.* at Comment 2.
[13] *See Remand Order*.
[14] *See* Commerce's Letter, "Mattresses from the Socialist Republic of Vietnam:  Remand Redetermination," dated January 4, 2023 (Remand SQ).
[15] *See* Petitioners' Letter, "Mattresses from Vietnam:  Mattress Petitioners' Response to Commerce's Section D Supplemental Questionnaire," dated January 11, 2023 (Remand Supplemental Response).
[16] *See* Ashley Group's Letter, "Mattresses from Vietnam:  Rebuttal Comments to Petitioners' Section D Second Supplemental Questionnaire Response," dated January 18, 2023 (Ashley Group's Rebuttal).
[17] *See* Petitioners' Letter, "Mattresses from Vietnam:  Errata to Mattress Petitioners' Response to Commerce's Section D Supplemental Questionnaire," dated January 19, 2023 (Petitioners' Errata Letter).

Commerce reject the petitioners' errata letter from the record,[18] we determined to allow the errata letter to remain on the record.[19]  On January 31, 2023, we released draft results of redetermination responding to the Court's orders by further explaining Commerce's finding in the *Final Determination* that Emirates Sleep's financial statements constitute the best available evidence on the record from which to derive surrogate financial ratios, including the criteria of completeness and public availability.  On February 7, 2023, the parties commented on the draft results.[20]

## III.    ANALYSIS

In accordance with 19 CFR 351.408(c)(4), in an AD investigation involving a non-market economy (NME) country, Commerce calculates the normal value for manufacturing overhead, general expenses, and profit using non-proprietary information gathered from producers of identical or comparable merchandise in the surrogate country."[21]  Commerce granted interested parties the opportunity to comment on the selection of surrogate value data sources and submit potential sources on the record,[22] which Commerce would then analyze against established criteria to determine which potential data source constitutes the best available information.[23]  The completeness of a given financial statement is one criterion against which we evaluate

---

[18] *See* Ashley Group' Letter, "Mattresses from Vietnam:  Request to Reject Petitioners' New Factual Information," dated January 20, 2023.
[19] *See* Denial Letter at 2.
[20] *See* Ashley Group's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated February 7, 2023 (Ashley Group's Comments); *see also* Petitioners' Letter, "Mattress Petitioners' Comments on Commerce's Draft Results of Redetermination Pursuant to Court Remand," dated February 7, 2023 (Petitioners' Comments).
[21] *See Changzhou Trina Solar Energy Co. v. United States*, 450 F. Supp. 3d 1301, 1314-15 (CIT 2020) (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 618 F.3d 1316, 1319-20 (Fed. Cir. 2010).
[22] *See* Commerce's Letter, "Antidumping Duty Investigation of Mattresses from the Socialist Republic of Vietnam: Request for Economic Development, Surrogate Country and Surrogate Value Comments and Information," dated June 11, 2020.
[23] *See CP Kelco US, Inc. v. United States*, Slip Op. 15-27 (CIT 2015) (*CP Kelco*), at 13 (citing *Blue Field (Sichuan) Food Indus. Co. v. United States*, 1619, 1635-40, 949 F. Supp. 2d 1311, 1328-31 (CIT 2013)); *see also Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1364-67 (Fed. Cir. 2019).

information on the record.[24]  However, it is not our practice to outright reject given financial

statements if any piece is absent.[25]  Instead, we consider whether the missing information is vital

to our analysis and calculations.[26]

In the instant case, we find that Emirates Sleep's financial statements are complete for

our analysis and calculations.  The information at issue is five annexures to certain line items

within the supplemental notes forming part of the financial statements.  All parties acknowledge

that Annexures 1 through 5 are referenced in Emirates Sleep's financial statements but are

missing from the record,[27] and the Court has found that Commerce adequately explained its

finding that Annexures 1 through 4 are "supplemental details not forming part of the Emirates

Sleep financial statements and unnecessary for Commerce purposes of calculating surrogate

financial ratios."[28]  With respect to Annexure 5, we provide further explanation of our conclusion

that Emirates Sleep's financial statements are complete and constitute the best available

information, despite the absence of Annexure 5 from the record.

<u>Completeness</u>

The Court was concerned that Commerce did not address that fact that Annexure 5 was

entitled "Short-term loans and advances" and may contain information about distortive subsidies,

particularly in the line item (b), "Balances with government authorities."[29]  If evidence of

countervailable subsidies were present in the financial statements, per our standard practice, we

---

[24] *See CP Kelco* at 5 (citing *Ass'n of Am. Sch. Paper Suppliers v. United States*, 1046, 1054, 791 F. Supp. 2d 1292, 1301 (CIT 2011)); *see also Notice of Final Determination of Sales at Less than Fair Value:  Steel Concrete Reinforcing Bars from Belarus*, 66 FR 33528 (June 22, 2001) (*Rebar from Belarus*), and accompanying IDM at Comment 2).

[25] *Id*.

[26] *Id*.

[27] *See Remand Order* at 26.

[28] *Id.* (citing *Final Determination* IDM at 30).

