## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED, <br><br>         **Plaintiffs,** <br><br> **v.** <br><br> UNITED STATES, <br><br>         **Defendant,** <br><br>    **and** <br><br> BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, <br><br>        **Defendant-Intervenors.** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> **Ct. No. 21-00283** |

### PLAINTIFFS ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED COMMENTS ON FINAL REMAND REDETERMINATION

March 27, 2023

Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Sarah M. Wyss
Jacob M. Reiskin
MOWRY & GRIMSON, PLLC
5335 Wisconsin Ave., NW, Suite 810
Washington, DC 20015
trade@mowrygrimson.com

**TABLE OF CONTENTS**

INTRODUCTION AND SUMMARY OF ARGUMENTS ............................................................1

STANDARD OF REVIEW ......................................................................................................2

I.COMMERCE FAILED TO ADEQUATELY EXPLAIN ITS DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS WERE DEEMED COMPLETE................3

II.COMMERCE'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE PUBLICLY AVALABLE IS SPECULATIVE AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE ....................................................................................................9

III.COMMERCE'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE THE BEST AVAILABLE INFORMATION COMPARED TO SHEELA FOAM'S FINANCIAL STATEMENTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE ....................................................................................................................................11

CONCLUSION.......................................................................................................................15

# TABLE OF AUTHORITIES

## Cases

AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 310 F. Supp. 2d 1347 (2004)........... 2

Ashley Furniture Indus., LLC v. United States, No. 21-00283, 2022 Ct. Intl. Trade LEXIS 141
    (Nov. 28, 2022).................................................................................................................... passim

Best Mattresses Int'l Co. Ltd. v. United States, No. 21-00281, 2023 Ct. Intl. Trade LEXIS 27
    (Feb. 17, 2023) ................................................................................................................... 5

Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318 (Fed. Cir. 2020).................. 2

Clearon Corp. v. United States, 35 CIT 1685, 800 F. Supp. 2d 1355 (2011)............................... 13

Consol. Edison Co. v. NLRB, 305 U.S. 197 (1938) ....................................................................... 2

CP Kelco U.S., Inc. v. United States, 949 F.3d 1348 (Fed. Cir. 2020) ................................... 5, 13

Dongguan Sunrise Furniture Co., Ltd. v. United States, 36 CIT 860, 865 F. Supp. 2d 1216 (2012)
    ......................................................................................................................................... 7, 8

Dorbest Ltd. v. United States, 30 CIT 1671, 462 F. Supp. 2d 1262 (2006) ................................... 3

Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369 (Fed. Cir. 2015)...................... 15

Fine Furniture (Shanghai) Ltd. v. United States, 353 F. Supp. 3d 1323 (2018)........................... 14

Goldlink Indus. Co. v. United States, 30 CIT 616, 431 F. Supp. 2d 1323 (2006)....................... 14

Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369 (Fed. Cir. 2003)............................ 2

Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247 (Fed. Cir. 2009)....................... 11

NMB Sing. Ltd. v. United States, 28 CIT 1252, 341 F. Supp. 2d 1327 (2004)............................. 2

Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378 (Fed. Cir. 2014)...................... 15

QVD Food Co. v. United States, 658 F.3d 1318 (Fed. Cir. 2011)............................................. 3, 6

Seah Steel Vina Corp. v. United States, 950 F.3d 833 (Fed. Cir. 2020)........................................ 3

Shakeproof Assembly Components v. United States, 268 F.3d 1376 (Fed. Cir. 2001) .............. 11

Shanghai Eswell Enter. Co. v. United States, 31 CIT 1570 (2007)................................................ 6

SolarWorld Ams., Inc. v. United States, 910 F.3d 1216 (Fed. Cir. 2018)...................................... 2

**Statutes**

19 U.S.C § 1677b........................................................................................................................ 11

19 U.S.C. § 1516a........................................................................................................................ 2

