**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

|  |  |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED, <br><br>          *Plaintiffs*, <br><br>    v. <br><br>UNITED STATES, <br><br>          *Defendant*, <br><br>    and <br><br>BROOKLYN BEDDING, LLC ET AL., <br><br>          *Defendant-Intervenors*. | Consol. Ct. No. 21-00283 |

**MATTRESS PETITIONERS' COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

                                                Yohai Baisburd
                                                Chase J. Dunn
                                                Nicole Brunda

                                                CASSIDY LEVY KENT (USA) LLP
                                                900 19th Street, N.W.
                                                Suite 400
                                                Washington, D.C. 20006
                                                (202) 567-2300

                                                *Counsel to Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Date:   April 26, 2023

**Table of Contents**

Page

I. THE DEPARTMENT FULLY EXPLAINED ITS DETERMINATION THAT THE EMIRATES SLEEP FINANCIAL STATEMENTS WERE SUFFICIENTLY COMPLETE .................................................................................................................. 2

II. THE DEPARTMENT FULLY EXPLAINED ITS DETERMINATION THAT THE EMIRATES SLEEP FINANCIAL STATEMENTS ARE PUBLICLY AVAILABLE ......... 7

III. THE DEPARTMENT'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE THE BEST AVAILABLE INFORMATION ON THE RECORD IS SUPPORTED BY SUBSTANTIAL EVIDENCE .......................... 10

IV. CONCLUSION................................................................................................................ 15

## Table of Authorities

Page(s)

Statutes

19 U.S.C. § 1677b(c)(1)(B) ...................................................................................................12

Regulations

19 CFR § 351.408(c)(1) ..........................................................................................................8

Court Decisions

*CP Kelco, Inc. v. United States,* 2016 Ct. Int'l Trade LEXIS 35, Slip Op. 2016-36, (2016)...................................................................................................................................2

*Ass'n of Am. Sch. Paper Suppliers v. United States*, 791 F. Supp. 2d 1292, 1301 (Ct. Int'l Trade 2011).................................................................................................................2

*Best Mattresses Int'l Co. Ltd. v. United States*, 2023 Ct. Int'l Trade LEXIS 27, Slip Op. 2023-19 (2023)................................................................................................................4

*Dongguan Sunrise Furniture Co., Ltd. v. United States*, 865 F. Supp. 2d 1216, 1242 (Ct. Int'l Trade 2012)..........................................................................................................6

*Sunpreme Inc. v. United States*, 946 F.3d. 1300, 1308-1309 (Fed. Cir. 2020)...........................12

*Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) ..........................................................................................................................12

*Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938)............................................................12

*GGB Bearing Tech (Suzhou) Co., Ltd. v. United States*, 279 F. Supp. 3d 1233, 1239 (Ct. Int'l Trade 2017)........................................................................................................13

*Goldlink Indus. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) ....................... 13-14

Administrative Determinations

*1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 74 Fed. Reg. 10545 (Mar. 11, 2009) ....................................................................................................................................9

*Certain Preserved Mushrooms from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Rescission in Part*, 76 Fed. Reg. 56732 (Sept. 14, 2011) ............................................................................................................ 9

*Certain Steel Nails from the People's Republic of China: Preliminary Results and Partial Rescission of the Third Antidumping Duty Administrative Review*, 77 Fed. Reg. 53845 (Sept. 4, 2012) .......................................................................................................... 9

*Mattresses from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15889 (Mar. 25, 2021) ....................................... 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| ASHLEY FURNITURE INDUSTRIES, LLC, ASHLEY FURNITURE TRADING COMPANY, WANEK FURNITURE CO., LTD., MILLENNIUM FURNITURE CO., LTD. AND COMFORT BEDDING COMPANY LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES,<br><br>*Defendant*,<br><br>and<br><br>BROOKLYN BEDDING, LLC ET AL.,<br><br>*Defendant-Intervenors.* | Consol. Ct. No. 21-00283 |

**MATTRESS PETITIONERS' COMMENTS IN SUPPORT OF REMAND REDETERMINATION**

In accordance with U.S. Court of International Trade Rule 56.2(h)(3) and the Court's March 3, 2023, scheduling order, ECF 79, Defendant-Intervenors Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises, Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO ("USW") (collectively, "Mattress Petitioners") hereby submit comments in support of the remand redetermination filed by the U.S. Department of Commerce ("Commerce") in this proceeding.  *See* "Final Results of Redetermination Pursuant to Ct. Remand" (Feb. 23, 2023), ECF No. 73 ("Remand Redetermination").

