**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| _____ ) | |
| ASHLEY FURNITURE INDUSTRIES, LLC, ) | |
| ASHLEY FURNITURE TRADING COMPANY, ) | |
| WANEK FURNITURE CO., LTD., ) | |
| MILLENNIUM FURNITURE CO., LTD., AND ) | |
| COMFORT BEDDING COMPANY LIMITED ,) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| THE UNITED STATES, ) | Court No. 21-00283 |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| BROOKLYN BEDDING, LLC, CORSICANA ) | |
| MATTRESS COMPANY, ELITE COMFORT ) | |
| SOLUTIONS; FXI, INC., INNOCOR, INC., ) | |
| KOLCRAFT ENTERPRISES INC., LEGGETT & ) | |
| INTERNATIONAL BROTHERHOOD OF ) | |
| TEAMSTERS, and UNITED STEEL, PAPER AND) | |
| FORESTRY, RUBBER, MANUFACTURING, ) | |
| ENERGY, ALLIED INDUSTRIAL AND ) | |
| SERVICE WORKERS INTERNATIONAL ) | |
| UNION, AFL-CIO, ) | |
| Defendant-Intervenors ) | |
| _____) | |

**DEFENDANT'S RESPONSE TO THE PLAINTIFFS' COMMENTS ON THE DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

OF COUNSEL:
VANIA WANG
Senior Attorney
Department of Commerce

KARA M. WESTERCAMP
Trial Counsel
Commercial Litigation Branch
U.S. Department of Justice

Office of the Chief Counsel
  for Trade Enforcement and Compliance

Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305 7571
Email: kara.m.westercamp@usdoj.gov

April 28, 2023

Attorneys for Defendant

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................. i

TABLE OF AUTHORITIES ......................................................................... ii

DEFENDANT'S RESPONSE TO THE PLAINTIFFS' COMMENTS ON THE
DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION ............................... 1

BACKGROUND ............................................................................................ 2

    I.    Commerce's Final Determination And The Court's Remand Order .................... 2

    II.   Remand Redetermination ................................................................ 3

ARGUMENT ................................................................................................. 8

    I.    Standard Of Review ......................................................................... 8

    II.   Commerce's Remand Redetermination Complies With The Remand Order ........ 9

        A.    Substantial Evidence Supports Commerce's Determination That Emirates
            Sleep's Financial Statements Were Complete .......................................... 9

        B.    Substantial Evidence Supports Commerce's Determination That Emirates
            Sleep's Financial Statements Were Publicly Available .......................... 13

        C.    Substantial Evidence Supports Commerce's Determination That The
            Emirates Sleep's Financial Statements Are The Best Available
            Information ............................................................................. 15

CONCLUSION .............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Algoma Steel Corp. v. United States,*
    865 F.2d 240 (Fed. Cir. 1989) ............................................................................................... 11

*Ashley Furniture Indus., LLC et. al. v. United States,*
    607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022) ................................................................. 2, 3, 4

*Ass'n of Am. Sch. Paper Suppliers v. United States,*
    791 F. Supp. 2d 1292 (Ct. Int'l Trade 2011) ......................................................................... 9

*Best Mattresses Int'l Co. Ltd. v. United States,*
    Consol. Ct. No. 21-00281, Slip Op. 23-19, 2023 WL 2198803 (Ct. Int'l Trade Feb. 17, 2023)
    ...................................................................................................................................... 10, 11

*Clearon Corp. v. United States,*
    800 F. Supp. 2d 1355 (Ct. Int'l Trade 2011) ................................................................. 17, 18

*Consol. Edison Co. v. NLRB,*
    305 U.S. 197 (1938) ............................................................................................................... 8

*Consolo v. Fed. Mar. Comm'n,*
    383 U.S. 607 (1996) ............................................................................................................... 8

*Corus Staal BV v. United States,*
    502 F.3d 1370 (Fed. Cir. 2007) ..................................................................................... 11, 12

*Dongguan Sunrise Furniture Co., Ltd. v. United States,*
    886, 865 F. Supp. 2d 1216 (2012) ....................................................................................... 12

*Fine Furniture (Shanghai) Ltd. v. United States,*
    353 F. Supp. 3d 1323 (Ct. Int'l Trade 2018) ....................................................................... 18

*Itochu Bldg. Prods. v. United States,*
    733 F.3d 1140 (Fed. Cir. 2013) ........................................................................................... 12

*Jinko Solar Co. v. United States,*
    229 F. Supp. 3d 1333 (Ct. Int'l Trade 2017) ....................................................................... 15

*MacLean-Fogg Co. v. United States,*
    100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ......................................................................... 8

*Qingdao Sea-Line Trading Co. v. United States*,
    766 F.3d 1378 (Fed. Cir. 2014) ...................................................................... 10