[29] *Id.* at 31; *see also* Petitioners' Letter, "Mattresses from the Socialist Republic of Vietnam:  Petitioners' Surrogate Values Submission," dated July 30, 2020 (Petitioners' SV Comments), at Exhibit 11.

would not consider Emirates Sleep's financial statements as a basis for surrogate financial ratios because the statements would be distorted by countervailable subsidies.[30]  Thus, when analyzing the financial statements submitted for consideration as potential sources for surrogate information, we consider whether the companies received countervailable subsidies.

Under this analysis, Annexure 5 cannot categorically contain any evidence of potentially countervailable subsidies received by Emirates Sleep from the government for the following reasons.  The title of Note 13, "Short-term loans and advances," identifies that loans and advances are categorized therein, but the title does not indicate the direction of such loans or advances.[31]  Instead, the balance sheet clearly identifies Note 13 alongside item (d), "Short-term loans and advances" under "Current Assets."[32]  Because Note 13 is classified entirely as an asset, any loans or advances contained therein must be *from* Emirates Sleep *to* government authorities, as loans given are classified as assets and loans received are classified as liabilities.  Therefore, we conclude that Annexure 5 could not potentially demonstrate receipt of a countervailable subsidy because Note 13, and thereby Annexure 5, pertain to loans or advances given, not received.  Annexure 5 does not detail receipt of anything from government authorities; therefore, no potential subsidization would be revealed by the inclusion of Annexure 5 on the record.

If Emirates Sleep received any loans or advances from the government, the loans would be classified under "Equity and Liabilities" in the balance sheet and further broken down within Notes 5 through 8.[33]  However, Notes 5 through 8 do not evince receipt of any government loans

---

[30] *See, e.g.*, *Notice of Preliminary Determination of Sales at Less Than Fair Value, Negative Preliminary Determination of Critical Circumstances and Postponement of Final Determination:  Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 FR 42672, 42682 (July 16, 2004), unchanged in *Final Determination of Sales at Less Than Fair Value:  Certain Frozen and Canned Warmwater Shrimp from the Socialist Republic of Vietnam*, 69 FR 71005 (December 8, 2004).
[31] *See* Petitioners' SV Comments at Exhibit 11.
[32] *Id.*
[33] *Id.*

or advances pertaining to short-term borrowings, trade payables, other current liabilities, and short-term provisions, respectively.[34]  Annexure 1, contained in Note 6, involves trade payables, and Annexure 2, contained in Note 8, involves salaries payable,[35] neither of which involve subsidies, loans, or advances, or impact our financial ratio calculations.[36]  We included this analysis in the *Final Determination* IDM, and the Court found our explanation satisfactory.[37]

Next, because Note 13 pertains to loans and advances *from* Emirates Sleep *to* other entities not affiliated with Emirates Sleep, any quantities enumerated therein have no impact on our financial ratio calculations.  When calculating the surrogate overhead, selling, general, and administrative (SG&A) expenses, and profit ratios, we look to the income statement to derive a total of materials, labor, and energy, as well as total overhead expenses, SG&A expenses, and reported profit.[38]  Current Assets, as Note 13 is classified, are not considered in any of the above calculations.[39]  Revenue is broken out in Notes 14 and 15 in Emirates Sleep's financial statements, reflecting revenue from sale of products, sale of services, interest income, and other income.[40]  The line item "other income" per Note 2.16, includes "{i}nterest income on fixed deposits {…} reversal of excel provisions, stock shortage, and insurance recovery received during the year,"[41] and only accounts for 0.40 percent of total revenue.  Current assets are not classified as revenue, and none of the above revenue categories evince receipt of subsidies from the government.[42]  The magnitude of Emirates Sleep's loans and advances it lent to government

---

[34] *Id.*
[35] *Id.*
[36] *Id.*
[37] *See Remand Order* at 26-29.
[38] *See* Memorandum, "Analysis Memorandum for Ashley Furniture Industries, Inc., Ashley Furniture Trading Company, Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd., and Comfort Bedding Company Limited (collectively, Ashley Group)," dated March 18, 2021, at Attachment VIII.
[39] *Id.*
[40] *See* Petitioner's SV Comments at Exhibit 11.
[41] *Id.*
[42] *Id.*

authorities does not factor into the company's revenue, profit, or cost of manufacturing, and is thereby immaterial to our calculation of surrogate overhead, SG&A, and profit ratios.

Finally, after reconsideration, Commerce's statement that "only non-market based government loans would be distortive" is moot and neither necessary nor relevant to our analysis. Note 13 breaks out current assets in the form of short-term loans and advances that Emirates Sleep provided to outside parties.[43] It does not and cannot consist of subsidies received from outside parties. This includes Annexure 5 to item (b), "balances with government authorities."[44] Because there are no loans *to* Emirates Sleep in Annexure 5, the discussion of a loan's market of origin is unnecessary.