19 U.S.C. § 1677(5)..................................................................................................................... 4

**Regulations**

19 C.F.R. § 351.408..................................................................................................................... 9

In accordance with U.S. Court of International Trade Rule 56.2(h) and the Court's November 28, 2022 opinion and order, ECF No. 66, Plaintiffs Ashley Furniture Industries LLC, Ashley Furniture Trading Company, Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd. and Comfort Bedding Company Limited (collectively, the "Ashley Respondents") hereby submit comments in opposition to the remand redetermination filed by the U.S. Department of Commerce ("Commerce").[1] See Final Results of Redetermination Pursuant to Ct. Remand (Feb. 23, 2023) (Public Document), ECF No. 73 ("Remand Redetermination").

## INTRODUCTION AND SUMMARY OF ARGUMENTS

This Court remanded Commerce's final determination in the antidumping duty investigation on mattresses from the Socialist Republic of Vietnam for further explanation or reconsideration of its determination in finding that the financial statements of Emirates Sleep Private Limited ("Emirates Sleep") were complete and publicly available. See Ashley Furniture Indus., LLC v. United States, No. 21-00283, 2022 Ct. Intl. Trade LEXIS 141, at *81 (Nov. 28, 2022).

The Ashley Respondents disagree with Commerce's finding in its Remand Redetermination that Emirates Sleep's financial statements were complete and publicly available. Commerce's continued reliance on Emirates Sleep's financial statements to calculate the surrogate financial ratios is not supported by substantial evidence because Emirates Sleep's financial statements remain incomplete as certain key information is missing from the record and Commerce's finding that Emirates Sleep's financial statements are publicly available is

---

[1] Citations to documents cited in these comments are in form of "P.R. __" for documents included in the index to the administrative record, ECF No. 26, or "P.R.R.__" for documents included in the index to the administrative record filed to accompany the Remand Redetermination, ECF No. 74.

speculative.  Contrary to Commerce's determinations, the financial statements of Sheela Foam's financial statements remain the best available information on the record because they are fully complete without any missing information and are publicly available.

## STANDARD OF REVIEW

The Court reviews remand determinations for compliance with its remand order.  See NMB Sing. Ltd. v. United States, 28 CIT 1252, 1260, 341 F. Supp. 2d 1327, 1334 (2004).  Further, any factual findings on remand must be supported by substantial evidence and the agency's legal determinations must be in accordance with law.  See 19 U.S.C. § 1516a(b)(1)(B)(i); see also AG der Dillinger Huttenwerke v. United States, 28 CIT 94, 106, 310 F. Supp. 2d 1347, 1358 (2004).

Substantial evidence requires "more than a mere scintilla," see, e.g., Changzhou Trina Solar Energy Co. v. United States, 975 F.3d 1318, 1326 (Fed. Cir. 2020) (internal citation omitted), and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Huayin Foreign Trade Corp. v. United States, 322 F.3d 1369, 1374 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence supporting an agency determination must be based on the whole record, and the court shall consider not only the information that supports the agency's decision but also whatever in the "record fairly detracts from the substantiality of the evidence."  Changzhou Trina, 975 F.3d at 1326 (quoting SolarWorld Ams., Inc. v. United States, 910 F.3d 1216, 1222 (Fed. Cir. 2018)).  In making its determinations, "Commerce cannot base its analysis on mere speculation, but may draw reasonable inferences from the record."  Lifestyle Enterprise, Inc. v. United States, 35 CIT 158, 179, 768 F. Supp. 2d 1286, 1309 (2011).