As explained in detail below, Commerce's conclusions that the financial statements of Emirates Sleep were sufficiently complete, publicly available, and constituted the best available information from which to calculate surrogate financial ratios were both reasonable and supported by substantial evidence. The Court should accordingly affirm Commerce's Remand Redetermination in its entirety.

I.  **THE DEPARTMENT FULLY EXPLAINED ITS DETERMINATION THAT THE EMIRATES SLEEP FINANCIAL STATEMENTS WERE SUFFICIENTLY COMPLETE**

In its Opinion, the Court found that Commerce "did not explain adequately its conclusion that {Emirates Sleep's} financial statements were complete within the meaning of Commerce's surrogate data selection practice," leaving the Court unable to determine whether Commerce's conclusion was supported by substantial evidence. Opinion at 25. The Court noted that, under its longstanding practice, Commerce "does not invariably reject incomplete financial statements, but instead looks to whether the missing information is 'vitally important' or 'key.'" Opinion at 25 (quoting *CP Kelco, Inc. v. United States*, Slip Op. 2016-36, 2016 Ct. Int'l Trade LEXIS 35 at *16 (Apr. 8, 2016) (citing *Ass'n of Am. Sch. Paper Suppliers v. United States*, 791 F. Supp. 2d 1292, 1301 (Ct. Int'l Trade 2011))). However, the Court found that while Commerce had sufficiently explained its conclusion that the Emirates Sleep financial statements were "complete for the purposes of calculating financial ratios" despite missing Annexures 1 through 4, it had not provided similarly adequate reasoning with respect to the missing Annexure 5. Opinion at 26-31.

In particular, the Court found that Commerce had: (a) failed to address the potential relevance of the title of Note 13, "Short-term loans and advances," in ascertaining whether Annexure 5 contained key information regarding subsidies, (b) failed to address the relevance of the size of the balance associated with the line item under Note 13, and (c) based its decision, in

2

part, on the conclusion that "only non-market based government loans would be distortive" when, due to the missing Annexure 5, it could not know whether Emirates Sleep had received market-based loans. *See* Opinion at 31-32. The Court accordingly "remand{ed} to Commerce for further explanation or reconsideration the conclusion that {Emirates Sleep's} financial statements were complete." Opinion at 33.

In its Remand Redetermination, Commerce addressed each of the Court's concerns, further supporting its conclusion that "Annexure 5 cannot categorically contain any evidence of potentially countervailable subsidies received by Emirates Sleep from the government." Remand Redetermination at 6. *First*, Commerce noted that while Note 13 was titled "Short-term loans and advances" it was clearly classified entirely as an asset on Emirates Sleep's balance sheet and thus, by definition, "any loans or advances contained therein must be from Emirates Sleep to government authorities." Remand Redetermination at 6-7. Commerce explained that Note 13, and thereby Annexure 5, thus could not possibly detail receipt of any loans or other subsidies received from the government. Remand Redetermination at 6-7. *Second*, Commerce clarified that the magnitude of loans or advances made by Emirates Sleep to the government "do{} not factor into the company's revenue, profit, or cost of manufacturing" and thus were "immaterial to {Commerce's} calculation of surrogate overhead, SG&A, and profit ratios." Remand Redetermination at 7-8. Finally, Commerce explained that because Annexure 5 involved positive "balances with government authorities" it conclusively could not contain evidence of loans made from the government to Emirates Sleep. Remand Redetermination at 8. Accordingly, Commerce correctly concluded that its prior discussion of the market of origin of government loans was "moot and neither necessary nor relevant to {its} analysis." Remand Redetermination at 8.