*QVD Food Co. v. United States,*
    721 F. Supp. 2d 1311 (Ct. Int'l Trade 2010) .................................................. 15

*Rhone Poulenc, Inc. v. United States*,
    899 F.2d 1185 (Fed. Cir. 1990) ...................................................................... 11

*Tianjin Wanhua Co. v. United States*,
    179 F. Supp. 3d 1062 (Ct. Int'l Trade 2016) ................................................... 9

*Yantai Xinke Steel Structure Co. v. United States*,
    Ct. No. 10-00240, 2014 Ct. Intl. Trade LEXIS 39 (Apr. 9, 2014) ................. 13

## UNITED STATES CODE

19 U.S.C. § 1516a(b)(1)(B)(i)) ..................................................................................... 8

19 U.S.C. § 1671(a) ........................................................................................... 17, 19

19 U.S.C. § 1677(5) ........................................................................................... 17, 19

19 U.S.C. § 1677(5)(B) ...................................................................................... 17, 19

## REGULATIONS

19 C.F.R. § 351.309(c)(2) .......................................................................................... 11

## FEDERAL REGISTER NOTICES

*Polyethylene Terephthalate Film Sheet, and Strip from India*,
    71 Fed. Reg. 7,534 (Dep't of Commerce Feb. 13, 2006). ............................... 18

*Certain Activated Carbon from the People's Republic of China*,
    74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009) ............................. 14

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
    74 Fed. Reg. 29,473 (Dep't of Commerce June 15, 2009) .............................. 17

*Circular Welded Carbon-Quality Steel Pipe from India*,
    77 Fed. Reg. 64,468 (Dep't of Commerce Oct. 22, 2012) .............................. 17

*Certain Oil Country Tubular Goods from the Socialist Republic of Vietnam*,
    82 Fed. Reg. 18,611 (Dep't of Commerce Apr. 20, 2017), .............................. 19

*Certain Quartz Surface Products from India,*
85 Fed. Reg. 25,398 (Dep't of Commerce May 1, 2020)........................................................17

*Mattresses From the Socialist Republic of Vietnam,*
86 Fed. Reg. 15,889 (Dep't of Commerce Mar. 25, 2021)......................................................2

## LEGISLATIVE HISTORY

H.R. Rep. No. 100-576, (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 1547 ...............16

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE:  THE HONORABLE TIMOTHY M. REIF, JUDGE**

_____

|  |  |  |
|---|---|---|
| ASHLEY FURNITURE INDUSTRIES, LLC, | ) | |
| ASHLEY FURNITURE TRADING COMPANY, | ) | |
| WANEK FURNITURE CO., LTD., | ) | |
| MILLENNIUM FURNITURE CO., LTD., AND | ) | |
| COMFORT BEDDING COMPANY LIMITED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | Court No. 21-00283 |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BROOKLYN BEDDING, LLC, CORSICANA | ) | |
| MATTRESS COMPANY, ELITE COMFORT | ) | |
| SOLUTIONS; FXI, INC., INNOCOR, INC., | ) | |
| KOLCRAFT ENTERPRISES INC., LEGGETT & | ) | |
| PLATT, INCORPORATED, THE | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | |
| TEAMSTERS, and UNITED STEEL, PAPER AND | ) | |
| FORESTRY, RUBBER, MANUFACTURING, | ) | |
| ENERGY, ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS INTERNATIONAL | ) | |
| UNION, AFL-CIO, | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

_____

**DEFENDANT'S RESPONSE TO PLAINTIFFS' COMMENTS ON THE
DEPARTMENT OF COMMERCE'S REMAND REDETERMINATION**

Defendant, the United States, respectfully submits this response to the comments

submitted by plaintiffs Ashley Furniture Industries, LLC (AFI) (previously Ashley Furniture

Industries, Inc.), Ashley Furniture Trading Company (AFTC), Wanek Furniture Co., Ltd.

(Wanek), Millennium Furniture Co., Ltd. (Millennium), and Comfort Bedding Company Limited

(Comfort Bedding) (collectively, Ashley Furniture or plaintiffs), ECF No. 80 (Ashley Furniture Cmts.), concerning the United States Department of Commerce's (Commerce) final results of redetermination filed in accordance with this Court's decision and remand order in *Ashley Furniture Indus., LLC et. al. v. United States*, 607 F. Supp. 3d 1210 (Ct. Int'l Trade 2022).  *See* Final Results of Redetermination Pursuant to Court Remand, Feb. 23, 2023 (Remand Results), ECF No. 73.  For the reasons explained below, we respectfully request that the Court sustain Commerce's remand results and enter judgment for the United States.