*Public Availability*

We continue to find that Emirates Sleep's financial statements are publicly available. On January 4, 2023, we reopened the record and issued a supplemental questionnaire, requesting the petitioners demonstrate how they obtained Emirates Sleep's financial statements, including narrative explanations and screenshots of each step in the process, as well as an explanation of how such a retrieval method constitutes publicly available information.[45] On January 11, 2023, the petitioners responded by providing explanations and screenshot evidence for its retrieval of Emirates Sleep's financial statements from two separate sources, the Indian Ministry of Corporate Affairs (MCA) and Zauba Corp.[46] On January 18, 2023, Ashley Group filed comments rebutting elements of the petitioners' response.[47] Including this supplemental information in our analysis, we disagree with Ashley Group's contention that Emirates Sleep's

---

[43] *Id.*
[44] *Id.*
[45] *See* Remand SQ.
[46] *See* Remand Supplemental Response at 1-2 and Exhibits 3 and 6.
[47] *See* Ashley Group's Rebuttal.

financial statements were not available on the MCA website or available publicly, generally, during the investigation.[48]

Pursuant to 19 CFR 351.408(c)(4), Commerce relies on publicly available information for its calculations to afford interested parties the ability to comment on the reliability and relevance of such information in the particular case.[49]  In this case, all interested parties are capable of obtaining the financial statements and commenting on reliability and relevance of the information.  In their response to our supplemental questionnaire, the petitioners provided a step-by-step demonstration of how they retrieved the financial statements from both sources.[50]  First, the petitioners identified the company identification number (CIN), U51909MH2005PTC156771, associated with the retrieved documents on each source website, which matches the CIN listed on Emirates Sleep's financial statements.[51]  Ashley Group claims the presumption it would possess Emirates Sleep's CIN "astounding,"[52] but we disagree.  The petitioners submitted Emirates Sleep's financial statements to the record, which clearly identify the company's CIN.[53]

Continuing through the petitioners' step-by-step instructions, one must create an account to access and download the documents from the MCA website and Zauba Corp.'s website.[54]  Regarding MCA, Ashley Group claims that an applicant must supply a PAN – an individual-specific identification number issued by India's Income Tax Department – thereby precluding non-Indian citizens or residents from accessing MCA documents.[55]  However, this is

---

[48] *See* Ashley Group's Letter, "Mattresses from the Socialist Republic of Vietnam:  Case Brief," dated December 29, 2020, at 33.
[49] *See Final Determination* IDM at 35.
[50] *See* Remand Supplemental Response at Exhibits 3 and 6.
[51] *See* Petitioners' SV Comments at Exhibit 11.
[52] *See* Ashley Group's Rebuttal at 3.
[53] *See* Petitioners' SV Comments at Exhibit 11.
[54] *See* Remand Supplemental Response at Exhibits 3 and 6.
[55] *See* Ashley Group's Rebuttal at 5.

demonstrably false.  Ashley Group provided screenshots indicating that the PAN is not a requirement for registration.[56]  When applying for a new user account, an applicant must first select the user category of "Registered User" or "Business User," then select a "User Role," and finally enter an "Income Tax PAN."[57]  Whether the PAN is mandatory depends on the selected category, *i.e.*, an asterisk (*) appears next to the "Income Tax PAN" field when the "Business User" category is selected but no asterisk appears next to the "Income Tax PAN" field when the "Registered User" category is selected.[58]  As the website notes, "{a}ll fields marked in * are to be mandatorily filled."[59]  Because the PAN is not a requirement for registration as a "Registered User," the MCA website is not "only reserved for Indian citizens or residents and not the public," as Ashley claims.[60]  Instead, the MCA website is "a registry of records, relating to the companies registered with them, which are available for inspection by members of {the} public on payment of the prescribed fee."[61]  The information contained on the MCA website is retrieved by selecting "View Public Documents."[62]  Because the Government of India denotes the information as "public documents" that are "available for inspection by members of the public on payment of the prescribed fee,"[63] and because the public can access this information with or without a PAN, Commerce considers the MCA website to be public.

Once an account is created at either website, a user may retrieve and download Emirates Sleep's financial statements from various years.  Ashley Group alleges that Emirates Sleep's financial statements are not available on Zauba Corp.'s website,[64] but this is also demonstrably

---

[56] *Id.* at Exhibit 1.
[57] *Id.*
[58] *Id.*
[59] *Id*.
[60] *Id.* at 6.
[61] *See* Remand Supplemental Response at Exhibit 2.
[62] *Id*. at 2-3 and Exhibit 3.
[63] *Id.* at 2-3 and Exhibit 2.
[64] *See* Ashley Group's Rebuttal at 6.

false.  Ashley Group bases its argument on the fact that, in their step-by-step instructions, the petitioners incorrectly highlighted a specific document as containing Emirates Sleep's financial statements from a list of documents downloaded from Zauba Corp.'s website.[65]  Further, Ashley Group downloaded and submitted the document incorrectly identified by the petitioners to the record, titled "Details of salient features and justifications for entering into Contracts/Arrangements/Transactions with related parties as per section 188 (1) -Form AOC 2 – 16122019."[66]  Ashley Group explains that this document does not contain Emirates Sleep's complete 2018/2019 financial statements and concludes that the financial statements must be unobtainable from Zauba Corp.'s website.[67]

However, Emirates Sleep's financial statements are obtainable from Zauba Corp.'s website.  Two items below the incorrectly identified document on the list of documents downloaded from Zauba Corp.'s website is a document titled "Copy of Financial Sta{t}ements duly authenticated as per section 134 (Including Boards report, auditors report and other documents)-16122019" and dated December 16, 2019.[68]  Although the petitioners incorrectly identified the appropriate document,[69] the record demonstrates that Emirates Sleep's financial statements are available, clearly labeled, and ready for download once a user pays a small fee.[70]  Further, Ashley Group was able to download the incorrectly identified document, demonstrating that Emirates Sleep's information is obtainable from Zauba Corp.'s website.[71]  Because Ashley Group was able to follow the petitioners' step-by-step instructions on Zauba Corp.'s website and download the document incorrectly identified by the petitioners, it is reasonable to conclude that

---

[65] *See* Remand Supplemental Response at Exhibit 6.
[66] *See* Ashley Group's Rebuttal at 6 and Exhibit 5.
[67] *Id.* at 6-7.
[68] *See* Remand Supplemental Response at Exhibit 6.
[69] *See* Petitioners' Errata Letter.
[70] *Id.*
[71] *See* Ashley Group's Rebuttal at Exhibit 5.