**ARGUMENT**

**I.    COMMERCE FAILED TO ADEQUATELY EXPLAIN ITS DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS WERE DEEMED COMPLETE**

Commerce's finding that Emirates Sleep's financial statements were sufficiently complete to calculate the surrogate financial ratios is not supported by substantial evidence because Emirates Sleep's financial statements are missing key important details.  "For the court to conclude that a reasonable mind would support Commerce's selection of the best available information, Commerce needs to justify its selection of data with a reasoned explanation."  Dorbest Ltd. v. United States, 30 CIT 1671, 1677, 462 F. Supp. 2d 1262, 1269 (2006).  "While the burden of creating an adequate record lies with {interested parties},' Commerce must, nonetheless, support its decision with substantial evidence and guesswork is no substitute for substantial evidence in justifying its decisions."  Seah Steel Vina Corp. v. United States, 950 F.3d 833, 847 (Fed. Cir. 2020) (quoting QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  Commerce failed to do so here.

In its opinion remanding to Commerce, the Court held that Commerce did not adequately explain its conclusion that Emirates Sleep's financial statements were complete because they were missing certain key information, i.e., Annexure 5 which contains information related to Emirates Sleep's potential receipt of subsidies.  See Ashley Furniture, 2022 Ct. Intl. Trade LEXIS 141, at *40, *45.  In its Remand Redetermination, Commerce summarily determined without a reasoned analysis that "Annexure 5 cannot categorically contain any evidence of potentially countervailable subsidies" because Emirates Sleep's "balance sheet clearly identifies Note 13 alongside item (d), 'Short-term loans and advances' under 'Current Assets.'"  Remand Redetermination at 6.  Commerce then concluded that Annexure 5 could not demonstrate a receipt of countervailable

subsidies "{b}ecause Note 13 is classified entirely as an asset, any loans or advances contained therein must be *from* Emirates Sleep *to* government authorities, as loans given are classified as assets and loans received are classified as liabilities." Id.  Commerce's determinations are not supported by substantial evidence for the reasons discussed below.

First, Commerce cannot reasonably conclude that Emirates Sleep's financial statements do not contain any receipt of countervailable subsidies because Annexure 5 remains missing from the record.  The statute provides that a countervailable subsidy exists where a government authority provides a financial contribution to a person and a benefit is thereby conferred.  19 U.S.C. § 1677(5)(B).  The following are regarded under the statute to be financial contributions:

(i)     the direct transfer of funds, such as grants, loans, and equity infusions, or the potential direct transfer of funds or liabilities, such as loan guarantees,
(ii)    foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income,
(iii)   providing goods or services, other than general infrastructure, or
(iv)    purchasing goods.

Id. § 1677(5)(D).  In other words, there are different types of financial contributions that may be considered to be countervailable subsidies in addition to loans or advances from government authorities.

Without knowing the details underlying Annexure 5 of Emirates Sleep's financial statements, Commerce unreasonably concluded that Annexure 5 "cannot categorically contain any evidence of potentially countervailable subsidies received by Emirates Sleep."  Remand Redetermination at 6.  Moreover, Commerce merely speculates that a line item in the amount of 7,518,007 Rupees listed under Note 13(b) as "Balances with government authorities" and recorded under the category "Short-term loans and advances" – an amount that represents more than 12 percent of Emirates Sleep's revenue – "pertain to loans or advances given {to government authorities}, not received." Id.  Mere speculation does not amount to a reasoned analysis.

4

Commerce's explanation that Emirates Sleep's financial statements do not contain evidence of receipt of countervailable subsidies because Note 13(b) is recorded under assets in the financial statements was, in fact, rejected in another proceeding brought before the Court emanating out of the mattresses antidumping investigation.  In Best Mattresses International Co. Ltd. v. United States, examining the very same financial statement, the Court explained that

> if Annexure 5 revealed that Emirates had an Indian tax credit receivable on its books, that would potentially be evidence of a "financial contribution" required to establish the existence of a countervailable subsidy . . . . The missing annexure may have deprived Commerce of key information regarding the viability of Emirates's financial statements -- specifically, the existence of government subsidies recorded as assets -- and Commerce does not appear to dispute that such government subsidies would impact the profit and selling expense calculations.