3

None of Ashley's arguments detract from Commerce's reasonable conclusions.  Ashley first claims that the Court's decision in *Best Mattresses International Co. Ltd. v. United States* requires the Court to reject Commerce's reasoned explanation.  *See* Remand Comments at 5 (citing *Best Mattresses Int'l Co. Ltd. v. United States*, Slip Op. 2023-19, 2023 Ct. Int'l Trade LEXIS 27 at *103-05 (Feb. 17, 2023)).  Ashley is wrong.  The *Best Mattresses* Court found that the record did not support Commerce's reasoning that Annexure 5 did not contain evidence of a countervailable subsidy because the heading "balances with government authorities" could indicate a potential Indian tax credit receivable.  *See Best Mattresses* at *103.  In its Remand Redetermination, Commerce addressed this issue explaining that logically this could not be the case because "any balance(s) listed in Annexure 5 would reflect the loan {or advance} principal, not any conferred benefit."  Remand Redetermination at 16.

The financial statements on the record of this proceeding demonstrate this is the case.  In particular, the financial statement of Sheela Foam, which was placed on the record by Ashley, contains a current asset category of "Balances with Statutory/Government authorities."  *See* Letter from Ashley, "Surrogate Value Comments" (July 30, 2020) (P.R. 278-280) ("Ashley SV Comments"), Ex. SV-4 (Sheela Foam Financial Statement) at Note 19 (P-114).  This subheading, like the nearly identical "Balances with government authorities" subheading on the Emirates Sleep financial statement, appears under "Current assets" on the company's balance sheet.  *See id.*; *see also* Letter from Mattress Petitioners, "Petitioners' Surrogate Values Submission" (Jul. 30, 2020) (P.R. 276-277) ("Mattress Petitioners' SV Comments"), Ex. 11 (Emirates Sleep Financial Statement) at Note 13.  The Sheela Foam financial statement further divides the "Balances with Statutory/Government authorities" subheading into "Excise & Custom," "GST," and "VAT/Sales Tax."  Ashley SV Comments, Exhibit SV-4 at P-114 (Note 19).  None of these

4

categories represent rebates, instead they represent positive balances in Sheela Foam's tax accounts due to prepayments or advances made to government authorities under the applicable tax programs. Therefore, it was entirely reasonable for Commerce to conclude that the "balances with government authorities" subheading on the Emirates Sleep financial statement reflects advances, particularly as both sets of financial statements were prepared under the same Indian accounting principles. *See* Ashley SV Comments, Exhibit SV-4 (Sheela Foam Financial Statement) at P-84 (noting that the Sheela Foam financial statements were prepared "in accordance with the accounting principles generally accepted in India, including the Indian Accounting Standards ("Ind AS") notified under Section 133 of the Act"); *see also* Mattress Petitioners' SV Comments, Ex. 11 (Emirates Sleep Financial Statement), Independent Auditor's Report at 2 (noting that the Emirates Sleep financial statements were prepared "in accordance with the accounting principles generally accepted in India, including the accounting standards specified under section 133 of the Act").

Ashley's claim that Emirates Sleep could not possibly have provided any loans or advances to the government authorities because the Auditor's report states that Emirates Sleep "has not granted any loans or provided any guarantees or given any security" is similarly misguided. Ashley Comments at 6-7. As discussed *supra*, the Sheela Foam financial statements preferred by Ashley also report current assets involving "Balances with…Government authorities," and yet the Auditor's notes to the Sheela Foam financial statements similarly make no mention of any loans or guarantees provided to the government. *See* Ashley SV Comments, Exhibit SV-4 (Sheela Foam Financial Statement) at P-86 (discussing terms of a loan provided to subsidiary, but no loans provided to government or statutory entities). Contrary to Ashley's apparent assertions, this is no great reporting conspiracy. It simply reflects the fact that the

advances provided to the government in the form of prepaid taxes are not the type of formal loans or guarantees requiring separate disclosure in the Auditor's report.