## BACKGROUND

### I.     Commerce's Final Determination And The Court's Remand Order

Ashley Furniture filed an action challenging Commerce's final determination in the antidumping duty investigation covering mattresses from the Socialist Republic of Vietnam.  *See Mattresses From the Socialist Republic of Vietnam*, 86 Fed. Reg. 15,889 (Dep't of Commerce Mar. 25, 2021) (final LTFV determ.) (P.R. 525), and accompanying Issues and Decision Memorandum (Dep't of Commerce Mar. 18, 2021) (IDM) (P.R. 505).[1]  Specifically, Ashley Furniture challenged Commerce's selection of Emirates Sleep's financial statements for calculating the surrogate financial ratios; Commerce's selection of Indian Harmonized Tariff Schedule (HTS) 7320.90.90 as a surrogate value for spring coil innerspring units; and Commerce's determination that AFI and AFTC had failed to show that they were eligible for a separate rate.

On November 28, 2022, the Court issued its remand order.  The remand order sustained,

---

[1] Documents on the investigation administrative record are designated as "P.R." or "C.R."  References to the documents on the administrative record for the remand redetermination are designated as "P.R.R."

in part, and remanded, in part, certain aspects of the final determination. *See Ashley Furniture*, 607 F. Supp. 3d at 1245.

On the issue of Emirates Sleep's financial statements, the Court ordered Commerce to explain whether they were publicly available and complete and explain Commerce's selection of Emirates Sleep's financial statements over Sheela Foam's financial statements to calculate surrogate financial ratios. *Id.* at 1227-33. Specifically, the Court held that Commerce had not adequately explained its conclusion that Emirates Sleep's financial statements were complete because Commerce had not addressed the title of a note and the size of the balance associated with the note. *Id.* at 1230-32. The Court also held that Commerce's explanation regarding completeness in the final determination was inadequate because Commerce did not have a basis for determining that an "item constituted a market-based loan." *Id.* at 1231. Finally, the Court held that Commerce did not adequately explain its conclusion that the statements were publicly available because "Commerce failed to address whether the version of the statements that was available in the subscription database was complete" and Commerce failed to "address the record evidence" pertaining to Ashley Furniture's "alleged efforts to obtain" the financial statements. *Id.* at 1233.

## II.    Remand Redetermination

On January 4, 2023, Commerce re-opened the record and issued a questionnaire to Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, the International Brotherhood of Teamsters, and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively,

petitioners), requesting information on how petitioners had obtained Emirates Sleep's financial statements. *See* Remand Supp. Questionnaire, P.R.R. 1.  On January 11, 2023, petitioners timely submitted their response, and on January 18, 2023, plaintiffs filed rebuttal comments and information.  Remand Supp. Resp., P.R.R. 2; Ashley Rebuttal, P.R.R. 4.

After the parties had an opportunity to comment on the draft remand redetermination, on February 23, 2023, Commerce issued its final remand redetermination, in which it continued to find that Emirates Sleep's financial statements were complete and publicly available, and that Emirates Sleep's financial statements were the best available information on the record to value surrogate financial ratios.  Remand Redetermination at 2, 4.

To begin with, Commerce explained that "{t}he completeness of a given financial statement is one criterion against which {it} evaluate{s} information on the record," and although it does not "outright reject given financial statements if any piece is absent," Commerce "consider{s} whether the missing information is vital to {its} analysis and calculations." *Id.* at 4-5.  In this case, Commerce explained that of five missing annexures to "certain line items within the supplemental notes forming part of the financial statements," the Court had already accepted Commerce's explanation that Annexures 1 through 4 are "supplemental details not forming part of the Emirates Sleep financial statements and unnecessary for Commerce purposes of calculating surrogate financial ratios." *Id.* at 5; *see also Ashley Furniture*, 607 F. Supp. 3d at 1229-30 ("Commerce explained adequately its conclusion that the omission of Annexures 1 through 4 did not render {Emirates Sleep's} financial statements incomplete.").  As to Annexure 5's absence from the record, which was entitled "Short-term loans and advances" and may contain information about distortive subsidies, particularly in the line item (b), "Balances with

4

government authorities," Commerce explained that if there were any indication that
countervailable subsidies were present in financial statements, then it "would not consider
Emirates Sleep's financial statements as a basis for surrogate financial ratios because the
statements would be distorted by countervailable subsidies." *Id.* at 5-6.

Correspondingly, Commerce explained that Annexure 5 "cannot categorically contain
any evidence of potentially countervailable subsidies received by Emirates Sleep" because "Note
13 is classified entirely as an asset, any loans or advances contained therein must be *from*
Emirates Sleep *to* government authorities, as loans given are classified as assets and loans
received are classified as liabilities." *Id.* at 6 (emphasis in original). Therefore, Commerce
explained that "Annexure 5 could not potentially demonstrate receipt of a countervailable
subsidy because Note 13, and thereby Annexure 5, pertain to loans or advances given, not
received" and "no potential subsidization would be revealed by the inclusion of Annexure 5 on
the record." *Id.*