Ashley Group could have just as easily retrieved and downloaded the clearly labeled financial statements also located on the website.  Therefore, for the foregoing reasons and because "{t}he information on Zauba Corp. is all a matter of public record, is sourced from the official registers, and is from published government data,"[72] we find that Zauba Corp.'s website is also a publicly available source of information, provided users pay a small fee.

Emirates Sleep's financial statements are available on both the MCA and Zauba Corp. websites.  Per the petitioners' instructions, the documents indicated for download were filed on December 16, 2019.[73]  In Emirates Sleep's financial statements on the record, the independent auditor's report is dated September 29, 2019.[74]  In the Board's report, the Chairperson's digital signature is dated December 12, 2019.[75]  Thus, it is reasonable to conclude that the Emirates Sleep financial audit for the year ending March 31, 2019 was completed no later than September 29, 2019, presented to the company's board of directors no later than December 12, 2019, and then submitted to the appropriate tax authorities.  Therefore, the documents that the petitioners identified on Zauba Corp.'s website, dated December 16, 2019,[76] are indeed the financial statements covering the year ending March 31, 2019.  Further, while the petitioners relied on the 2022 reporting year for their demonstration of retrieval on the MCA website, users may filter the documents therein by a different year of filing, *i.e.*, 2019, to obtain the Emirates Sleep financial statements covering the year ending March 31, 2019.[77]  Therefore, we disagree with Ashley Group's claim that the statements used in the *Final Determination* were "not available on the {MCA} website."[78]

---

[72] *Id.* at 3 and Exhibit 5.
[73] *See* Remand Supplemental Response at Exhibit 6.
[74] *Id.*
[75] *See* Petitioner's SV Comments at Exhibit 11.
[76] *See* Remand Supplemental Response at Exhibit 6.
[77] *Id.* at Exhibit 3.
[78] *See Remand Order* at 35.

Finally, Ashley Group alleges there is still no indication the financial statements were publicly available at the time of their submission.[79]  However, we disagree.  As outlined above, we find the MCA and Zauba Corp. websites satisfy our threshold for public availability. Interested parties can create accounts and retrieve and obtain information, including Emirates Sleep's financial statements from various years, provided they pay a small fee.[80]  As we have found in prior cases, financial statements need not be free of charge to be considered publicly available.[81]  Using Zauba Corp.'s website as an illustration, we observe only a small lag in time between dates of documents and dates of availability.  The list of downloadable documents from Zauba Corp.'s website includes files dated as recently as December 20, 2022.[82]  The petitioners received access to this list of downloadable documents from Zauba Corp. on January 5, 2023, as indicated by Zauba Corp.'s email confirming the successful completion of the order and offering several links to the purchased data.[83]  Commerce initiated the less-than-fair-value investigation of mattresses from Vietnam on April 20, 2020.[84]  Thus, we find that Emirates Sleep's financial statements covering the year ending March 31, 2019, signed December 12, 2019,[85] and dated December 16, 2019[86] were accessible on publicly available websites at the time the petitioners submitted them to the record and interested parties would have been able to retrieve and obtain Emirates Sleep's financial statements on either the MCA website or Zauba Corp.'s website.

---

[79] *See* Ashley Group's Rebuttal at 7.

[80] *See* Remand Supplemental Response at Exhibits 3 and 6.

[81] *See 1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value*, 74 FR 10545 (March 11, 2009), and accompanying IDM at Comment 1; *see also Certain Preserved Mushrooms from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review and Rescission in Part*, 76 FR 56732 (September 14, 2011), and accompanying IDM at Comment 4; *and Certain Steel Nails from the People's Republic of China:  Preliminary Results and Partial Rescission of the Third Antidumping Duty Administrative Review*, 77 FR 53845, 53852 (September 4, 2012).

[82] *See* Remand Supplemental Response at Exhibit 6.

[83] *Id.*

[84] *See Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam:  Initiation of Less-Than-Fair-Value Investigations*, 85 FR 23002 (April 20, 2020).

[85] *See* Petitioners' SV Comments at Exhibit 11.

[86] *See* Remand Supplemental Response at Exhibit 6.

Considering our analysis in the *Final Determination* IDM and further supplemented here, we continue to find that Emirates Sleep's financial statements constitute the best available information as the basis for surrogate financial ratios used to calculate the AD margin for Ashley Group in the *Final Determination*.