Best Mattresses Int'l Co. Ltd. v. United States, No. 21-00281, 2023 Ct. Intl. Trade LEXIS 27, at *103-05 (Feb. 17, 2023).  The Court then found that "Commerce erred in summarily stating that any asset plausibly qualifying as a '{b}alance with government authorities' cannot be an indicator of government subsidies."  Id.

The Court's reasoning in Best Mattresses is persuasive, and this Court should apply the same reasoning here.  Without any detailed information of the line item "Balances with government authorities," this Court should find that Commerce's determination that Note 13(b) of Emirates Sleep's financial statements contains no evidence of countervailable subsidies is not supported by substantial evidence.  As the U.S. Court of Appeals of the Federal Circuit ("Federal Circuit") has held, financial statements that are missing vital information are not reliable because the missing information is a key component of the financial statements and of critical importance to determine the viability of these statements as the best available information on the record.  See CP Kelco U.S., Inc. v. United States, 949 F.3d 1348, 1359 (Fed. Cir. 2020) (upholding Commerce's determination in rejecting incomplete financial statements and relying on financial

statements that contained evidence of countervailable subsidies because the missing information was of critical importance).  Here, Annexure 5 would have provided vital information regarding the amount listed under Note 13(b) as "Balances with government authorities" and would, in turn, indicate whether Emirates Sleep was in receipt of potentially distortive countervailable subsidies.

Second, Commerce unreasonably determined that Emirates Sleep did not receive loans or advances from the government because "Note 13 is classified entirely as an asset, any loans or advances contained therein must be *from* Emirates Sleep *to* government authorities, as loans given are classified as assets and loans received are classified as liabilities."  Remand Redetermination at 6.  The courts have recognized that auditors' notes are an important part of the financial statements.  See, e.g., QVD Food, 658 F.3d at 1327 (noting that "Commerce determined that the auditor's notes were sufficient to cast reasonable doubt on the reliability and accuracy of the overall {financial} statements"); Shanghai Eswell Enter. Co. v. United States, 31 CIT 1570, 1575-76 (2007) (noting that Commerce may reject incomplete financial statements that lack auditors' notes). Here, while Commerce is correct that loans received are generally classified as liabilities in a financial statement, Commerce erred in finding that Emirates Sleep may have provided loans or advances to the government authorities.  See Remand Redetermination at 6.  To the contrary, the auditor of Emirates Sleep's financial statements as well as information provided by the company in the Annexure to the Independent Auditor's Report expressly indicate that Emirates Sleep "has not granted any loans or provided any guarantees or given any security" to any companies, firms, or other parties during the financial year ending on March 31, 2019.  See Letter on Behalf of Brooklyn Bedding, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial

and Service Workers International Union, AFL-CIO (collectively, "Petitioners") to Dep't of Commerce re: Petitioners' Surrogate Values Submission at Ex. 11 (July 30, 2020) ("Pet'rs' SV Cmts.") (P.R. 276-277).   Because Emirates Sleep's auditors' notes explicitly confirmed that Emirates Sleep did not provide any loans to any parties during the financial year, it is unreasonable for Commerce to have concluded that the amount listed in Note 13(b) represents loans or advances that were provided by Emirates Sleep to government authorities.   Instead, without knowing the details contained in Annexure 5 of Emirates Sleep's financial statements, Commerce cannot reasonably conclude that Emirates Sleep was not receiving government subsidies.

Third, Commerce improperly determined that the amounts listed under Note 13(b) of Emirates Sleep's financial statements "have no impact on {Commerce's} financial ratio calculation" because it is not considered in the "surrogate overhead, selling, general, and administrative {} expenses, and profit ratios calculations."   Remand Redetermination at 7. Commerce found that the record evidence did not demonstrate that "the missing information {under Annexure 5} is 'vitally important' or 'key' to {Commerce's} identification of evidence of countervailable subsidies . . .  and does not interfere with {Commerce's} ability to derive surrogate financial ratios."  Id. at 15.  Commerce is wrong.