Ashley's remaining arguments are also without merit. Ashley first contends that the Court's decision in *Dongguan Sunrise* requires Commerce to reject surrogate financial statements that contain missing information. *See* Ashley Remand Comments at 8 (citing *Dongguan Sunrise Furniture Co., Ltd. v. United States*, 865 F. Supp. 2d 1216, 1242 (Ct. Int'l Trade 2012)). This is not the case. In *Dongguan Sunrise*, the Court found that Commerce had failed to adequately explain why the missing tax line was irrelevant. *Id*. By contrast, as explained *supra*, in its Remand Redetermination Commerce here fully explained the basis for its conclusion that the missing Annexure 5 could not have reflected receipt of a countervailable subsidy and thus the Court's determination in *Dongguan Sunrise* is therefore inapplicable.

Ashley next claims that, "contrary to the Court's direction, Commerce failed to explain the significance of the size of the amount listed under 'Balances with government authorities' to the surrogate financial rations calculation." Ashley Remand Comments at 8. This is simply untrue. In its Remand Redetermination, Commerce fully explained that Note 13, where this heading is listed, is classified as a "Current Asset," which "does not factor into the company's revenue, profit, or cost of manufacturing and is thereby immaterial to {Commerce's} calculation of surrogate overhead, SG&A, and profit ratios," which are the only calculations for which Commerce utilized Emirates Sleep's financial statements. Remand Redetermination at 7-8. The size of any Current Assets listed in Note 13 thus "have no impact on {Commerce's} financial ratio calculations." Remand Redetermination at 7.

In sum, Commerce's Remand Redetermination fully complied with the Court's instructions by detailing why the missing Annexure 5 was not "'vitally important' or 'key' to

{its} identification of evidence of countervailable subsidies" and why the missing information also "d{id} not interfere with {its} ability to derive surrogate financial ratios." Remand Redetermination at 15. Commerce's conclusion that the Emirates Sleep financial statements are sufficiently complete under Commerce's surrogate value practice was thus reasonable and supported by substantial evidence and should be affirmed by the Court.

## II. THE DEPARTMENT FULLY EXPLAINED ITS DETERMINATION THAT THE EMIRATES SLEEP FINANCIAL STATEMENTS ARE PUBLICLY AVAILABLE

In its Opinion, the Court found that Commerce "did not adequately explain its conclusion that {Emirates Sleep's} financial statements were publicly available within the meaning of Commerce's surrogate data selection practice," leaving the Court unable to determine whether Commerce's conclusion was supported by substantial evidence. Opinion at 33. In particular, the Court noted that Commerce had failed to address both (a) whether the versions of the financial statements available in the subscription database were complete and (b) whether Ashley's claims that the financial statements were unavailable through a public source was accurate. *See* Opinion at 35-36. The Court therefore "remand{ed} the Final Determination to Commerce for further explanation or reconsideration." Opinion at 34.

In order to address the Court's concerns, Commerce reopened the record of the proceeding and issued a supplemental questionnaire to Mattress Petitioners requesting additional information on how the Emirates Sleep financial statements were obtained. *See* Remand Redetermination at 8. In response, Mattress Petitioners explained that they had utilized an Indian consultant, who in turn utilized the Indian government's Ministry of Corporate Affairs ("MCA")

7

website, to obtain the Emirates Sleep financial statements in question.[1]  *See* Letter from Mattress Petitioners, "Mattress Petitioners' Response to Commerce's Section D Supplemental Questionnaire," (Jan. 11, 2023) ("Mattress Petitioners' SQR") at 1.  Mattress Petitioners also demonstrated that the same financial statements were available via the website of Zauba Corp., a web service that consolidates information on Indian businesses that "is all a matter of public record, and is sourced from the official registers, and from published government data" and which Commerce correctly determined is "a publicly available source of information."  Remand Redetermination at 8, 12; *see also* Mattress Petitioners' SQR at 8 (quoting id. at Exhibit 5 ("Frequently Asked Questions" of Zauba Corp. website)).  Mattress Petitioners also provided step-by-step instructions on how to use the websites to access copies of the Emirates Sleep financial statements identical to those placed on the record by Mattress Petitioners in March 2020.  *See* Mattress Petitioners' SQR at Exhibits 3 and 6; *see also* Letter from Mattress Petitioners, "Errata to Mattress Petitioners' Response to Commerce's Section D Supplemental Questionnaire," (Jan. 19, 2023) ("Mattress Petitioners' SQR Errata").