Rather, *if* Emirates Sleep had "received any loans or advances from the government, the
loans would be classified under 'Equity and Liabilities' in the balance sheet and further broken
down within Notes 5 through 8." *Id.* In other words, "because Note 13 pertains to loans and
advances *from* Emirates Sleep *to* other entities not affiliated with Emirates Sleep, any quantities
enumerated therein have no impact on {its} financial ratio calculations." *Id.* at 7 (emphasis in
original); *id.* at 16 (explaining that "parties have not provided evidence of where Commerce has
found a loan or advance by the respondent to the government to be a countervailable subsidy
program."). Moreover, even the magnitude of the loans Emirates Sleep lent to the government,
which accounted for .40 percent of total revenue was "immaterial" to Commerce's calculation of

the financial ratios. *Id.* at 7-8; *see also id.* at 8 (explaining that because there are no loans *to* Emirates Sleep in Annexure 5, the discussion of a loan's market of origin is unnecessary.").

Turning to public availability, Commerce explained that the petitioners "provided a step-by-step demonstration of how they retrieved the financial statements from {two} sources,"the Indian Ministry of Corporate Affairs (MCA) and Zauba Corp. *Id.* at 8-9. For example, "{f}irst, the petitioners identified the company identification number (CIN), U51909MH2005PTC156771," which the petitioners had placed on the record, and then all one needed to do was to "create an account to access and download the documents" from the MCA and Zauba websites to access the financial statements. *Id.* at 9. Commerce rejected Ashley Furniture's assertion that an applicant "must supply a PAN – an individual specific identification number issued by India's Income Tax Department – thereby precluding non-Indian citizens or residents from accessing MCA documents," because it "provided screenshots indicating that the PAN is not a requirement for registration." *Id.* at 9-10. Further, Commerce explained that because "{t}he information contained on the MCA website is retrieved by selecting 'View Public Documents,'" the public documents are "available for inspection by members of the public on payment of the prescribed fee," and the public can access this information with or without a PAN, Commerce considers the MCA website to be public. *Id.* at 9-10; *id.* at 19 ("The petitioners provided a clear and adequate, step-by-step demonstration of how they retrieved the financial statements from the MCA website.").

Commerce likewise rejected Ashley Furniture's assertion that the financial statements were not available on the Zauba Corp. website because "the record demonstrates that Emirates Sleep's financial statements are available, clearly labeled, and ready for download once a user

pays a small fee." *Id.* at 11; *see also id.* at 20 ("Zauba Corp., is a private provider of commercial information that is all 'a matter of public record, and is sourced from the official registers, and from published government data.'"); *id.* at 21 ("Ashley Group indicated that it was aware during the investigation that the Emirates Sleep financial statements existed in a subscription database.").

Further, Commerce explained that "the MCA and Zauba Corp. websites satisf{ies} {its} threshold for public availability" because "{i}nterested parties can create accounts and retrieve and obtain information, including Emirates Sleep's financial statements from various years, provided they pay a small fee." *Id.* at 12; *id.* ("As {Commerce} ha{s} found in prior cases, financial statements need not be free of charge to be considered publicly available."). Thus, Commerce determined that "Emirates Sleep's financial statements covering the year ending March 31, 2019, signed December 12, 2019, and dated December 16, 2019 were accessible on publicly available websites at the time the petitioners submitted them to the record and interested parties would have been able to retrieve and obtain Emirates Sleep's financial statements on either the MCA website or Zauba Corp.'s website." *Id.* at 13.

Finally, Commerce determined that the Emirates Sleep financial statements were the best available information on the record with which to value surrogate financial ratios "because the only other available information on the record, the financial statements of Sheela Foam, evince receipt of countervailable subsidies during the reporting period." *Id.* at 22. To wit, Commerce explained that "Sheela Foam's financial statements clearly evince money received during the {period of investigation} under identifiable programs that Commerce has previously found to be countervailable," and "Commerce does not rely on financial statements that contain references to

programs previously found to be countervailable when there are other sufficiently usable and representative data on the record for purposes of calculating the surrogate financial ratios." *Id.* at 23. Thus, Commerce determined that because its practice is "to not consider financial statements that evince receipt of countervailable subsides when the record contains alternative and representative information, {it} only ha{s} one available set of financial statements from which to make {its} selection, *i.e.*, those of Emirates Sleep." *Id.* Although Emirates Sleep's financial statements were not as contemporaneous as Sheela Foam's, because they were from the year proceeding the period of investigation, Commerce determined that that did not disqualify them because Commerce has previously "opted to use financial statements that are not contemporaneous because it was the best information on the record." *Id.* at 23-24.

## ARGUMENT

### I.   Standard Of Review

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence may be "less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1996).