## IV.   INTERESTED PARTIES' COMMENTS ON THE DRAFT REDETERMINATION

On January 31, 2023, Commerce released the draft results of redetermination,[87] and invited interested parties to comment on the Draft Remand.  On February 7, 2023, Ashley Group and the petitioners each submitted comments regarding the draft results of redetermination.[88]

**Issue 1:  Completeness of Emirates Sleep's Financial Statements**

*Ashley Group Comments:*
- Commerce's finding that Annexure 5 cannot contain evidence of subsidies is speculative, unsupported by substantial evidence, and fails to address the Court's instructions.[89]
- Commerce's logic and basic accounting principles are flawed because receipt of countervailable subsidies could appear in a variety of ways within financial statements, as evidenced by Commerce's countervailing duty proceedings in India where numerous programs could be reflected as assets on a company's balance sheet.[90]
- Commerce's argument that the lack of information about Emirates Sleep's balances with government authorities has "no impact on our financial ratio calculation" concerns the calculation of surrogate financial ratios rather than the viability of the entire surrogate financial statements.[91]
- Commerce relies on faulty accounting interpretations to rule out the possibility of receipt of countervailable subsidies when, in fact, Commerce lacks sufficient evidence required to support such an assertion.[92]

---

[87] *See* Draft Results of Remand Redetermination, *Ashley Furniture Industries, LLC; Ashley Furniture Trading Company; Wanek Furniture Co., Ltd.; Millennium Furniture Co., Ltd.; and Comfort Bedding Company Limited v. United States*, Court No. 21-00283, Slip Op. 22-131 (CIT November 28, 2022), dated January 31, 2023 (Draft Remand).
[88] *See* Ashley Group's Letter, "Comments on Draft Results of Redetermination Pursuant to Court Remand," dated February 7, 2023 (Ashley Group's Comments); *see also* Petitioners' Letter, "Mattress Petitioners' Comments on Commerce's Draft Results of Redetermination Pursuant to Court Remand," dated February 7, 2023 (Petitioners' Comments).
[89] *See* Ashley Group's Comments at 2.
[90] *Id.* at 3-4.
[91] *Id.* at 4.
[92] *Id.* at 5.

*Petitioners' Comments*:
- Commerce's Draft Remand fully complies with the Court's *Remand Order* as it pertains to the completeness of Emirates Sleep's financial statements.[93]

**Commerce's Position:**  We disagree with Ashley Group.  We reviewed Emirates Sleep's financial statements on the record and conclude that the missing Annexure 5 could not demonstrate receipt of countervailable subsidies and that, taken together with our analysis in the *Final Determination*, all information vital to our analysis is on the record.  Therefore, we continue to reasonably conclude that Emirates Sleep's financial statements are complete for our purposes.

When requesting further explanation of our conclusion that Emirates Sleep's financial statements are complete, the Court noted that "Commerce does not invariably reject incomplete financial statements, but instead looks to whether the missing information is 'vitally important' or 'key.'"[94]  The Court added that the missing Annexures might by key "such that their omission rendered {Emirates Sleep}'s financial statements incomplete."[95]  Here, we do not find that every component of Emirates Sleep's financial statements is on the record in their entirety.  Rather, we find that record evidence does not demonstrate that the missing information is "vitally important" or "key" to our identification of evidence of countervailable subsidies.  Additionally, the missing information does not interfere with our ability to derive surrogate financial ratios.  In both regards, the record contains adequate information.

First, the record demonstrates that evidence of countervailable subsidies would not appear in Annexure 5.  Annexure 5 to Note 13 pertains to "balances with government authorities" itemized under "short-term loans and advances," which are classified as "Current

---

[93] *See* Petitioners' Comments at 2.
[94] *See Remand Order* at 25 (citing *CP Kelco* at 5).
[95] *Id*. at 26.

Assets" in the company's balance sheet.[96]  These titles alone do not relay the direction of any loans or advances contained therein, but the classification as a "current asset" does.  Any balance listed as an asset would indicate a loan *to* government authorities and not *from* government authorities.  Further, any balance(s) listed in Annexure 5 would reflect the loan principal, not any conferred benefit, if a benefit were to exist.  This alone would not evince countervailable programs nor any conferred benefit.  Instead, we must look elsewhere on the financial statements for evidence of a financial contribution related to such an arrangement.  We can review the rest of the financial statements because they are on the record, and we do not find any evidence of an Indian program that we have previously found to be countervailable or any Indian program involving companies providing loans to government authorities.[97]  Moreover, parties have not provided evidence of where Commerce has found a loan or advance by the respondent to the government to be a countervailable subsidy program.  The parties have not explained how a loan or advance provided to a government would constitute a financial contribution or benefit as defined within sections 771(5)(D) and (E) of the Tariff Act of 1930, as amended (the Act), respectively.  In short, based on record evidence, we may reasonably conclude that Annexure 5 could not contain evidence of countervailable subsides.  Further, because "current assets" do not impact our calculations of surrogate overhead, SG&A expenses, or profit ratios, we may also reasonably conclude that Annexure 5, while missing, does not contain "vital" or "key" information for our purposes.

Ashley Group correctly notes that countervailable programs may appear anywhere in financial statements.[98]  However, Annexure 5 pertains to a specific line item that falls under

---

[96] *See* Petitioners' SV Comments at Exhibit 11.
[97] *Id.*
[98] *See* Ashley Group's Comments at 3.