As this Court highlighted in its opinion remanding to Commerce, the Court has previously rejected Commerce's decision to use financial statements that were missing certain information even though Commerce stated that the information has no bearing on its surrogate values ("SV") calculation.  See Dongguan Sunrise Furniture Co., Ltd. v. United States, 36 CIT 860, 886, 865 F. Supp. 2d 1216, 1242 (2012); Ashley Furniture, 2022 Ct. Intl. Trade LEXIS 141, at *44-*45.  In the administrative review underlying Dongguan Sunrise, Commerce used a surrogate financial statement that did not include a line item for taxes.  See Dongguan Sunrise, 36 CIT at 886, 865 F.

Supp. 2d at 1242.  In so doing, Commerce explained that it did not "rely on taxes in calculating financial ratios and thus, the lack of a tax line alone {did} not render the statement unreliable."  Id. There, the Court ultimately rejected Commerce's reasoning, concluding that "the missing tax line is a relevant consideration that must be explained by Commerce."  Id.  The Court found that "{a}lthough Commerce does not use taxes directly when calculating {SV}, Commerce sometimes relies on notes to the tax line to determine whether the entity received disqualifying subsidies."  Id. The Court's reasoning in Dongguan Sunrise is compelling here.  As explained above, Annexure 5 remains missing from the record and Commerce has not adequately explained its reasoning that an amount representing 12 percent of Emirates Sleep's revenue recorded under "Balances with government authorities" cannot possibly be a countervailable subsidy.  Again, Annexure 5 represents key information because without the details under Annexure 5, Commerce cannot reasonably conclude that the amount under "Balances with government authorities" is not relevant to its financial ratios calculation because the details of such line item remain unknown.

Finally, contrary to the Court's direction, Commerce failed to explain the significance of the size of the amount listed under "Balances with government authorities" to the surrogate financial ratios calculation.  See Ashley Furniture, 2022 Ct. Intl. Trade LEXIS 141, at *43 (concluding that "Commerce's failure to address arguments related to the size of the balance renders Commerce's explanation inadequate.").  In its Remand Redetermination, although Commerce acknowledged that the line item "Balances with government authorities" includes a large amount of loans or advances to government authorities, Commerce determined that "{b}ecause the record contains adequate evidence to reasonably conclude that Annexure 5 could not contain evidence of countervailable subsidies, it is unnecessary to hypothesize as to the potential distortion of a countervailable subsidy contained therein."  Remand Redetermination at

18.  Commerce failed to adequately explain how the sizeable balance under Note 13 lacked the potential to distort Commerce's calculations should that information reveal the receipt of countervailable subsidies.  As discussed, Commerce has no insight into the nature of the amounts contained in Note 13, and any attempts to downplay the potential distortions of this amount are purely speculative.  In fact, Emirates Sleep's auditors confirmed that Emirates Sleep did not provide any loans during the financial year to any other entities.  See Pet'rs' SV Cmts. at Ex. 11 (P.R. 276-277).  Thus, Commerce's determination that Emirates Sleep's financial statements do not contain evidence of countervailable subsidies was unreasonable in that it was based on mere speculation that the large amount recorded under Note 13 would not have any impact on the financial ratio calculation.

In sum, Commerce's finding that Emirates Sleep's financial statements were complete is not based on a reasonable explanation and Commerce's continued decision to rely on Emirates Sleep's financial statements is unsupported by substantial evidence.

## II.    COMMERCE'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE PUBLICLY AVALABLE IS SPECULATIVE AND UNSUPPORTED BY SUBSTANTIAL EVIDENCE

Commerce's finding on remand that Emirates Sleep's financial statements are publicly available is also not supported by substantial evidence.  In its Remand Redetermination, Commerce determined that Emirates Sleep's financial statements are publicly available because "all interested parties {were} capable of obtaining the financial statements and commenting on reliability and relevance of the information."  Remand Redetermination 8-9.  Commerce is directed by its own regulations to value factors of production with publicly available information.  19 C.F.R. § 351.408(c)(1) (2022).