After reviewing this evidence, Commerce correctly concluded that the financial statements submitted by Mattress Petitioners were publicly available because they were accessible through the MCA and Zauba Corp. websites, both of which satisfied Commerce's threshold for public availability because "{i}nterested parties can create accounts and retrieve

---

[1] Mattress Petitioners note that nothing in the statute or Commerce regulations prevent them from utilizing an Indian consultant, or any other private individual, to obtain information.  Commerce regulations simply require that the *information itself* be "publicly available." 19 CFR 351.408(c)(1).  After reviewing the evidence, Commerce determined that, at the time Mattress Petitioners submitted them to the record of the investigation, Emirates Sleep's financial statements for the year ending March 31, 2019, were accessible on publicly available websites, providing interested parties an opportunity to retrieve and obtain them.  *See* Remand Redetermination at 13.  Commerce thus correctly concluded that the Emirates Sleep financial statements constitute publicly available information under 19 CFR § 351.408(c)(1).

8

and obtain {such} information…provided they pay a small fee." Remand Redetermination at 13. Commerce also explained that its longstanding practice confirmed that "financial statements need not be free of charge to be considered publicly available" and discussed the record evidence supporting its conclusion that the relevant Emirates Sleep financial statements were publicly available at the time of the original investigation. Remand Redetermination at 13 (citing *1-Hydroxyethylidene-1, 1-Diphosphonic Acid from the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 74 Fed. Reg. 10545 (Mar. 11, 2009), and accompanying IDM at Comment 1; *Certain Preserved Mushrooms from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Rescission in Part*, 76 Fed. Reg. 56732 (Sept. 14, 2011), and accompanying IDM at Comment 4; *Certain Steel Nails from the People's Republic of China: Preliminary Results and Partial Rescission of the Third Antidumping Duty Administrative Review*, 77 Fed. Reg. 53845, 53852 (Sept. 4, 2012)). Consistent with the Court's instructions, Commerce thus fully explained its determination that Emirates Sleep's financial statements were publicly available within the meaning of Commerce's surrogate data selection practice.

  In its comments before the Court, Ashley disagrees with Commerce's conclusions, claiming that "not all members of the public are able to access and download Emirates Sleep's financial statements from the MCA website" because users are required to supply an "Income Tax PAN" to download the documents. Ashley Remand Comments at 10. Even if true, this is irrelevant as the MCA website is not the only identified public source of the documents. As Commerce explained, Mattress Petitioners also demonstrated that the Emirates Sleep financial statements are available to anyone who registers for an account and pays a small fee on the Zauba Corp. website, which requires no "Income Tax PAN" to register. Remand

Redetermination at 10-12; *see also* Mattress Petitioners' SQR at Exhibit 6 and Mattress Petitioners' SQR Errata.  Indeed, as Commerce correctly observed, Ashley's own submissions indicate that it was able to successfully register for an account and access and download documents from the Zauba Corp. website following Mattress Petitioners instructions.  *See* Remand Redetermination at 11.  Ashley notably does not even attempt to dispute this fact in its remand comments before this Court, which make no mention of the Zauba Corp. website, despite Commerce's extensive discussion of this public research tool.  *See generally* Ashley Remand Comments at 9-10.

In sum, in its Remand Redetermination Commerce provided a thorough and reasoned explanation of why it considered the Emirates Sleep financial statements submitted by Mattress Petitioners during the original investigation to be publicly available.  Nothing in Ashley's cursory discussion detracts from this reasonable conclusion.  The Court should accordingly sustain Commerce's findings in this regard.