**II.**   <u>**Commerce's Remand Redetermination Complies With The Remand Order**</u>

Commerce's remand redetermination complies with the Court's remand order by providing additional explanation and addressing record evidence regarding:  (1) the completeness and public availability of the Emirates Sleep financial statements; and (2) Commerce's determination that the Emirates Sleep financial statements are the best available information for valuing the surrogate financial ratios. *See generally* Remand Redetermination.

      **A.**      **Substantial Evidence Supports Commerce's Determination That Emirates Sleep's Financial Statements Were Complete**

Commerce's determination that Emirates Sleep's financial statements were complete for the purposes of calculating surrogate financial ratios is supported by substantial evidence.  *See* Remand Redetermination at 5-8.  Ashley Furniture's arguments to the contrary are meritless. *See* Ashley Furniture Cmts. at 3-9.

Incompleteness alone is not sufficient to reject a financial statement.  *Ass'n of Am. Sch. Paper Suppliers v. United States*, 791 F. Supp. 2d 1292, 1303-04 (Ct. Int'l Trade 2011).  Rather, when Commerce rejects incomplete financial statements, it "has often explicitly focused on the importance of the missing information{.}"  *Ass'n of Am. Sch. Paper Suppliers*, at 1303; *see also Tianjin Wanhua Co. v. United States*, 179 F. Supp. 3d 1062, 1069 (Ct. Int'l Trade 2016) (acknowledging the distinction for when a "financial statement contains all the data necessary for calculating financial ratios" and when Commerce rejects incomplete financial statements).

First, plaintiffs assert that Commerce was unreasonable to conclude that Emirates Sleep's financial statements were complete without Annexure 5 because financial contributions can be of different types and not necessarily be loans or advances from government authorities.  Ashley Furniture Cmts at 4.  However, this assertion is not supported by record evidence, and ignores

the fact that Annexure 5 is for a specific line item for Note 13, titled "Short-term loans and advances." Remand Redetermination at 16-17 ("Annexure 5 pertains to a specific line item that falls under 'short-term loans and advances' classified as 'current assets'"). As Commerce explained, "{n}ot just *any* program could appear here," and Ashley Furniture failed to "provide any examples of Indian programs wherein loans or advances are provided by companies to the government that Commerce has previously found to be countervailable." *Id.* at 17 (emphasis in original). This is not speculation as plaintiffs argue, but a determination based upon record evidence.

Plaintiffs also argue that *Best Mattresses Int'l Co. Ltd. v. United States*, Consol. Ct. No. 21-00281, Slip Op. 23-19, 2023 WL 2198803 (Ct. Int'l Trade Feb. 17, 2023), is persuasive because this Court suggested that Annexure 5 could contain a tax credit receivable, which would be a countervailable subsidy. Ashley Furniture Cmts. at 5. But, in this case, Commerce explained in the remand redetermination that not any program can appear in Annexure 5, which is for a specific line item under Note 13, titled "Short-term loans and advances." Remand Redetermination at 16-17; *see also Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014) ("each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record.").

For example, in *Best Mattresses*, Emirates Sleep's financial statements are being used to calculate profit ratios for a constructed value for a market economy and are contemporaneous with the period of investigation, whereas here, Emirates Sleep's financial statements are being used for surrogate financial ratios for a non-market economy and are non-contemporaneous. *Compare Best Mattresses,* 2023 WL 2198803, at 88-89, 94-95, *with* Remand Redetermination at

10

23.  Additionally, as plaintiffs acknowledge, *Best Mattresses* is only persuasive authority.  *See Algoma Steel Corp. v. United States*, 865 F.2d 240, 243 (Fed. Cir. 1989) (explaining that one judge on the Court of International Trade is not bound by decisions of another judge on the court).

Next, plaintiffs argue that the auditor's note contained information that contradicted Commerce's determination.  Ashley Furniture Cmts. at 6.  Because Ashley Furniture failed to raise this argument in the remand proceeding, the Court should determine that it is now precluded from making this argument.  *See* 19 C.F.R. § 351.309(c)(2) (stating that a party's case brief to Commerce "must present all arguments that continue in the submitter's view to be relevant to {Commerce's} . . . final results."); *Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (a party is "procedurally required to raise [an] issue before Commerce at the time Commerce was addressing the issue," and, when the party has "failed to raise the issue at the appropriate time on remand," the party has "abandoned its argument by failing to exhaust its administrative remedies before Commerce."); *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) (recognizing that the exhaustion requirement protects administrative agency authority and promotes judicial efficiency).  Indeed, the Federal Circuit has held that a party's obligation to exhaust its administrative remedies in proceedings before Commerce applies both to broad issues and arguments related to those issues.  *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (disagreeing with contention that courts can consider new arguments so long as the general issue was raised at the

11

agency level).  Exceptions to the exhaustion requirement are limited,[2] and the Court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies before the Department of Commerce in trade cases."  *Corus Staal*, 502 F.3d at 1379.