"short-term loans and advances" classified as "current assets."[99]  Not just *any* program could appear here.  In making this point, Ashley Group did not provide any examples of Indian programs wherein loans or advances are provided by companies to the government that Commerce has previously found to be countervailable.[100]  Further, Ashley Group has not argued the existence of any countervailable programs in the Emirates Sleep's financial statements. Ashley Group admits that "direct loans or advances from government authorities to Emirates Sleep would ostensibly appear as liabilities on Emirates Sleep's balance sheet."[101]  Thus, Ashley Group agrees that loans or advances *from* the government would ostensibly not appear in Annexure 5.  We reviewed the remainder of Emirates Sleep's financial statements for evidence of a countervailable subsidy, and no evidence exists.[102]  We see no evidence of benefits from providing loans to the government, and it is our practice to only consider programs that we have previously found to be countervailable and not examine the countervailability of business activities within an AD proceeding.[103]

Second, once we have reasonably assessed that Annexures 1 through 5 of Emirates Sleep's financial statements do not contain evidence of receipt of countervailable subsidies, we look to other criteria for eligibility.  We can identify the reporting period, the company's operating activities, the company's reported profit before tax, and the company's comparability to the respondent.[104]  Emirates Sleep's financial statements include all this information, and are therefore, complete for providing surrogate value information.

---

[99] *See* Petitioners' SV Comments at Exhibit 11.
[100] *Id.*
[101] *See* Ashley Group's Comments at 4.
[102] *See* Petitioners' SV Comments at Exhibit 11.
[103] *See Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1359 (CIT 2011).
[104] *See* Petitioners' SV Comments at Exhibit 11.

**Issue 2:  Potential Distortion in Emirates Sleep's Financial Statements**

*Ashley Group's Comments:*
- Commerce failed to address how the sizable balance under Note 13 (in Annexure 5) lacked the potential to distort Commerce's calculations should that information reveal the receipt of countervailable subsidies.[105]
- Without any knowledge of the contents of Annexure 5, Commerce nonetheless characterizes the amounts in this annexure as "loans and advances {Emirates Sleep} lent to government authorities."[106]
- Commerce failed to explain why, or under what circumstances, a company would lend or advance an amount equal to 12 percent of its total revenue to government authorities, let alone how such an arrangement would not distort other information contained within the financial statements.[107]

No other interested party commented on this issue.

**Commerce's Position:**  We disagree with Ashley Group.  Although we acknowledge that Emirates Sleep provides a large principal of loans/advances to government authorities, the relevant size of income earned on sales to, or interest income received from, government authorities is not a factor that Commerce considers as part of its analysis of surrogate financial statements.  Because the record contains adequate evidence to reasonably conclude that Annexure 5 could not contain evidence of countervailable subsidies, it is unnecessary to hypothesize as to the potential distortion of a countervailable subsidy contained therein.

**Issue 3:  Public Availability of Emirates Sleep's Financial Statements**

*Ashley Group's Comments:*
- Commerce's explanation fails to address information on the record indicating that the PAN is necessary to obtain access to the Emirates Sleep financial statements from the MCA website.[108]
- Commerce failed to demonstrate that Emirates Sleep's financial statements were available contemporaneously with the investigation, not just after the fact.  Even if Commerce determined that Emirates Sleep's financial statements are now publicly available, such a finding is merely based on new factual information that was supplied only after the investigation ended.[109]

---

[105] *See* Ashley Group's Comments at 5-6.
[106] *Id.* at 6.
[107] *Id.*
[108] *Id.* at 7.
[109] *Id.*

*Petitioners' Comments:*
- Commerce's Draft Remand fully complies with the Court's *Remand Order* as it pertains to the public availability of Emirates Sleep's financial statements.[110]

**Commerce's Position:** We disagree with Ashley Group. The petitioners provided a clear and adequate, step-by-step demonstration of how they retrieved the financial statements from the MCA website. Record evidence indicates that the MCA website is a publicly available source because parties may independently access it. Record evidence also indicates that the PAN is not a requisite to create an MCA account and pay a small fee to obtain access to the Indian Registrar of Companies. Moreover, in previous investigations, we have determined that the MCA website constitutes a publicly available source of information.[111]

Emirates Sleep's financial statements meet the threshold of being considered "publicly available" for our purposes. In *Certain Lined Paper Products from China*,[112] and *Certain Activated Carbon from China*,[113] Commerce determined that financial statements from the Indian Registrar of Companies are in the public realm. In *OCTG from Vietnam*, we determined that financial statements were publicly available because the record contained adequate information regarding how the financial statements could be obtained from sources that were publicly available and contained no evidence that the financial statements were not publicly available.[114] Here, we requested that the petitioners provide Commerce with step-by-step instructions of how

---

[110] *See* Petitioners' Comments at 2.
[111] *See Notice of Final Determination of Sales at Less Than Fair Value, and Affirmative Critical Circumstances, In Part:  Certain Lined Paper Products from the People's Republic of China,* 71 FR 53079 (September 8, 2006) (*Certain Lined Paper Products from China*), and accompanying IDM at Comment 1; *see also First Administrative Review of Certain Activated Carbon from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review,* 74 FR 57995 (November 10, 2009) (*Certain Activated Carbon from China*), and accompanying IDM at Comment 2.
[112] *See Certain Lined Paper Products from China* IDM at Comment 1.
[113] *See Certain Activated Carbon from China* IDM at Comment 2.
[114] *See Certain Oil Country Tubular Goods from the Socialist Republic of Vietnam:  Final Results of Antidumping Duty Administrative Review; 2014-2015,* 82 FR 18611 (April 20, 2017) (*OCTG from Vietnam*), and accompanying IDM at Comment 1.