In its Remand Redetermination, Commerce found that Emirates Sleep's financial

statements are publicly available because they are available to download from the website of the Indian Ministry of Corporate Affairs ("MCA"). The record evidence provided by the Ashley Respondents demonstrates, however, that not all members of the public are able to access and download Emirates Sleep's financial statements from the MCA website. Notably, to download Emirates Sleep's financial statements from the MCA website, a user is required to supply an "Income Tax PAN" ("PAN"), which is an Indian taxpayer registration number issued to an individual, company or firm. <u>See</u> Letter on Behalf of the Ashley Respondents to Dep't of Commerce re: Rebuttal Comments to Petitioners' Section D Second Supplemental Questionnaire Response at 5-6 (Jan. 18, 2023) (Public Document) (P.R.R. 3); <u>see also</u> Letter on Behalf of the Ashley Respondents to Dep't of Commerce re: Comments on Draft Results of Redetermination Pursuant to Court Remand at 7 (Feb. 7, 2023) (Public Document) (P.R.R. 9) (noting that the MCA website asks "{i}f you are a professional, please register as a Business User using your Membership number {and} PAN") (internal citation omitted). Petitioners also acknowledged that Emirates Sleep's financial statements were obtained by an Indian consultant, further establishing that the financial statements are not publicly available but instead only a person or firm with PAN are able to obtain access through the MCA website. <u>See</u> Letter on Behalf of Petitioners to Dep't of Commerce re: Mattress Petitioners' Response to Commerce's Section D Supplemental Questionnaire at 2 (Jan. 11, 2023) (Public Document) (P.R.R. 2). Access through a restricted registration system or consultant is not reasonably regarded as "publicly available" and Commerce's finding that Emirates Sleep's financial statements were publicly available was not supported by substantial evidence.

III.   **COMMERCE'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE THE BEST AVAILABLE INFORMATION COMPARED TO SHEELA FOAM'S FINANCIAL STATEMENTS IS UNSUPPORTED BY SUBSTANTIAL EVIDENCE**

Commerce's continued decision on remand to reject Sheela Foam's financial statements as the best available information to calculate the surrogate financial ratios is also unsupported by substantial evidence because Emirates Sleep's financial statements remain incomplete and Commerce's conclusion that Sheela Foam received countervailable subsidies during the period of investigation ("POI") is not supported by the record evidence.

In the Remand Redetermination, Commerce continued to find that Emirates Sleep's financial statements are "the best source of surrogate value information on the record" because they are "complete, report a profit, are publicly available, and show production of identical merchandise" whereas Sheela Foam's financial statements "indicate clear evidence of money received from two programs that Commerce has previously found to be countervailable."  Remand Redetermination at 23-25.  In deciding what is the best available information, Commerce is required to have weighed the two financial statements on the record and determine which one was best.  See 19 U.S.C § 1677b(c)(1)(B) ("the valuation of the factors of production shall be based on the best available information").  The Federal Circuit has held that "{i}n determining the valuation of the factors of production, the critical question is whether the methodology used by Commerce is based on the best available information and establishes antidumping margins as accurately as possible." Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247, 1257 (Fed. Cir. 2009) (quoting Shakeproof Assembly Components v. United States, 268 F.3d 1376, 1382 (Fed. Cir. 2001)).  Here, Commerce's determination in its Remand Redetermination is unsupported by substantial evidence because Emirates Sleep's financial statements remain incomplete and therefore not the best available information as compared to Sheela Foam's financial statements

11

that are fully complete with no missing information.  Commerce further erred in rejecting Sheela

Foam's financial statements because there is no conclusive evidence that Sheela Foam's financial

statements reference a specific government assistance program.