**III. THE DEPARTMENT'S DETERMINATION THAT EMIRATES SLEEP'S FINANCIAL STATEMENTS ARE THE BEST AVAILABLE INFORMATION ON THE RECORD IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Even though they were missing certain Annexures, Commerce reasonably concluded that "Emirates Sleep's financial statements constitute the best available information on the record with which to value surrogate financial ratios."  Remand Redetermination at 22.  As Commerce explained, the record of the proceeding contained "only…two sets of Indian financial statements for consideration as potential surrogate financial statements," the financial statements of Emirates Sleep and Sheela Foam.  Remand Redetermination at 23.  Of the two options, Commerce determined that the Emirates Sleep financial statement was preferably because the Sheela Foam financial statement "clearly evince{d} money received during the POI under

identifiable programs that Commerce has previously found to be countervailable." Remand Redetermination at 23. The Emirates Sleep financial statement did not.

Commerce's determination was reasonable. As Commerce explained, it "is {Commerce's} practice not to consider financial statements that evince receipt of countervailable subsidies when the record contains alternative and representative information." Remand Redetermination at 23. By contrast, and as this Court acknowledged, "Commerce does not invariably reject incomplete financial statements, but instead looks to whether the missing information is 'vitally important' or 'key.'" Remand Redetermination at 15 (quoting Opinion at 25). As discussed *supra* Commerce reasonably determined information in the missing Annexure 5 of the Emirates Sleep financial statement was not "'vitally important' or 'key' to {its} identification of evidence of countervailable subsidies," because analysis of the remainder of the financial statement provided "all information vital to complete {its} assessment of whether Emirates Sleep received countervailable subsidies…and the information provides no basis to conclude that Emirates Sleep received any countervailable subsidies." Remand Redetermination at 24. By contrast, "Sheela Foam's financial statements indicate clear evidence of money received from two programs that Commerce has previously found to be countervailable." Remand Redetermination at 24.

Ashley argues that Commerce should have used the financial statements of Sheela Foam, rather than those of Emirates Sleep, because the Emirates Sleep financial statements were incomplete and because the record did not contain evidence that Sheela Foam received countervailable subsidies during the POI. Ashley Comments at 11. Neither of these arguments have merit.

As an initial matter, in its Remand Redetermination Commerce fully explained why, despite the missing Annexure 5, the Emirates Sleep financial statements were sufficiently "complete" within the meaning of its surrogate value practice and why they were therefore preferable over the financial statements of Sheela Foam, which contained clear evidence of receipt of countervailable subsidies. *See* Section I, *supra*. Contrary to Ashley's assertions, *see* Ashley Comments at 11, Commerce thus did "weigh{} the two financial statements on the record and determine{d} which one was best" in accordance with 19 U.S.C. § 1677b(c)(1)(B). That Ashley would have preferred that Commerce reach a different determination does not render Commerce's analysis unreasonable or unsupported by the evidence. *See Sunpreme Inc. v. United States*, 946 F.3d. 1300, 1308-1309 (Fed. Cir. 2020) (citing *Ad Hoc Shrimp Trade Action Comm. v. United States*, 802 F.3d 1339, 1348 (Fed. Cir. 2015) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197 (1938)) ("A decision is supported by substantial evidence if the evidence amounts to 'more than a mere scintilla' and a 'reasonable mind might accept it as adequate to support a conclusion.' Commerce's findings 'may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.'")

Ashley's contention that "Commerce improperly interpreted the record evidence and misapplied its past practice" with respect to its determination that Sheela Foam had received countervailable subsidies during the POR, *see* Ashley Comments at 12-13, is similarly without merit. Indeed, it is Ashley that misinterprets the record evidence and Commerce practice. As this Court has previously explained:

> the Department's determination of whether to use the financial statement of a producer that ***potentially received a countervailable subsidy cannot be, nor is it intended to be, a full investigation of the subsidy program in question***…Instead, the Department's practice is to review the financial statements to determinate whether ***the evidence indicates that the company received a countervailable subsidy*** during the relevant period from a program previously investigated by the Department.