In any event, plaintiffs ignore the latter half of the auditor's sentence and the context of the auditor's complete note.  The full paragraph reads "{i}n our opinion and according to information and explanation given to us, the company has not granted any loans or provided any guarantees or given any security or made any investments *to which the provision of section 185 and 185 of the Companies Act, 2013* {sic}.  Accordingly, paragraph 3 (iv) of the order is not applicable."  Petitioner Surrogate Value Cmts. (July 30, 2020) (P.R. 276), at Exhibit 11. (emphasis added).  As such, rather than Ashley Furniture's reading that Emirates Sleep has not made any loans at all, the full paragraph explains that Emirates Sleep has not made loans governed by a *specific law*.  *Id.*

Nonetheless, plaintiffs cite *Dongguan Sunrise Furniture Co., Ltd. v. United States*, 886, 865 F. Supp. 2d 1216, 1242 (2012), to claim that Annexure 5 is akin to a missing tax line, which this Court found may contain information about subsidies.  Ashley Furniture Cmts. at 7-8. However, Commerce explained that Annexure 5 related to a line item under Note 13 titled "Short-term loans and advances" and was in the asset column, which means the loan was from Emirates Sleep *to* the government, not vice versa.  Remand Redetermination at 6-7; *id.* at 16 ("Moreover, parties have not provided evidence of where Commerce has found a loan or

---

[2] None of the exceptions to the exhaustion requirement are applicable in this case.  The exceptions include futility, a pure question of law, lack of timely access to the confidential record, no administrative procedure to exhaust, or a new interpretation from an intervening judicial decision.  *See Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1146 (Fed. Cir. 2013).

advance by the respondent to the government to be a countervailable subsidy program."). Therefore, substantial evidence supports Commerce's determination that Annexure 5 would not reflect countervailable subsidies.  *Id.* at 7.

Undeterred, plaintiffs argue that Commerce failed to explain the significance of the size of the loan.  Ashley Furniture Cmts. at 8-9.  However, Commerce explained that "{t}he magnitude of Emirates Sleep's loans and advances it lent to government authorities does not factor into the company's revenue, profit, or cost of manufacturing, and is thereby immaterial to our calculation of surrogate overhead, SG&A, and profit ratios."  Remand Redetermination at 7-8.

Thus, Commerce's determination that the Emirates Sleep financial statements are complete is supported by substantial evidence and in accordance with law.

**C.**     **Substantial Evidence Supports Commerce's Determination That Emirates Sleep's Financial Statements Were Publicly Available**

Commerce's determination that Emirates Sleep's financial statements were publicly available is supported by substantial evidence.  The bar for public availability is that interested parties may independently access the information.  *Yantai Xinke Steel Structure Co. v. United States*, Ct. No. 10-00240, 2014 Ct. Intl. Trade LEXIS 39 at *45-46 (Ct. Int'l Trade Apr. 9, 2014) ("Commerce's concern is that other interested parties may not be able to independently access the information, and this is the bar that Commerce has reasonably set for public availability."); *see also* IDM at 35.  Indeed, "{t}he purpose of public availability is to ensure that interested parties are able to comment on the reliability and relevance of such information in the particular case." IDM at 35.

Here, Commerce re-opened the remand record and requested step-by-step instructions of

13

how and where petitioners had retrieved Emirates Sleep's financial statements from the two different sources, the MCA and Zauba websites. *See* Remand Redetermination at 8-9, 19-20. In the remand redetermination, Commerce thoroughly explained how Emirates Sleep's financial statements could be accessed on the MCA and Zauba websites, albeit with a small fee. *Id.* at 8-12, 20.

Plaintiffs argue that members of the public could not access and download Emirates Sleep's financial statements from the MCA website because an "Income Tax PAN" is required to download Emirates Sleep's financial statements and that the petitioners used an Indian consultant to obtain Emirates Sleep's financial statements. Ashley Furniture Cmts. at 9-10. However, Commerce explained that the "Income Tax PAN" is mandatory to apply as a "Business User" but is not mandatory to apply as a "Registered User." Remand Redetermination at 10 (citing Ashley Rebuttal at Exhibit 1). "Because the Government of India denotes the information as 'public documents' that are 'available for inspection by members of the public on payment of the prescribed fee,' and because the public can access this information with or without a PAN, Commerce considers the MCA website to be public." Remand Redetermination at 10 (quoting Remand Supplemental Response at Exhibit 2). Commerce has also previously determined that the MCA website is sufficient for public availability. *See e.g.*, *Certain Activated Carbon from the People's Republic of China*, 74 Fed. Reg. 57,995 (Dep't of Commerce Nov. 10, 2009) (final admin. review), and accompanying IDM at Comment 2. Additionally, Commerce also determined that the Zauba website is available to the public with a small fee. Remand Redetermination at 11-12.