and from where it retrieved Emirates Sleep's financial statements. The petitioners provided clear narrative instructions and screenshots of how to access and retrieve Emirates Sleeps financial data from two separate sources.[115] The first source, the MCA, is an official website of the Government of India, containing the Indian Registrar of Companies.[116] As a company headquartered in India, Emirates Sleep is registered with the Registrar of Companies available on the MCA website.[117] The record clearly shows that the PAN is not a requirement for individuals trying to download financial statements, because when individuals enter their appropriate information into the account creation page, the PAN is not a required field.[118] The second source, Zauba Corp., is a private provider of commercial information that is all "a matter of public record, and is sourced from the official registers, and from published government data."[119] Therefore, similar to the circumstances in *OCTG from Vietnam*,[120] we find the record contains clear and complete information regarding how to access and retrieve Emirates Sleep's financial statements from publicly available sources.

Regarding Ashley Group's allegation that the record still lacks evidence that the financial statements were publicly available at the time of the investigation, we disagree. The record provides adequate evidence to reasonably conclude that the financial statements were publicly available during the investigation. In the petitioners' instructions of how to obtain Emirates Sleep's financial statements, Zauba Corp.'s records reflected approximately a two-week period between the official date of the most recent document and the date when the petitioners retrieved Emirates Sleep's data.[121] This suggests that, if this two-week period were a lag in time between

---

[115] *See* Remand Supplemental Response.
[116] *Id.* at 1 and Exhibit 2.
[117] *Id.*
[118] *See* Ashley Group's Rebuttal at Exhibit 1.
[119] *See* Remand Supplemental Response at Exhibit 5.
[120] *See OCTG from Vietnam* IDM at Comment 1.
[121] *See* Remand Supplemental Response at Exhibit 6.

a document's signature and its accessibility on public platforms, users are able to access data signed as recently as two weeks prior to their searches for information.  Accounting for this lag, the 2018-2019 financial statements for Emirates Sleep, which were signed on September 29, 2019, would have been available throughout the duration of the investigation, which itself occurred from April 2020 to May 2021.  Considering that Commerce has previously found that the MCA website is publicly available, there is no evidence demonstrating otherwise on the record, and that Zauba Corp.'s information is "sourced from the official registers, and from published government data," *i.e.*, sources like the MCA, we can reasonably conclude that Emirates Sleep's financial data was also retrievable from the MCA platform during the investigation.  Moreover, Ashley Group indicated that it was aware during the investigation that the Emirates Sleep financial statements existed in a subscription database.[122]  Therefore, it is reasonable to conclude that, considering the above information, Emirates Sleep's 2018-2019 financial statements were available on public sources for information throughout the duration of the investigation and rise to the level of "publicly available" for our purposes.

**Issue 4:  Emirates Sleep vs. Sheela Foam**

*Ashley Group Comments:*
- Commerce failed to adequately explain its decision, as instructed by the Court, to select the Emirates Sleep financial statements over the Sheela Foam financial statements in its Draft Remand.[123]
- Commerce erred in its determination because the Emirates Sleep financial statements remains incomplete as they are missing Annexure 5, which is missing from the record.[124]
- There is no dispute that the Sheela Foam financial statements were publicly available, contemporaneous, complete, and captured a similar production experience to the Ashley Respondents.[125]

---

[122] *See Final Determination* IDM at 35-36.
[123] *See* Ashley Group's Comments at 8.
[124] *Id.* at 9.
[125] *Id.*

- The subsidy allegedly received by Sheela Foam equates a miniscule amount, *i.e.*, between 0.001 and 0.000046 percent of Sheela Foam's total revenue compared to more than 12 percent of Emirates Sleep's total revenue reflected in Annexure 5.[126]

**Commerce's Position:**  We disagree with Ashley Group.  Emirates Sleep's financial statements are not incomplete based on the absence of Annexure 5.  Based on record evidence under our established methodology, Emirates Sleep's financial statements constitute the best available information on the record that do not evince receipt of subsidies from programs that Commerce has previously found countervailable.  Further, because the only other available information on the record, the financial statements of Sheela Foam, evince receipt of countervailable subsidies during the reporting period, we find that Emirates Sleep's financial statements constitute the best available information on the record with which to value surrogate financial ratios.

Pursuant to 19 CFR 351.408(c)(4), Commerce is directed to value overhead, SG&A expenses, and profit using non-proprietary information gathered from producers of merchandise that is identical or comparable to the merchandise under consideration in the surrogate country.  Commerce's preference is to derive surrogate overhead expenses, SG&A expenses, and profit ratios using financial statements covering a period that is contemporaneous with the POI, that show a profit, and are from companies with a production experience similar to the respondent's production experience.[127]  However, when financial statements contain a reference to a program or programs that Commerce has previously found to be countervailable, Commerce may consider that the financial ratios derived from that company's financial statements are less representative of the financial experience of the relevant industry than the ratios derived from