As more fully explained above, in the Remand Redetermination, Commerce improperly

found that Emirates Sleep's financial statements are complete.  See Remand Redetermination at

24.  Namely, Commerce presented no justification that the amount of 7,518,007 Rupees that is

listed under Note 13(b) of "Balances with government authorities" of Emirates Sleep's financial

statements cannot represent potential government subsidies.   As discussed, Commerce's

explanation that the amount is recorded under "Current Assets" in Emirates Sleep's financial

statements cannot represent receipt of government subsidies is speculative because Annexure 5 —

which contains details of the line item "Balances with government authorities" — remains missing

from the record.   Commerce's inference that the amount under "Balances with government

authorities" constitutes "a large principal of loans/advances to government authorities," Id. at 18

(emphasis added), is also unreasonable because, as confirmed by the auditors' report, Emirates

Sleep did not provide any loans to any other parties during the financial year period.  See Pet'rs'

SV Cmts. at Ex. 11 (P.R. 276-277).  Again, because Annexure 5 is missing from the record,

Commerce cannot know its contents, cannot lawfully assume that "Annexure 5 could not contain

evidence of countervailable subsidies" and cannot reasonably conclude that Emirates Sleep's

financial statements are complete.  Remand Redetermination at 17, 18.

Further, Commerce erred in determining that Sheela Foam's financial statements are not

the best available information to calculate the surrogate financial ratios.   In the Remand

Redetermination, Commerce stated that Sheela Foam's financial statements "clearly evince money

during the POI under identifiable programs that Commerce has previously found to be

countervailable." Id. at 23.  Commerce improperly interpreted the record evidence and misapplied

its past practice in this case.  As explained more fully by the Ashley Respondents in their Rule

56.2 brief, when evaluating whether a financial statement contains evidence of subsidies

previously found to be countervailable, Commerce's practice with respect to financial statements

that contain information on a potential subsidy is as follows:

> (1) If a financial statement contains a reference to a specific subsidy program found
> to be countervailable in a formal CVD determination, Commerce will exclude that
> financial statement from consideration. (2) If a financial statement contains only a
> mere mention that a subsidy was received, and for which there is no additional
> information as to the specific nature of the subsidy, Commerce will not exclude the
> financial statement from consideration.

Clearon Corp. v. United States, 35 CIT 1685, 1688, 800 F. Supp. 2d 1355, 1359 (2011).  In this

case, as demonstrated by the Ashley Respondents, there was no specific information in Sheela

Foam's financial statements that described the nature of the programs that would meet

Commerce's "specific information" standard.  Additionally, there is no specific information as to

the nature of the "investment subsidy" and "duty drawback subsidy" programs in Sheela Foam's

financial statements that were alleged by Commerce to be countervailable subsidies.  See Letter

on Behalf of the Ashley Respondents to Dep't of Commerce re: Surrogate Value Comments at Ex.

SV-4 (July 30, 2020) (P.R. 278-281).  A mere mention of "investment subsidy" and "duty

drawback" does not meet the "specific information" standard and fails to meet Commerce's reason

to believe and suspect standard.  See Clearon, 35 CIT at 1688, 800 F. Supp. 2d at 1359.

Even if Sheela Foam's financial statements contain evidence of receipt of subsidies,

Commerce is under no obligation to reject financial statements that have evidence of subsides and

may nevertheless rely on such statements.  See CP Kelco, 949 F.3d at 1359 (holding that it was

reasonable for Commerce to rely on financial statements with evidence of subsidies over financial

statements that are incomplete); see also Fine Furniture (Shanghai) Ltd. v. United States, 353 F.