*GGB Bearing Tech (Suzhou) Co., Ltd. v. United States*, 279 F. Supp. 3d 1233, 1239 (Ct. Int'l Trade 2017) (emphasis supplied).

In its *Final Determination*, Commerce explained that there was specific evidence to indicate that Sheela Foam had received a countervailable subsidy because "the names of the programs found in the Sheela Foam financial statements are ***the same names Commerce previously found countervailable***." *Mattresses from the Socialist Republic of Vietnam: Final Affirmative Determination of Sales at Less Than Fair Value*, 86 Fed. Reg. 15,889 (Mar. 25, 2021) ("*Final Determination*") (P.R. 525) and accompanying Issues and Decision Memorandum ("IDM") (P.R. 505) at Comment 2. While this alone is sufficient, other record evidence demonstrates that the subsidies mentioned in the Sheela Foam financial statements are the same subsidies that Commerce previously determined to be countervailable. *See* Mattress Petitioners' Response Brief (Feb. 17, 2022) (ECF 44) at 12-14. Consistent with its past practice and the record evidence Commerce thus reasonably concluded that Sheela Foam received countervailable subsidies during the POI. IDM at Comment 2; *see also* Remand Redetermination at 22.

Ashley's claim that Commerce erred because it failed to demonstrate the subsidies received by Sheela Foam were distortive is also without merit. *See* Ashley Comments at 14. Contrary to Ashley's contentions, this Court's decision in *Goldlink Indus. v. United States*, 431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006) does not require Commerce to affirmatively demonstrate

that a subsidy is distortive before deciding *to reject* a potential surrogate financial statement. Rather, the Court in *Goldlink* stated that if Commerce wishes *to use* a financial statement that evidences the receipt of government subsidies it must fully "explain its determination that {the surrogate company's} financial ratios are not distorted by the subsidies it received." 431 F. Supp. at 1334. In other words, *Goldlink* is entirely consistent with Commerce's practice of "not consider{ing} financial statements that evince receipt of countervailable subsidies." Remand Redetermination at 23; *see also Goldlink*, 431 F. Supp. at 1334. *Goldlink* merely requires that if Commerce <u>ignores</u> this practice and utilizes financial statements that, like those of Sheela Foam, evince receipt of subsidies, it must explain why those subsidies do not lead to distorted financial ratios. *See Goldlink*, 431 F. Supp. at 1334.

In sum, Commerce reasonably concluded that, of the two potential surrogate financial statements available on the record, the "Emirates Sleep's financial statements constitute the best available information on the record with which to value surrogate financial ratios." Remand Redetermination at 22. Commerce carefully weighted the pros and cons of each available financial statement and determined that, while the Emirates Sleep financial statements were missing certain Annexures, they were nonetheless "not disqualifiable on the basis of countervailable subsidies, as all information vital to complete {Commerce's} assessment of whether Emirates Sleep received countervailable subsidies is on the record, and the information provides no basis to conclude that Emirates Sleep received any countervailable subsidies." Remand Redetermination at 24. By contrast, Commerce found that "Sheela Foam's financial statements indicate clear evidence of money received from two programs that Commerce has previously found to be countervailable." Remand Redetermination at 24. Commerce's conclusion that, of the two options, the Emirates Sleep financial statements "serve as the best

source of surrogate value information on the record" was therefore both reasonable and supported by substantial evidence. This Court should affirm Commerce's findings in this regard.

## IV. CONCLUSION

For the foregoing reasons, the Court should find that Commerce's Remand Redetermination findings that the Emirates Sleep financial statements were complete, publicly available, therefore the best available information from which to calculate surrogate financial ratios were both reasonable and supported by substantial evidence. The Court should therefore affirm Commerce's Remand Redetermination in full.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300
*Counsel to Brooklyn Bedding, LLC, et al.*

Date:   April 26, 2023

**Certificate of Compliance with Chambers Procedures 2(B)(1)**

The undersigned hereby certifies that the foregoing brief contains 3,930 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/ Yohai Baisburd
Yohai Baisburd