14

**D.** **Substantial Evidence Supports Commerce's Determination That The Emirates Sleep's Financial Statements Are The Best Available Information**

Commerce's selection of Emirates Sleep's financial statements to calculate surrogate financial ratios is also supported by substantial evidence. Plaintiffs' arguments to the contrary are meritless. *See* Ashley Furniture Cmts. at 11-15.

There were only two financial statements from the primary surrogate country, India, on the record: Emirates Sleep and Sheela Foam. Remand Redetermination at 23. Commerce determined that "Sheela Foam's financial statements clearly evince money received during the {period of investigation} under identifiable programs that Commerce has previously found to be countervailable." *Id.* at 23; IDM at 30. Although Emirates Sleep's financial statements were non-contemporaneous, Emirates Sleep's financial statements were otherwise complete enough to use, reliable, free of countervailable subsidies, reflected the respondent's business operations in Vietnam, and publicly available. Remand Redetermination at 23-24; IDM at 28-36. Therefore, Commerce determined that Emirates Sleep's financial statements are the best available information on the record. Remand Redetermination at 23-24; *see also QVD Food Co. v. United States,* 721 F. Supp. 2d 1311, 1316-17 (Ct. Int'l Trade 2010) (explaining that when Commerce is presented with a choice between imperfect alternatives, Commerce may find that a non-contemporaneous financial statement to be the best available information on the record); *Jinko Solar Co. v. United States*, 229 F. Supp. 3d 1333, 1350-51 (Ct. Int'l Trade 2017) (describing Commerce's practice to not rely on financial statements when evidence of receipt of countervailable subsidies is present and other usable financial statements are available).

Plaintiffs claim that Commerce should have selected Sheela Foam's financial statements over Emirate Sleep's financial statements because Emirates Sleep's financial statements were

15

incomplete.  Ashley Furniture Cmts. at 11-12.  However, as explained above, Emirates Sleep's

financial statements were complete for the purpose of calculating surrogate financial ratios.  *See*

Remand Redetermination at 14.  Additionally, putting aside the fact that plaintiffs did not

exhaust their argument about the auditor's note, the auditor's note does not state that Emirates

Sleep did not provide any loans, but rather that Emirates Sleep did not provide any loans to

which a certain provision of the law is applicable.  *See* Petitioner Surrogate Value Cmts. at

Exhibit 11.

Next, plaintiffs argue that Sheela Foam's financial statement did not contain specific

evidence of countervailable subsidies or that the subsidies in Sheela Foam's financial statements

were distortive.  Ashley Furniture Cmts. at 12-15.  However, as Commerce had previously

explained in the final determination and still further in the remand redetermination, it had reason

to believe that Sheela Foam had received countervailable subsidies.  *See* IDM at 34-35; Remand

Redetermination at 23.  Indeed, Commerce avoids "using any prices which it has reason to

believe or suspect may be dumped or subsidized prices," consistent with the legislative history of

the 1988 Omnibus Trade and Competitiveness Act.  *See* Omnibus Trade and Competitiveness

Act of 1988, H.R. Rep. No. 100-576, at 59 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N.

1547, 1623-24.  In determining whether there is a "reason to believe or suspect" that a financial

statement reflects countervailable subsidies, Commerce examines the financial statements (and

accompanying notes) and any other pertinent information placed on the record.  When reviewing

the financial statement for evidence of countervailable subsidies, Commerce employs general

guideposts:

> (1) If a financial statement contains a reference to a specific subsidy
> program found to be countervailable in a formal CVD determination,

16

> Commerce will exclude that financial statement from consideration. (2) If a financial statement contains only a mere mention that a subsidy was received, and for which there is no additional information as to the specific nature of the subsidy, Commerce will not exclude the financial statement from consideration.

*Clearon Corp. v. United States*, 800 F. Supp. 2d 1355, 1359 (Ct. Int'l Trade 2011) (citing *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 74 Fed. Reg. 29,473 (Dep't of Commerce June 15, 2009) (new shipper reviews), and accompanying IDM at 4-5)). Thus, if a specific subsidy program is mentioned or identified within a company's financial statement, and that subsidy program has previously been determined to be countervailable, Commerce will exclude the financial statement from consideration. *Id*.; *see also* 19 U.S.C. § 1671(a) (allowing duties to be imposed only upon a finding that a countervailable subsidy is being provided); *see also* 19 U.S.C. § 1677(5) & (5B) (differentiating countervailable and non-countervailable subsidies, respectively).