---

[126] *Id.*

[127] *See Hand Trucks and Certain Parts Thereof from the People's Republic of China:  Final Results of Antidumping Duty Administrative Review; 2010-2011*, 78 FR 28801 (May 16, 2013), and accompanying IDM at Comment 2; *see also Certain Kitchen Appliance Shelving and Racks from the People's Republic of China; 2010- 2011; Final Results of Antidumping Duty Administrative Review*, 78 FR 5414 (January 25, 2013), and accompanying IDM at Comment 1.

financial statements of a company that do not contain evidence of subsidization.[128]

Consequently, Commerce does not rely on financial statements that contain references to

programs previously found to be countervailable when there are other sufficiently usable and

representative data on the record for purposes of calculating the surrogate financial ratios.[129]

During the investigation, interested parties only submitted to the record two sets of Indian

financial statements for consideration as potential surrogate financial statements.  Sheela Foam's

financial statements clearly evince money received during the POI under identifiable programs

that Commerce has previously found to be countervailable.[130]  Additionally, although Commerce

may have found it appropriate in a past case, it is not Commerce's current practice to consider

the amount of the benefit received when analyzing surrogate financial statements.[131]  Because it

is our practice to not consider financial statements that evince receipt of countervailable subsides

when the record contains alternative and representative information, we only have one available

set of financial statements from which to make our selection, *i.e.*, those of Emirates Sleep.

On their own merits, Emirates Sleep's financial statements are a reasonable and appropriate

basis for surrogate overhead, SG&A expenses, and profit ratios.  They are complete, report a

profit, are publicly available, and show production of identical merchandise.[132]  While they are

not contemporaneous with the POI, they cover the reporting year immediately preceding the

---

[128] *See Certain Steel Nails from the People's Republic of China:  Final Results of the First Antidumping Duty Administrative Review*, 76 FR 16379 (March 23, 2011) (*Nails from China*), and accompanying IDM at 11.
[129] *Id.*
[130] *See* Ashley Group Letter, "Antidumping Duty Investigation of Mattresses from the Socialist Republic of Vietnam:  Surrogate Value Comments," dated July 30, 2020 (Ashley Group's SV Comments), at Exhibit SV-4 (pages 103, 119, 120, and 177); *see also Circular Welded Carbon-Quality Steel Pipe from India:  Final Affirmative Countervailing Duty Determination*, 77 FR 64468 (October 22, 2012), and accompanying IDM at Comment 8; and *Certain Quartz Surface Products from India:  Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances, In Part*, 85 FR 25398 (May 1, 2020) (*Quartz Surface Products from India*), and accompanying IDM at Comment 6.
[131] *See OCTG from Vietnam* IDM at 9.
[132] *See* Petitioners' SV Comments at Exhibit 11.

POI.[133]  In similar situations, Commerce has opted to use financial statements that are not contemporaneous because it was the best information on the record.[134]  Moreover, as explained above, we find that Emirates Sleep's financial statements are not disqualifiable on the basis of countervailable subsidies, as all information vital to complete our assessment of whether Emirates Sleep received countervailable subsidies is on the record, and the information provides no basis to conclude that Emirates Sleep received any countervailable subsidies.

We acknowledge that Emirates Sleep provides a large principal of loans/advances to government authorities, but the relative size of income earned on sales to, or interest income received from, government authorities is not a factor that Commerce would use to exclude viable financial statements.  Further, parties have not provided evidence of where Commerce has found a loan or advance by the respondent to the government to be a countervailable subsidy program.  Moreover, the parties have not explained how a loan or advance provided to a government would constitute a financial contribution or benefit as defined within sections 771(5)(D) and (E) of the Act, respectively.  Because Sheela Foam's financial statements indicate clear evidence of money received from two programs that Commerce has previously found to be countervailable,[135] we continue to find that Emirates Sleep's financial statements are the only source for surrogate overhead, SG&A expenses, and profit ratios on the record that are not distorted by

---

[133] *Id.*

[134] *See QVD Food Co. v. United States*, 721 F. Supp. 2d 1311, 1316-17 (CIT 2010) (where Commerce disregarded contemporaneous financial statements for those that were issued more than six years prior to the period of review); *see also Hand Trucks and Certain Parts Thereof from the People's Republic of China*, 75 FR 29314 (May 25, 2010), and accompanying IDM at Comment 4; and *U.S. Magnesium LLC v. United States*, 72 F. Supp. 1341, 1358-59 (CIT 2015).

[135] *See* Ashely Group's SV Comments at Exhibit SV-4 (pages 103, 119, 120, and 177); *see also Circular Welded Carbon-Quality Steel Pipe from India:  Final Affirmative Countervailing Duty Determination*, 77 FR 64468 (October 22, 2012), and accompanying IDM at Comment 8; *Quartz Surface Products from India* IDM at Comment 6.

countervailable subsides, and that they, therefore, serve as the best source of surrogate value information on the record.

## V.      FINAL RESULTS OF REDERMINATION

Pursuant to the Court's *Remand Order*, for Ashley Group, Commerce continues to value profit, SG&A, and overhead surrogate ratios by relying on the 2018-2019 financial statements of Emirates Sleep.  Accordingly, the weight-averaged dumping margin for Ashley Group continues to be 144.92 percent.

2/23/2023

X _____

Signed by: ABDELALI ELOUARADIA

Abdelali Elouaradia
Deputy Assistant Secretary
  for Enforcement and Compliance