13

Supp. 3d 1323, 1351 (2018) ("the mention of a subsidy in a financial statement does not necessarily give Commerce a reason to believe or suspect that the subsidy is countervailable").  Here, the alleged programs found to be countervailable in Sheela Foam's financial statements, i.e., "investment subsidy" and "duty drawback," were described only in general terms without any specific information regarding the nature and origin of the programs.  Commerce cannot rely on mere speculation that Sheela Foam received countervailable subsidies without any support tying the line items in Sheela Foam's financial statements to the specific subsidy programs that Commerce has previously found to be countervailable.

Moreover, there is no evidence on the record that the "investment subsidy" and "duty drawback" programs in Sheela Foam's financial statements were distortive.  "{T}he mere presence of subsidies {in financial statements} does not necessarily mean the financial ratios are distorted." Goldlink Indus. Co. v. United States, 30 CIT 616, 629, 431 F. Supp. 2d 1323, 1334 (2006).  The reasoning of the Court in Goldlink is instructive here.  As the Court found in Goldlink "{s}ince the presumption is that NME data is distorted, Commerce must find a reasonable surrogate value.  Logically then, Commerce cannot use a surrogate value if it is also distorted, otherwise defeating the purpose of using a surrogate value rather than the actual export value." Id., 30 CIT at 629, 431 F. Supp. 2d at 1334.  The Court's reasoning in that case is persuasive.  Here, as this Court noted in its opinion remanding to Commerce, the "'investment subsidy'" item equates to 0.001% of Sheela Foam's revenue and the 'duty drawback' item equates to only 0.000046% of {Sheela Foam's} revenue.  Ashley Furniture, 2022 Ct. Intl. Trade LEXIS 141, at *32.  Considering such de minimis amounts, it was unreasonable for Commerce to have rejected Sheela Foam's financial statements due to potential receipt of government subsidies given the miniscule amounts at issue. Sheela Foam's financial statements remain the best available information on the record because

14

they are complete, publicly available, contemporaneous and captured a similar production experience of the Ashley Respondents.  See Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1375 (Fed. Cir. 2015) ("Commerce generally selects, to the extent practicable, surrogate values that are publicly available, are product-specific, reflect a broad market average, and are contemporaneous with the period of review") (quoting Qingdao Sea-Line Trading Co. v. United States, 766 F.3d 1378, 1386 (Fed. Cir. 2014)).  It was, therefore, unreasonable for Commerce to continue to reject Sheela Foam's financial statements on remand.

## CONCLUSION

For the foregoing reasons, the Court should find that Commerce's Remand Redetermination finding that Emirates Sleep's financial statements are complete and publicly available is unsupported by substantial evidence.  The Court should order yet another remand for Commerce to properly read the record evidence and thereby find that Sheela Foam's financial statements are the best available information on the record to calculate the surrogate financial ratios.

Dated: March 27, 2023

/s/ Kristin H. Mowry
Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Sarah M. Wyss
Jacob M. Reiskin
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Ashley Furniture Industries,*
*LLC, Ashley Furniture Trading Company,*
*Wanek Furniture Co., Ltd., Millennium*
*Furniture Co., Ltd., and Comfort Bedding*
*Company Limited*

## CERTIFICATE OF COMPLIANCE

As required by Paragraph 2 of the Standard Chambers Procedures of the Court of International Trade, I, Kristin H. Mowry, hereby certify that this brief complies with the word limitation set forth in Paragraph 2(b) of the Standard Chamber Procedures. Excluding the table of contents, table of authorities, signature block and any certificates of counsel, the word count for these comments is 4,376 words.

Dated: March 27, 2023

/s/ Kristin H. Mowry
Kristin H. Mowry
Jeffrey S. Grimson
Jill A. Cramer
Sarah M. Wyss
Mowry & Grimson, PLLC
5335 Wisconsin Avenue, NW, Suite 810
Washington, D.C. 20015
202-688-3610
trade@mowrygrimson.com
*Counsel to Ashley Furniture Industries, LLC, Ashley Furniture Trading Company, Wanek Furniture Co., Ltd., Millennium Furniture Co., Ltd., and Comfort Bedding Company Limited*