Here, Sheela Foam's financial statements showed "duty drawback" under "31. Revenue from Operations" and "Investment Subsidy received" under "32. Other Income." Ashley Group Surrogate Value Cmts (July 30, 2020), P.R. 278-280 at Exhibit SV-4, pgs. 119 and 120. The duty drawback (DDB) program was found to be countervailable in *Certain Quartz Surface Products from India*, 85 Fed. Reg. 25,398 (Dep't of Commerce May 1, 2020) (final CVD determ.), and accompanying IDM at 30, and Commerce explained that it "determine{d} that the DDB Scheme confers a countervailable subsidy." Commerce has also previously determined that the investment subsidies program was countervailable. *See Circular Welded Carbon-Quality Steel Pipe from India*, 77 Fed. Reg. 64,468 (Dep't of Commerce Oct. 22, 2012) (final CVD determ.), and accompanying IDM at Cmt. 8. Therefore, Sheela Foam's financial

17

statements referred to specific subsidy programs that Commerce previously found to be countervailable in formal countervailing duty investigations. *See* Remand Redetermination at 23-24. Consequently, Commerce had reason to suspect or believe that Sheela Foam's financial statements reflected countervailable subsidies. *Id.*

Plaintiffs argue that the evidence is not specific information under *Clearon*. Ashley Furniture Cmts. at 13. However, this argument is belied by the fact that the two subsidies' names in Sheela Foam's financial statements are identical to the names of subsidy programs that Commerce had previously found to be countervailable. IDM at 30. This Court has determined that this type of interpretation is reasonable. For example, in *Clearon*, Commerce found that Aditya's financial statement demonstrated that Aditya received a benefit from a "Capital Subsidy" program. 800 F. Supp. 2d at 1359. The plaintiff in *Clearon* argued that although Commerce pointed to instances in which the term, "Capital Subsidy" was referenced, the financial statement omitted any references explaining the meaning of the term and should instead be interpreted as contributions made by the majority owners of the company. *Id.* However, Commerce concluded that "Capital Subsidy" implicated a subsidy program that Commerce had previously found countervailable in *Polyethylene Terephthalate Film Sheet, and Strip from India*, 71 Fed. Reg. 7,534 (Dep't of Commerce Feb. 13, 2006). *Id.* at 1360. Therefore, this Court held that Commerce's interpretation of the financial statements was reasonable and supported by substantial evidence. *Id.* at 1361.

Plaintiffs also cite *Fine Furniture (Shanghai) Ltd. v. United States*, 353 F. Supp. 3d 1323, 1351 (Ct. Int'l Trade 2018), for the proposition that Commerce is "under no obligation to reject financial statements that have evidence of subsides and may nevertheless rely on such

18

statements." Ashley Furniture Cmts. at 13-14. Yet, in *Fine Furniture*, Commerce declined to

find that the name "Investment Subsidy" in a Romanian financial statement met its reason to

believe or suspect standard because it had never previously found any subsidy programs to be

countervailable in Romania and there was no other additional information about the subsidy.

353 F. Supp. 3d at 1351. This contrasts with the circumstances here in which the names of the

subsidies in Sheela Foam's financial statements are *identical* to subsidy programs that

Commerce has previously found countervailable in India. IDM at 30.

Finally, plaintiffs allege that the amount of the countervailable subsidies in Sheela

Foam's financial statement are not high enough to be "distortive." Ashley Furniture Cmts. at 14.

However, although "Commerce may have found it appropriate in a past case, Commerce's

current practice does not consider the amount of the benefit received when analyzing surrogate

financial statements." Remand Redetermination at 23; *see also Certain Oil Country Tubular*

*Goods from the Socialist Republic of Vietna*m, 82 Fed. Reg. 18,611 (Dep't of Commerce Apr.

20, 2017), and accompanying IDM at 9 ("it is not {Commerce's} practice to consider the amount

of the benefit received when analyzing surrogate financial statements"). Countervailable

subsidies are distortive under the law. *See* 19 U.S.C. §§ 1671(a), 1677(5) & (5B). Therefore,

Commerce determination's that the Emirates Sleep financial statements were the best available

information because Sheela Foam's financial statements reflected countervailable subsidies is

supported by substantial evidence and in accordance with law. *See* Remand Redetermination at

22-25.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand redetermination and enter judgment in favor of the United States.

Respectfully submitted,

BRIAN M. BOYNTON
Deputy Principal Assistant Attorney General

PATRICIA M. McCARTHY
Director

<u>s/L. Misha Preheim</u>
L. MISHA PREHEIM
Assistant Director

OF COUNSEL:                    <u>s/Kara M. Westercamp</u>
VANIA WANG                     KARA M. WESTERCAMP
Senior Attorney                Trial Attorney
Department of Commerce         U.S. Department of Justice
Office of the Chief Counsel    Civil Division
  for Trade Enforcement & Compliance    Commercial Litigation Branch
                               P.O. Box 480
                               Ben Franklin Station
                               Washington, D.C.  20044
                               Tel: (202) 305-7571
                               Email: kara.m.westercamp@usdoj.gov

April 28, 2023                 Attorneys for Defendant

20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedure ¶ 2(B)(2), I hereby certify that this brief contains 5,093 words.  In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

*/s/Kara M. Westercamp*

KARA M. WESTERCAMP