Slip Op.24-147

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ASHLEY FURNITURE INDUSTRIES, LLC; ASHLEY FURNITURE TRADING COMPANY; WANEK FURNITURE CO., LTD.; MILLENNIUM FURNITURE CO., LTD.; AND COMFORT BEDDING COMPANY LIMITED,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant,<br><br>and<br><br>**BROOKLYN BEDDING, LLC; CORSICANA MATTRESS COMPANY; ELITE COMFORT SOLUTIONS; FXI, INC.; INNOCOR, INC.; KOLCRAFT ENTERPRISES INC.; LEGGETT & PLATT, INCORPORATED; INTERNATIONAL BROTHERHOOD OF TEAMSTERS; AND UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO,**<br><br>Defendant-Intervenors. | **Before: Timothy M. Reif, Judge**<br><br>**Court No. 21-00283** |

## <u>OPINION</u>

[Sustaining Commerce's final remand redetermination and relevant portions of its final determination in the antidumping duty investigation and order on mattresses from the Socialist Republic of Vietnam.]

Dated: December 20, 2024

Kristin H. Mowry and Jeffrey S. Grimson, Mowry & Grimson, PLLC, of Washington, D.C., argued for plaintiffs Ashley Furniture Industries, LLC; Ashley Furniture Trading Company; Wanek Furniture Co., Ltd.; Millennium Furniture Co., Ltd.; and Comfort Bedding Company Limited. With them on the briefs were Jill A. Cramer, Sarah M. Wyss and Jacob M. Reiskin.

Kara M. Westercamp, Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for defendant United States. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director and L. Misha Preheim, Assistant Director. Of counsel was Vania Y. Wang, Senior Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Yohai Baisburd and Chase J. Dunn, Cassidy Levy Kent (USA) LLP, of Washington, D.C., argued for defendant-intervenors Brooklyn Bedding, LLC; Corsicana Mattress Company; Elite Comfort Solutions; FXI, Inc.; Innocor, Inc.; Kolcraft Enterprises Inc.; Leggett & Platt, Incorporated; International Brotherhood of Teamsters; and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO. With them on the briefs was Nicole Brunda.

\* \* \*

Reif, Judge: Before the court is the remand redetermination of the U.S.

Department of Commerce ("Commerce") issued pursuant to the Court's order in *Ashley*

*Furniture Indus.*, *LLC v. United States* ("*Ashley Furniture I*," or the "Remand Order"), 46

CIT __, 607 F. Supp. 3d 1210 (2022). *See* Final Results of Redetermination Pursuant

to Court Remand ("Remand Results"), ECF No. 73-1.

In *Ashley Furniture I*, the Court sustained in part and remanded in part

Commerce's final determination in its antidumping duty ("AD") investigation and order

on mattresses from the Socialist Republic of Vietnam ("Vietnam"). 46 CIT at __, 607 F.

Supp. 3d at 1245; *see Mattresses from the Socialist Republic of Vietnam: Final*

*Affirmative Determination of Sales at Less than Fair Value* ("*Final Determination*"), 86

Fed. Reg. 15,889 (Dep't of Commerce Mar. 25, 2021) and accompanying Issues and

Decision Memorandum ("IDM") (Dep't of Commerce Mar. 18, 2021); *Mattresses from*

*the Socialist Republic of Vietnam: Preliminary Affirmative Determination of Sales at Less than Fair Value, Postponement of Final Determination, and Extension of Provisional Measures* ("*Preliminary Determination*"), 85 Fed. Reg. 69,591 (Dep't of Commerce Nov. 3, 2020) and accompanying Preliminary Decision Memorandum ("PDM") (Dep't of Commerce Oct. 27, 2020); *Mattresses from Cambodia, Indonesia, Malaysia, Serbia, Thailand, the Republic of Turkey, and the Socialist Republic of Vietnam: Antidumping Duty Orders and Amended Final Affirmative Antidumping Determination for Cambodia*, 86 Fed. Reg. 26,460 (Dep't of Commerce May 14, 2021).

The Court remanded Commerce's selection of the financial statements of Emirates Sleep Systems Private Limited ("ES") to calculate surrogate financial ratios in the AD investigation. *Ashley Furniture I*, 46 CIT at __, 607 F. Supp. 3d at 1233. In addition, the Court stated that it would "reserve examination" of plaintiffs' claim regarding the remaining surrogate value selection criteria and Commerce's use of the Cohen's *d* test until after Commerce issued the Remand Results. *Id.* at __, 607 F. Supp. 3d at 1233, 1244.

On remand, Commerce provided explanation and analysis for its selection of the ES financial statements to calculate surrogate financial ratios. *See* Remand Results. Commerce also provided explanation and analysis for its decision to reject the financial statements of Sheela Foam Limited ("SF"). *See id.* at 22-25. Commerce on remand did not address the remaining surrogate value selection criteria or its use of the Cohen's *d* test. *See id.*

Ashley Furniture Industries, LLC ("AFI"), Ashley Furniture Trading Company ("AFTC"), Wanek Furniture Co., Ltd. ("Wanek"), Millennium Furniture Co., Ltd.

("Millennium") and Comfort Bedding Company Limited ("Comfort Bedding") (collectively, the "Ashley Respondents," or "plaintiffs") challenge certain aspects of the Remand Results.

Defendant United States and Brooklyn Bedding, LLC, Corsicana Mattress Company, Elite Comfort Solutions, FXI, Inc., Innocor, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters and United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO (collectively, "petitioners," or "defendant-intervenors") support the Remand Results.

For the reasons discussed below, the court sustains the Remand Results and the relevant portions of the *Final Determination*.

## BACKGROUND

The court presumes familiarity with the facts as set out in *Ashley Furniture I* and recounts only those facts relevant to the issues before the court on remand.

On November 28, 2022, the Court sustained in part and remanded in part the *Final Determination*.  *See Ashley Furniture I*, 46 CIT at __, 607 F. Supp. 3d at 1245. The Court ordered Commerce on remand to explain further or reconsider its selection of the ES financial statements to calculate surrogate financial ratios in the AD investigation.  *See id.*

The Court held that a remand was required for Commerce to explain further or reconsider: (1) its conclusions that the ES financial statements were complete and publicly available; and (2) its selection of the ES financial statements and rejection of the SF financial statements.  *Id.* at 1227.

Moreover, the Court concluded that it would reserve examination of the remaining surrogate value selection criteria — i.e., (1) the non-contemporaneity of the ES financial statements; (2) whether the ES financial statements were representative of the business operations of Wanek, Millennium and Comfort Bedding; and (3) whether the ES financial statements contained evidence of the receipt of countervailable subsidies — until after Commerce published the Remand Results. *Id.* at 1233. The Court explained that "[i]t is possible that Commerce's reconsideration of whether ES' financial statements were complete and publicly available will lead Commerce to reevaluate the remaining selection criteria." *Id.* The Court also stated that it would "reserve examination" of plaintiffs' claim regarding Commerce's use of the Cohen's *d* test in calculating AD margins in the instant case "until Commerce reconsiders, consistent with this decision, the Final Determination," as "[i]t is possible that Commerce will reconsider on remand its use of the Cohen's *d* test." *Id.* at 1244.

On January 4, 2023, Commerce reopened the record and issued a supplemental questionnaire to the petitioners in which Commerce requested "further explanation of the source and process by which [the petitioners] retrieved [ES'] financial statements and how this process, as well as the financial statements themselves, constituted publicly available information." Remand Results at 3.

On January 11, 2023, the petitioners filed their response to Commerce's supplemental questionnaire. *Id.*; *see* Letter on Behalf of Pet'rs to Dep't of Commerce re: Mattress Pet'rs' Resp. Commerce's Section D Suppl. Questionnaire (Jan. 11, 2023), PRR 2, JA Tab 6.

On January 18, 2023, the Ashley Respondents filed their rebuttal comments to the petitioners' response. *See* Letter on Behalf of Ashley Respondents to Dep't of Commerce re: Rebuttal Comments to Pet'rs' Section D Suppl. Questionnaire Resp. at 5-6 (Jan. 18, 2023) ("Ashley Rebuttal 2023"), PRR 3, JA Tab 7.

On January 31, 2023, Commerce published the draft remand results. *See* Remand Results at 4.

On February 7, 2023, the Ashley Respondents and the petitioners provided comments on Commerce's draft remand results. *See* Letter on Behalf of Ashley Respondents to Dep't of Commerce re: Comments on Draft Results of Redetermination Pursuant to Ct. Remand (Feb. 7, 2023), PRR 9, JA Tab 9; Letter on Behalf of Mattress Pet'rs to Dep't of Commerce re: Mattress Pet'rs' Comments on Commerce's Draft Results of Redetermination Pursuant to Ct. Remand (Feb. 7, 2023), PRR 10, JA Tab 10.

On February 23, 2023, Commerce published the Remand Results. *See* Remand Results.

On March 1, 2023, the court granted defendant's consent motion to correct the remand cover letter. Ct's Order Granting Def.'s Consent Mot. to Correct Errata, ECF No. 76.

On March 27, 2023, plaintiffs filed comments in opposition to the Remand Results. *See* Pls. AFI, AFTC, Wanek, Millennium and Comfort Bedding Comments on Final Remand Redetermination ("Pls. Br."), ECF No. 80.

On April 26, 2023, defendant-intervenors filed comments in support of the

Remand Results.  *See* Mattress Pet'rs' Comments Supp. Remand Redetermination

("Def.-Intervenors Br."), ECF No. 84.

On April 26, 2023, the court granted defendant's motion for an extension of time

for defendant and defendant-intervenors to file their responses in support of the

Remand Results.  Ct.'s Order Granting Def.'s Mot. Extension of Time, ECF No. 85.

On April 28, 2023, defendant filed comments in support of Commerce's Remand

Results.  *See* Def.'s Resp. to Pls.' Comments on Dep't of Commerce's Remand

Redetermination ("Def. Br."), ECF No. 86.

On January 18, 2024, the court heard oral argument.  *See* Oral Arg. Tr., ECF No.

97.

## JURISDICTION AND STANDARD OF REVIEW

The court exercises jurisdiction pursuant to 28 U.S.C. § 1581(c).  Plaintiffs bring

this action pursuant to sections 516A(a)(2)(A)(i)(II) and (a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (a)(2)(B)(iii) (2018).[1]

On remand, the Court will sustain Commerce's determinations "if they are in

accordance with the remand order, are supported by substantial evidence, and are

otherwise in accordance with law."  *MacLean-Fogg Co. v. United States*, 39 CIT __, ___,

100 F. Supp. 3d 1349, 1355 (2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see Prime*

*Time Com. LLC v. United States*, 45 CIT __, ___, 495 F. Supp. 3d 1308, 1313 (2021)

("The results of a redetermination pursuant to court remand are also reviewed 'for

---

[1] References to the U.S. Code are to the 2018 edition.  Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code.

compliance with the court's remand order.'") (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT 189, 190, 968 F. Supp. 2d 1255, 1259 (2014)), *aff'd*, No. 2021-1783, 2022 WL 2313968 (Fed. Cir. June 28, 2022); *see also Jiangsu Zhongji Lamination Materials Co., (HK) v. United States*, 44 CIT __, __, 435 F. Supp. 3d 1273, 1276 (2020).

Substantial evidence constitutes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," but it requires "more than a mere scintilla." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). Moreover, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 488.

For a reviewing court to "fulfill [its] obligation" to determine whether a determination of Commerce is supported by substantial evidence and in accordance with law, Commerce is required to "examine the record and articulate a satisfactory explanation for its action." *CS Wind Viet. Co. v. United States*, 832 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).

Further, "the Court will not disturb an agency determination if its factual findings are reasonable and supported by the record as a whole, even if there is some evidence that detracts from the agency's conclusion." *Shandong Huarong Gen. Corp. v. United States*, 25 CIT 834, 837, 159 F. Supp. 2d 714, 718 (2001) (citing *Heveafil Sdn. Bhd. v. United States*, 25 CIT 147, 149 (2001)), *aff'd sub nom. Shandong Huarong Gen. Grp. Corp. v. United States*, 60 F. App'x 797 (Fed. Cir. 2003). "[T]he possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative

agency's finding from being supported by substantial evidence." *Altx, Inc. v. United*

*States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (quoting *Matsushita Elec. Indus. Co. v.*

*United States*, 750 F.2d 927, 933 (Fed. Cir. 1984)).

      In addition, "an agency's action must be upheld, if at all, on the basis articulated

by the agency itself." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.*

*Ins.*, 463 U.S. 29, 50 (1983) (citing *Burlington Truck Lines, Inc. v. United States*, 371

U.S. 156, 168 (1962); *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Am. Textile*

*Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 539 (1981)).

      However, the court will "uphold a decision of less than ideal clarity if the agency's

path may reasonably be discerned." *State Farm*, 463 U.S. at 43 (quoting *Bowman*

*Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)); *see also NMB*

*Sing. Ltd. v. United States,* 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("Commerce must

explain the basis for its decisions; while its explanations do not have to be perfect, the

path of Commerce's decision must be reasonably discernable to a reviewing court.").

      Finally, "when a party properly raises an argument before an agency, that agency

is required to address the argument in its final decision." *Fine Furniture (Shanghai) Ltd.*

*v. United States*, 40 CIT __, __, 182 F. Supp. 3d 1350, 1371 (2016) (citing *SKF USA*

*Inc. v. United States*, 630 F.3d 1365, 1374 (Fed. Cir. 2011)).

## DISCUSSION

      The court addresses first whether Commerce's selection of the ES financial

statements to calculate surrogate financial ratios is supported by substantial evidence

and in compliance with the Remand Order.  The court then addresses plaintiffs' claims

regarding Commerce's remaining surrogate valuation criteria and Commerce's use of the Cohen's *d* test.

## I.   Commerce's selection of the ES financial statements to calculate surrogate financial ratios

### A.   Background

In the *Final Determination*, Commerce determined to select the ES financial statements to calculate surrogate financial ratios for respondents.  IDM at cmt. 2; Remand Results at 2-3.

The Court concluded in *Ashley Furniture I* that "a remand is required for Commerce to explain further or reconsider its conclusions that ES' financial statements were: (1) complete and (2) publicly available."  46 CIT at __, 607 F. Supp. 3d at 1227.

On remand, Commerce "continued to determine that [ES'] 2018-2019 audited financial statements are complete and publicly available, and . . . continued to use [ES'] 2018-2019 audited financial statements to derive surrogate financial ratios."  Remand Results at 2.  Commerce also continued to reject the SF financial statements.  *See id.* at 22-25.

### B.   Legal framework

19 U.S.C. § 1677b(c)(1) provides that Commerce "shall determine the normal value of the subject merchandise" in an AD investigation that involves a non-market economy ("NME") country "on the basis of the value of the factors of production utilized in producing the merchandise and to which shall be added an amount for general expenses and profit plus the cost of containers, coverings, and other expenses."  *See Juancheng Kangtai Chem. Co. v. United States*, Slip Op. 15-93, 2015 WL 4999476, at *2 (CIT Aug. 21, 2015).

In administrative proceedings that involve an NME country such as Vietnam, Commerce calculates the "normal value" of the subject merchandise by selecting surrogate data from one or several market economy countries that Commerce determines constitute the "best available information" in the record.  19 U.S.C. § 1677b(c)(1); *Heze Huayi Chem. Co. v. United States*, 45 CIT __, __, 532 F. Supp. 3d 1301, 1309-10 (2021).  The "best available information" standard involves "a comparison of the competing data sources" in the record.  *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1367 (Fed. Cir. 2019).

19 U.S.C. § 1677b(c)(1) does not define "best available information," which means that Commerce has "broad discretion" to evaluate information on the record. *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1341 (Fed. Cir. 2011).  In determining the "best available information" on the record, Commerce selects, "to the extent practicable," data that meet Commerce's surrogate value selection criteria — e.g., data that are complete, publicly available, "product-specific" and "contemporaneous with the period of [investigation]."  *Nantong Uniphos Chems. Co. v. United States*, 43 CIT __, __, 415 F. Supp. 3d 1345, 1353-54 (2019) (alteration in original) (quoting *Qingdao Sea-Line Trading Co. v. United States*, 766 F.3d 1378, 1386 (Fed. Cir. 2014)); *see CP Kelco US, Inc. v. United States*, Slip Op. 16-36, 2016 WL 1403657, at *3 (CIT Apr. 8, 2016).

When reviewing a determination by Commerce, the "court's duty is 'not to evaluate whether the information Commerce used was the best available, but rather whether a *reasonable mind* could conclude that Commerce chose the best available information.'"  *Zhejiang DunAn Hetian Metal*, 652 F.3d at 1341 (emphasis supplied)

(quoting *Goldlink Indus. Co. v. United States*, 30 CIT 616, 619, 431 F. Supp. 2d 1323, 1327 (2006)).

"There is no hierarchy for applying the surrogate value selection criteria." *Carbon Activated Tianjin Co. v. United States*, 46 CIT __, __, 586 F. Supp. 3d 1360, 1366 (2022) (citing *United Steel & Fasteners, Inc. v. United States*, 44 CIT __, __, 469 F. Supp. 3d 1390, 1398-99 (2020)); *Hangzhou Spring Washer Co. v. United States*, 29 CIT 657, 672, 387 F. Supp. 2d 1236, 1250-51 (2005). Moreover, the weight "accorded to a factor varies depending on the facts of each case." *Xiamen Int'l Trade & Indus. Co. v. United States*, 37 CIT 1724, 1728, 953 F. Supp. 2d 1307, 1313 (2013).

In an AD investigation involving an NME country, Commerce calculates the "normal value" for factory overhead, selling, general and administrative expenses and profit with reference to "financial ratios derived from financial statements of producers of comparable merchandise in the surrogate country." *Changzhou Trina Solar Energy Co. v. United States*, 44 CIT __, __, 450 F. Supp. 3d 1301, 1314-15 (2020) (quoting *Ad Hoc Shrimp Trade Action Comm. v. United States*, 618 F.3d 1316, 1319-20 (Fed. Cir. 2010)).

"When presented with multiple imperfect potential" financial statements, Commerce is required to "faithfully compare the strengths and weaknesses of each before deciding which to use." *CP Kelco US, Inc. v. United States*, Slip Op. 15-27, 2015 WL 1544714, at *7 (CIT Mar. 31, 2015) (citing *Blue Field (Sichuan) Food Indus. Co. v. United States*, 37 CIT 1619, 1635-40, 949 F. Supp. 2d 1311, 1328-31 (2013)).

**C.    Whether the ES financial statements were complete**

The court concludes that Commerce explained adequately its determination that the ES financial statements were complete.

In *Ashley Furniture I*, the Court held that "Commerce did not explain adequately its conclusion that ES' financial statements were complete within the meaning of Commerce's surrogate data selection practice." 46 CIT at __, 607 F. Supp. 3d at 1227. In particular, Commerce failed to explain adequately its determination that the missing Annexure 5 of the ES financial statements "did not contain information related to ES' potential receipt of subsidies that would have distorted Commerce's surrogate financial ratio calculations." *Id.* at __, 607 F. Supp. 3d at 1230.

Commerce on remand continued to determine that the ES financial statements were complete. *See* Remand Results at 5-8.

Plaintiffs present four arguments to support their position that Commerce's determination that the ES financial statements were complete is not supported by substantial evidence. *See* Pls. Br. at 3-9.

**1.    Evidence of potentially countervailable subsidies**

Plaintiffs' first argument is that "Commerce cannot reasonably conclude that [ES'] financial statements do not contain any receipt of countervailable subsidies because Annexure 5 remains missing from the record." *Id.* at 4. Plaintiffs argue that Commerce's determination that Annexure 5 "cannot categorically contain any evidence of potentially countervailable subsidies received by [ES]" is speculative. *Id.* (quoting Remand Results at 6).

Note 13 of the ES financial statement reads "[b]alances with government authorities (Refer Annexure - 5)."  Letter on Behalf of Pet'rs to Dep't of Commerce re: Pet'rs' Surrogate Values Submission (July 30, 2020) ("Pet'rs' SV Comments") at Ex. 11, PR 276-277, JA Tab 1.

On remand, Commerce maintained that "the balance sheet clearly identifies Note 13 . . . as an asset, [and that] any loans or advances contained therein must be *from* [ES] *to* government authorities, as loans given are classified as assets and loans received are classified as liabilities."  Remand Results at 6.  Commerce explained that Annexure 5 "could not potentially demonstrate receipt of a countervailable subsidy because Note 13, and thereby Annexure 5, pertain to loans or advances given, not received."  *Id.*  Commerce explained further that "Annexure 5 does not detail receipt of anything from government authorities; therefore, no potential subsidization would be revealed by the inclusion of Annexure 5 on the record."  *Id.*

Commerce's explanation that the items in Note 13, and thereby Annexure 5, were loans from ES to the government and not the other way around is adequate.  *See id.*

Plaintiffs object that this Court rejected previously Commerce's explanation with respect to Note 13 in *Best Mattresses Int'l Co. v. United States*, 47 CIT __, 622 F. Supp. 3d 1347 (2023).  Pls. Br. at 5.

*Best Mattresses* is unavailing.  In that case, importers challenged the same *Final Determination* at issue in *Ashley Furniture I*.  *See Best Mattresses*, 47 CIT at _, 622 F. Supp. 3d at 1356-57.  The *Best Mattresses* Court held that "Commerce's conclusion

that the [ES] statements are complete is . . . unsupported by substantial evidence." *Id.*

at __, 622 F. Supp. 3d at 1396.

Specifically, the *Best Mattresses* Court concluded that "Commerce erred in

summarily stating that any asset plausibly qualifying as a '[b]alance with government

authorities' cannot be an indicator of government subsidies." *Id.* (alteration in original).

The Court reasoned that if, for example, "Annexure 5 revealed that [ES] had an Indian

tax credit receivable on its books, that would potentially be evidence of a 'financial

contribution' required to establish the existence of a countervailable subsidy." *Id.* The

Court explained that "[t]he missing annexure may have deprived Commerce of key

information regarding the viability of [ES'] financial statements — specifically, the

existence of government subsidies recorded as assets — and Commerce does not

appear to dispute that such government subsidies would impact the profit and selling

expense calculations." *Id.*

However, Commerce on remand in the instant case explained that "any

balance(s) listed in Annexure 5 would reflect the loan principal, not any conferred

benefit." Remand Results at 16. Commerce noted that a financial contribution of that

kind would appear elsewhere on a financial statement. *Id.* For that reason,

Commerce's explanation on remand is adequate and is factually distinct from the *Final

Determination* explanation rejected in *Best Mattresses*.[2]

---

[2] The court notes that Commerce on remand in *Best Mattresses* reconsidered and
determined that the ES financial statements were "incomplete." *Best Mattresses Int'l
Co. v. United States* ("*Best Mattresses II*"), 48 CIT __, __, 703 F. Supp. 3d 1382, 1387
(2024). The court has before it a different record; further, the remand results in the
instant case preceded those in *Best Mattresses II*. *See* Remand Results (dated
February 23, 2023); *Best Mattresses II*, 48 CIT at __, 703 F. Supp. 3d at 1386
("Commerce filed the *Remand Redetermination* with the court on July 17, 2023.").

### 2. The auditor's note

Plaintiffs' second argument is that "Commerce erred in finding that [ES] may have provided loans or advances to the government authorities" during the financial year ending on March 31, 2019.  Pls. Br. at 6.  Plaintiffs allege that "the auditor of [ES'] financial statements as well as information provided by the company in the Annexure to the Independent Auditor's Report expressly indicate that [ES] 'has not granted any loans or provided any guarantees or given any security' to any companies, firms, or other parties during the financial year ending on March 31, 2019."  *Id.* (quoting Pet'rs' SV Comments at Ex. 11).

Commerce does not address plaintiffs' argument on remand.  *See* Remand Results.  Even so, plaintiffs' argument regarding the auditor's note is precluded.  Plaintiffs failed to raise this argument in the remand proceedings.  *See id.*; *see also* Letter on Behalf of Ashley Respondents to Dep't of Commerce re: Comments on Draft Results of Redetermination Pursuant to Ct. Remand (Feb. 7, 2023), PRR 9, JA Tab 9.

"[T]he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d); 19 C.F.R. § 351.309(c)(2) (explaining that "[t]he case brief must present all arguments that continue in the submitter's view to be relevant to the Secretary's final determination or final results"); *see Mittal Steel Point Lisas Ltd. v. United States*, 548 F.3d 1375, 1383-84 (Fed. Cir. 2008) (holding that party failed to exhaust administrative remedies by not raising an issue in its comments on the draft remand results); *Taian Ziyang Food Co. v. United States*, 37 CIT 947, 963, 918 F. Supp. 2d 1345, 1361 (2013) ("The prescribed avenue

for challenging remand results requires that a party first file comments on the draft results at the administrative level, setting forth the party's objections.").

"The requirement that invocation of exhaustion be 'appropriate,' however, requires that it serve some practical purpose when applied.  Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness."  *Itochu Bldg. Prods. v. United States*, 733 F.3d 1140, 1145 (Fed. Cir. 2013).

The exhaustion requirement "can protect [Commerce's] interest in being the initial decisionmaker in implementing the statutes defining its tasks."  *Id.*  Moreover, the requirement "can serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving [Commerce] a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution."  *Id.*

Here, the invocation of exhaustion is appropriate to "protect administrative agency authority and promote judicial efficiency."  *Id.*  By failing to raise the argument regarding the auditor's note in the remand proceeding, plaintiffs denied Commerce the opportunity to be the "initial decisionmaker" with respect to that issue.  *Id.*  Further, it would be inappropriate for the court to respond to an argument that Commerce did not have the opportunity to consider on remand.  *Id.*

Plaintiffs have not demonstrated that the requirement of exhaustion would be inappropriate here.[3]  For the above reasons, plaintiffs' argument concerning the auditor's note is precluded.

### 3.    The financial ratio calculations

Plaintiffs' third argument is that "Commerce improperly determined that the amounts listed under Note 13(b) of [ES'] financial statements 'have no impact on [Commerce's] financial ratio calculation.'"  Pls. Br. at 7 (quoting Remand Results at 7). Plaintiffs object to Commerce's explanation that the missing information "is not considered in the 'surrogate overhead, selling, general, and administrative . . . expenses, and profit ratio[] calculations.'"  Id. (quoting Remand Results at 7).

On remand, Commerce determined that "because Note 13 pertains to loans and advances from [ES] to other entities not affiliated with [ES], any quantities enumerated therein have no impact on our financial ratio calculations."  Remand Results at 7. Commerce explained that "[w]hen calculating the surrogate overhead, selling, general, and administrative (SG&A) expenses, and profit ratios, we look to the income statement to derive a total of materials, labor, and energy, as well as total overhead expenses, SG&A expenses, and reported profit."  Id.

Commerce explained further that "Current Assets, as Note 13 is classified, are not considered in any of the[se] . . . calculations."  Id.  Moreover, "[c]urrent assets are not classified as revenue, and none of the [enumerated] revenue categories evince

---

[3] Courts have recognized "several recurring circumstances" in which institutional interests do not justify the invocation of exhaustion.  Itochu Bldg. Prods. v. United States, 733 F.3d 1140, 1146 (Fed. Cir. 2013) (explaining that the requirement of exhaustion may be inappropriate where there is, for example, futility in raising the issue before the agency or a pure question of law).

receipt of subsidies from the government." *Id.* (citing Pet'rs' SV Comments at Ex. 11).

Commerce concluded that "[t]he magnitude of [ES'] loans and advances it lent to

government authorities does not factor into the company's revenue, profit, or cost of

manufacturing, and is thereby immaterial to our calculation of surrogate overhead,

SG&A, and profit ratios." *Id.* at 7-8.

Plaintiffs argue that "the Court has previously rejected Commerce's decision to

use financial statements that were missing certain information even though Commerce

stated that the information has no bearing on its surrogate values . . . calculation." Pls.

Br. at 7 (citing *Dongguan Sunrise Furniture Co. v. United States*, 36 CIT 860, 886, 865

F. Supp. 2d 1216, 1242 (2012)). Plaintiffs assert that in *Dongguan Sunrise*, the Court

determined that Commerce did not explain adequately its decision to "use[] a surrogate

financial statement that did not include a line item for taxes." *Id.* (citing *Dongguan

Sunrise*, 36 CIT at 886, 865 F. Supp. 2d at 1242).

The *Dongguan Sunrise* Court determined that "[a]lthough Commerce does not

use taxes directly when calculating surrogate values, Commerce sometimes relies on

notes to the tax line to determine whether the entity received disqualifying subsidies."

*Dongguan Sunrise*, 36 CIT at 886, 865 F. Supp. 2d at 1242.

However, plaintiffs' reliance on *Dongguan Sunrise* is not availing. As discussed

above, Commerce on remand explained adequately its determination that Annexure 5

"cannot categorically contain any evidence of potentially countervailable subsidies

received by [ES] from the government." *See supra* Section I.C.1; Remand Results at 6-

7, 15-17. Accordingly, Commerce's explanation with respect to the financial ratio

calculations is accurate.

### 4.    The size of the amount listed under Note 13

Plaintiffs' fourth argument is that "contrary to the Court's direction, Commerce failed to explain the significance of the size of the amount listed [by ES] under '[b]alances with government authorities' to the surrogate financial ratios calculation." Pls. Br. at 8.  Plaintiffs explain that "Commerce has no insight into the nature of the amounts contained in Note 13, and any attempts to downplay the potential distortions of this amount are purely speculative."  *Id.* at 9.

In *Ashley Furniture I*, the Court concluded that Commerce did not address plaintiffs' arguments concerning the size of the balance associated with the line item under Note 13 associated with Annexure 5 ("Balances with government authorities") in concluding that this item was not distortive.  *See* 46 CIT at ___, 607 F. Supp. 3d at 1231. The Court noted that "[b]ased on record evidence, this balance amounted to more than 12% of ES' revenue."  *Id.*

On remand, Commerce acknowledged that ES "provides a large principal of loans/advances to government authorities," but explained that "the relevant size of income earned on sales to, or interest income received from, government authorities is not a factor that Commerce considers as part of its analysis of surrogate financial statements."  Remand Results at 18

Commerce maintained that "[b]ecause the record contains adequate evidence to reasonably conclude that Annexure 5 could not contain evidence of countervailable subsidies, it is unnecessary to hypothesize as to the potential distortion of a countervailable subsidy contained therein."  *Id.*  Commerce noted that "parties have not provided evidence of where Commerce has found a loan or advance by the respondent

to the government to be a countervailable subsidy program" and that "the parties have

not explained how a loan or advance provided to a government would constitute a

financial contribution or benefit as defined within sections 771(5)(D) and (E) of the Act,

respectively." *Id.* at 24.

Commerce's explanation addresses adequately plaintiffs' arguments concerning

the size of the balance associated with Note 13.  Commerce's discussion of the nature

of the amounts contained in Note 13 demonstrated that it was reasonable for

Commerce to conclude that distortion is unlikely.  *See id.* at 6-7, 18.

In sum, Commerce explained adequately its determination that the ES financial

statements were complete.  Accordingly, Commerce's explanation on remand complies

with the Remand Order and is supported by substantial evidence.

> **D.      Whether ES' financial statements were publicly available**

The court concludes that Commerce explained adequately its conclusion that the

ES financial statements were publicly available.  *See id.* at 8-14, 19-21.

In *Ashley Furniture I*, the Court concluded that Commerce did not explain

adequately its "determination that ES' financial statements were . . . publicly available

with respect to Commerce's selection of financial statements to calculate surrogate

financial ratios" because Commerce failed to address: (1) "whether the version of the

statements that was available in the subscription database was complete"; and (2) "the

record evidence to which the Ashley Respondents referred with respect to their alleged

efforts to obtain ES' financial statements."  46 CIT at __, 607 F. Supp. 3d at 1233, 1245.

The Court remanded for further explanation or reconsideration.  *Id.* at __, 607 F. Supp.

3d at 1245.

Plaintiffs argue that Commerce's conclusion on remand that ES' statements were "publicly available" on two websites, the Indian Ministry of Corporate Affairs ("MCA") website and the Zauba Corp. website, is "speculative and unsupported by substantial evidence." Pls. Br. at 9-10.

### 1. Completeness

With respect to the first remand instruction, the court has concluded above that the ES financial statements were complete for the purposes of the surrogate value calculation. *See supra* Section I.C. Moreover, plaintiffs do not argue that the version of the statements available on the two websites differed from the version before the court. *See* Pls. Br. Accordingly, Commerce complied with the Remand Order on this point.

### 2. Evidence of efforts

"[T]he bar that Commerce has reasonably set for public availability" is that "other interested parties [must] be able to independently access the information." *Yantai Xinke Steel Structure Co. v. United States,* 38 CIT 478, 497 (2014).

Plaintiffs argue that "not all members of the public are able to access and download [ES'] financial statements from the MCA website" because "a user is required to supply an 'Income Tax PAN' . . . which is an Indian taxpayer registration number issued to an individual, company or firm." Pls. Br. at 10.

Plaintiffs also argue that the fact that the ES financial statements "were obtained by an Indian consultant[] further establish[es] that the financial statements are not publicly available but instead only a person or firm with PAN [sic] are [sic] able to obtain access through the MCA website." *Id.*

On remand, Commerce "reopened the record and issued a supplemental questionnaire, requesting the petitioners demonstrate how they obtained [ES'] financial statements, including narrative explanations and screenshots of each step in the process, as well as an explanation of how such a retrieval method constitutes publicly available information." Remand Results at 8. Commerce explained that "the petitioners responded by providing explanations and screenshot evidence for its [sic] retrieval of [ES'] financial statements from two separate sources, [MCA] and Zauba Corp." Id.

After reviewing the step-by-step instructions, Commerce determined reasonably that "in this case, all interested parties are capable of obtaining the financial statements and commenting on reliability and relevance of the information." Id. at 9. Commerce explained that "[o]nce an account is created at either website, a user may retrieve and download [ES'] financial statements from various years." Id. at 10.

Commerce concluded that "because the public can access th[e] information with or without a PAN, Commerce considers the MCA website to be public." Id. at 10. Commerce explained that:

> When applying for a new user account, an applicant must first select the user category of "Registered User" or "Business User," then select a "User Role," and finally enter an "Income Tax PAN." Whether the PAN is mandatory depends on the selected category, i.e., an asterisk (*) appears next to the "Income Tax PAN" field when the "Business User" category is selected but no asterisk appears next to the "Income Tax PAN" field when the "Registered User" category is selected. As the website notes, "[a]ll fields marked in * are to be mandatorily filled." Because the PAN is not a requirement for registration as a "Registered User," the MCA website is not "only reserved for Indian citizens or residents and not the public," as Ashley claims.

Id. (footnotes omitted).

In addition, Commerce determined reasonably that the ES financial statements "are available, clearly labeled, and ready for download once a user pays a small fee" on the Zauba Corp. website. *Id*. at 11. Commerce addressed the Ashley Respondents' argument in the remand proceeding that the ES financial statements were not downloadable on the Zauba Corp. website because "petitioners incorrectly highlighted" a document that did not contain the ES financial statements. *Id*.; Ashley Rebuttal 2023 at 6-7.

Commerce conceded that "petitioners incorrectly identified the appropriate document," but explained that "[t]wo items below the incorrectly identified document on the list of documents downloaded from Zauba Corp.'s website is a document titled 'Copy of Financial Sta[t]ements duly authenticated as per section 134 (Including Boards report, auditors report and other documents)-16122019' and dated December 16, 2019." Remand Results at 11 (footnote omitted) (second alteration in original).

Further, Commerce noted that the Ashley Respondents were "able to download the incorrectly identified document, demonstrating that [ES'] information is obtainable from Zauba Corp.'s website." *Id.* Commerce explained that because plaintiffs "w[ere] able to . . . download the document incorrectly identified by the petitioners, it is reasonable to conclude that Ashley Group could have just as easily retrieved and downloaded the clearly labeled financial statements also located on the website." *Id*. at 11-12. Commerce determined that "for the foregoing reasons and because '[t]he information on Zauba Corp. is all a matter of public record, is sourced from the official registers, and is from

published government data,' we find that Zauba Corp.'s website is also a publicly available source of information, provided users pay a small fee." *Id.* at 12 (footnote omitted) (quoting Ashley Rebuttal 2023 at 3, Ex. 5).

Commerce also responded to the Ashley Respondents' argument that "the record still lacks evidence that the financial statements were publicly available at the time of the investigation." *Id.* at 13, 20-21. However, the court need not consider this argument here given that plaintiffs abandoned it in their briefing. *See* Pls. Br.

In sum, Commerce explained adequately that the ES financial statements were publicly available because "other interested parties may . . . be able to independently access the information." *Yantai Xinke*, 38 CIT at 497. Accordingly, Commerce's explanation on remand complies with the Remand Order and is supported by substantial evidence.

### E.    Commerce's rejection of the SF financial statements

The court concludes that Commerce explained adequately its rejection of the SF financial statements. *See* Remand Results at 22-25.

In *Ashley Furniture I*, the Court ordered Commerce "on remand to explain further or reconsider its decision . . . to reject SF's statements in view of the deficiencies identified in this decision with respect to ES' statements." 46 CIT at __, 607 F. Supp. 3d at 1245. The Court noted that Commerce on remand was not required "'to choose any particular financial statement or [to] reject' ES' statements" but that "Commerce must . . . fairly weigh the available options and explain its decision in light of its selection criteria,

addressing any shortcomings." *Id.* at __, 607 F. Supp. 3d at 1227 (alteration in original) (quoting *Carbon Activated*, 46 CIT at __, 586 F. Supp. 3d at 1381).

Plaintiffs argue that "Commerce's continued decision on remand to reject [SF's] financial statements as the best available information to calculate the surrogate financial ratios is also unsupported by substantial evidence" because: (1) the ES financial statements "remain incomplete"; and (2) "Commerce's conclusion that [SF] received countervailable subsidies during the period of investigation ("POI") is not supported by the record evidence." Pls. Br. at 11.

The court has already concluded that the ES financial statements were complete for the purposes of the surrogate value calculation. *See supra* Section I.C. With respect to plaintiffs' second argument, the court concludes that Commerce explained adequately that the SF financial statements "clearly evince money received during the POI under identifiable programs that Commerce has previously found to be countervailable." Remand Results at 23.

Plaintiffs argue that "Commerce . . . erred in rejecting [SF's] financial statements because there is no conclusive evidence that [SF's] financial statements reference a specific government assistance program." Pls. Br. at 12.

On remand, Commerce explained that "when financial statements contain a reference to a program or programs that Commerce has previously found to be countervailable, Commerce may consider that the financial ratios derived from that company's financial statements are less representative of the financial experience of the relevant industry than the ratios derived from financial statements of a company that do not contain evidence of subsidization." Remand Results at 22-23 (citing *Certain Steel*

*Nails from the People's Republic of China: Final Results of the First Antidumping Duty Administrative Review* ("*Steel Nails from China*"), 76 Fed. Reg. 16379 (Dep't of Commerce Mar. 23, 2011) and accompanying IDM (Dep't of Commerce Mar. 14, 2011) at 11).

As a result, "Commerce does not rely on financial statements that contain references to programs previously found to be countervailable when there are other sufficiently usable and representative data on the record for purposes of calculating the surrogate financial ratios." *Id.* at 23 (citing *Steel Nails from China* IDM at 11).

Commerce explained that the SF financial statements "clearly evince money received during the POI under identifiable programs that Commerce has previously found to be countervailable." *Id.* Commerce did not state explicitly what these "identifiable programs" were.[4] *See id.* However, defendant explains that Note 31 ("Revenue from Operations") of the SF financial statements showed a "duty drawback" and Note 32 ("Other Income") showed an "[i]nvestment [s]ubsidy received." Def. Br. at 17.

Commerce cited to the countervailing duty ("CVD") investigation of certain quartz surface products from India in which Commerce determined that the duty drawback scheme of the Government of India was a countervailable subsidy. Remand Results at 23 n.130 (citing *Certain Quartz Surface Products from India: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical*

_____

[4] But Commerce did cite to the SF financial statements and two prior proceedings. *See* Remand Results at 23 n.130; Letter on Behalf of Ashley Respondents to Dep't of Commerce re: Surrogate Value Comments (July 30, 2020) ("Ashley Group Letter") at Ex. SV-4, 103, 119-120, 177, PR 278-81, JA Tab 2.

*Circumstances, In Part*, 85 Fed. Reg. 25,398 (Dep't of Commerce May 1, 2020) and accompanying IDM (Dep't of Commerce Apr. 27, 2020) at cmt. 6).

Commerce also cited to "Comment 8" of the IDM for *Circular Welded Carbon-Quality Steel Pipe from India: Final Affirmative Countervailing Duty Determination* ("*Steel Pipe from India*"), 77 Fed. Reg. 64,468 (Dep't of Commerce Oct. 22, 2012) and accompanying IDM (Dep't of Commerce Oct. 15, 2012).  Remand Results at 23 n.130. However, the court notes that the cited IDM does not contain a "Comment 8."  *See Steel Pipe from India* IDM.  Even so, Commerce explained adequately that the SF financial statements showed evidence of "money received during the POI under [an] identifiable program[] that Commerce has previously found to be countervailable," namely the duty drawback.  Remand Results at 23.

Plaintiffs also argue that "there was no specific information in [SF's] financial statements that described the nature of the programs that would meet Commerce's 'specific information' standard" and justify the rejection of the SF financial statements. Pls. Br. at 13.  In determining whether a financial statement includes subsidies, Commerce has developed the following guideposts:

> (1) If a financial statement contains a reference to a specific subsidy program found to be countervailable in a formal CVD determination, Commerce will exclude that financial statement from consideration.  (2) If a financial statement contains only a mere mention that a subsidy was received, and for which there is no additional information as to the specific nature of the subsidy, Commerce will not exclude the financial statement from consideration.

*Clearon Corp. v. United States*, 35 CIT 1685, 1688, 800 F. Supp. 2d 1355, 1359 (2011).

Moreover, this Court has recognized that:  "[Commerce's] determination of whether to use the financial statements of a producer that potentially received a

countervailable subsidy cannot be, nor is it intended to be, a full investigation of the

subsidy program in question . . ." *GGB Bearing Tech. (Suzhou) Co. v. United States*, 39

CIT __, __, 279 F. Supp. 3d 1233, 1239 (2017).

Instead, "[Commerce's] practice is to review the financial statements to

determine whether the evidence indicates that the company received a countervailable

subsidy during the relevant period from a program previously investigated by

[Commerce]." *Id.* (quoting *Tapered Roller Bearings and Parts Thereof, Finished and

Unfinished from the People's Republic of China: Final Results of Antidumping Duty New

Shipper Review*, 77 Fed. Reg. 65,668 (Dep't of Commerce Oct. 30, 2012) and

accompanying IDM (Dep't of Commerce Oct. 19, 2012) at 7).

Plaintiffs insist that "there is no specific information as to the nature of the

'investment subsidy' and 'duty drawback subsidy' programs in [SF's] financial

statements that were alleged by Commerce to be countervailable subsidies" and that

"[a] mere mention of 'investment subsidy' and 'duty drawback' does not meet the

'specific information' standard." Pls. Br. at 13 (citing Ashley Group Letter at Ex. SV-4).

However, Commerce explained in the *Final Determination* that "the names of the

programs found in the [SF] financial statements are the same names Commerce

previously found countervailable." IDM at cmt. 2. Commerce noted also that each of

the programs "reflected money received during the POI." *Id.*

The court concludes that the SF financial statements contain a "reference" to the duty drawback scheme, "a specific subsidy program found to be countervailable in a formal CVD determination."  *Clearon Corp.*, 35 CIT at 1688, 800 F. Supp. 2d at 1359.[5]

Plaintiffs argue additionally that "there is no evidence on the record that the 'investment subsidy' and 'duty drawback' programs in [SF's] financial statements were distortive."  Pls. Br. at 14.  Plaintiffs note that the amounts corresponding to "investment subsidy" and "duty drawback subsidy" are "*de minimis* amounts" and that it was "unreasonable for Commerce to have rejected [SF's] financial statements due to potential receipt of government subsidies given the miniscule amounts at issue."  *Id.*

On remand, Commerce explained that "although Commerce may have found it appropriate in a past case, it is not Commerce's practice to consider the amount of the benefit received when analyzing surrogate financial statements."  Remand Results at 23.  Commerce cited to *OCTG from Vietnam*, a proceeding in which Commerce rejected a proposed financial statement that reflected a "small" countervailable subsidy amount.  *See Certain Oil Country Tubular Goods from the Socialist Republic of Vietnam: Final Results of Antidumping Duty Administrative Review; 2014-2015* ("*OCTG from Vietnam*"), 82 Fed. Reg. 18,611 (Dep't of Commerce Apr. 20, 2017) and accompanying IDM (Dep't of Commerce Apr. 12, 2017) at 9.  Commerce explained in that proceeding that "[b]ecause the[] financial statements show receipt of subsidies previously found by the Department to be countervailable, we must consider whether there is better information on the record."  *Id.*

---

[5] The court declines to reach the same conclusion with respect to the investment subsidy because Commerce on remand failed to cite properly to a proceeding in which that subsidy was found to be countervailable.  *See* Remand Results at 23.

Here, Commerce weighed the evidence and determined that the ES financial statements constituted the "better information on the record." *Id.*; *see* Remand Results at 22-25.

The court concludes that Commerce explained adequately its rejection of the SF financial statements. Commerce's explanation complies with the Remand Order and is supported by substantial evidence.

 **F. Commerce's remaining selection criteria**

In *Ashley Furniture I,* the Court did not "'consider it necessary . . . to rule on the other grounds' that the parties address with respect to Commerce's selection of financial statements." 46 CIT at __, 607 F. Supp. 3d at 1233 (quoting *Fine Furniture*, 40 CIT at __, 182 F. Supp. 3d at 1361). The Court noted the possibility "that Commerce's reconsideration of whether ES' financial statements were complete and publicly available will lead Commerce to reevaluate the remaining selection criteria in selecting the financial statements with which to calculate surrogate financial ratios." *Id.* The remaining selection criteria are: (1) whether ES' financial statements were contemporaneous with the POI; and (2) "whether ES' financial statements were representative of the business operations of Wanek, Millennium and Comfort Bedding." *Id.*

Commerce has not altered the remaining selection criteria in its Remand Results. *See* Remand Results. Accordingly, the court will rule on the criteria as presented in the *Final Determination*.[6]

---

[6] From this point forward, all citations to docket entries will reflect the joint appendices filed in connection with *Ashley Furniture I*. *See* Confidential Joint Appendix, ECF No. 51; Public Joint Appendix, ECF No. 52.

#### 1.    Contemporaneity of ES' financial statements

The court concludes that Commerce explained adequately its selection of the non-contemporaneous ES financial statements.

In *Ashley Furniture I*, the Court declined to rule on the non-contemporaneity of the ES financial statements and noted the possibility "that Commerce's reconsideration of whether ES' financial statements were complete and publicly available [could] lead Commerce to reevaluate the remaining selection criteria in selecting the financial statements with which to calculate surrogate financial ratios."  46 CIT at __, 607 F. Supp. 3d at 1233.

Plaintiffs argue that "Commerce improperly relied on [ES'] financial statements despite Commerce's acknowledgement that [ES'] financial statements were not contemporaneous with the POI."  Mem. Points and Auths. Supp. R. 56.2 Mot. J. Agency Record of Pls. AFI, AFTC, Wanek, Millennium and Comfort Bedding ("Pls. MJAR Br.") at 13, ECF No. 39-40.

Plaintiffs explain that "Commerce's practice is to calculate surrogate financial ratios based on POI-contemporaneous financial statements" and that "Commerce regularly rejects non-contemporaneous financial statements."  *Id.* at 13-14.  Moreover, plaintiffs argue that "[c]ontemporaneity is a 'yes' or 'no' characteristic and the degree to which the financial statements are stale is of no moment."  Reply Br. Supp. R. 56.2 Mot. J. Agency Record of Pls. AFI, AFTC, Wanek, Millennium and Comfort Bedding ("Pls. MJAR Reply Br.") at 3, ECF No. 49-50.

In the *Final Determination*, Commerce "acknowledge[d] that the [ES] fiscal year does not match the POI."  IDM at 30.  However, Commerce explained that "[i]n choosing

surrogate financial ratios, it is Commerce's practice to use data from [market economy]

surrogate companies based on the 'specificity, contemporaneity, and quality of the

data.'" *Id.* (quoting *Silicon Metal from the People's Republic of China: Final Results and

*Partial Rescission of Antidumping Duty Administrative Review*, 75 Fed. Reg. 1,592

(Dep't of Commerce Jan. 12, 2010) and accompanying IDM (Dep't of Commerce Jan. 5,

2010) at 36).  Commerce added that it will "consider *all* record evidence in its analysis of

the best [surrogate values] to use in its margin calculations."  *Id.* (emphasis supplied).

        Further, it is notable that Commerce has opted previously to select a non-

contemporaneous financial statement over a contemporaneous, flawed financial

statement.  In *QVD Food. Co. v. United States*, the Court sustained Commerce's

selection of financial statements that were non-contemporaneous by six years because

they "contain[ed] more reliable pricing data." 34 CIT 1166, 1169-71, 721 F. Supp. 2d

1311, 1315-18 (2010).  The Court explained that "Commerce was left with a choice

between imperfect alternatives" and "exercised its prerogative to choose the best

available information after applying its selection criteria."  *Id.* at 1173, 721 F. Supp. 2d at

1318; *see Qingdao Sea-Line Trading*, 766 F.3d at 1386-87 (sustaining Commerce's

selection of a non-contemporaneous product data source because its specificity

outweighed its non-contemporaneity); *see also US Magnesium LLC v. United States*, 39

CIT __, __, 72 F. Supp. 3d 1341, 1358 (2015) (concluding that a data source "although

not contemporaneous with the [period of review], . . . was nonetheless the 'best

available information' because it was best approximated" to the production process

under consideration), *aff'd*, 839 F.3d 1023 (Fed. Cir. 2016).

Commerce determined reasonably that the ES financial statements constituted the "best available information" on the record.  19 U.S.C. § 1677b(c)(1).  Commerce acknowledged the non-contemporaneity of the ES financial statements but noted that they "show a profit, are publicly available and show production of subject merchandise." IDM at 31; *see also* PDM at 34.  Commerce noted also that the ES financial statements are only "non-contemporaneous by a single fiscal year."  IDM at 31.  By contrast, Commerce explained that "the only other financial statement on the record, [SF], has evidence of countervailable subsidies."  *Id.* at 30; *see supra* Section I.E.

Accordingly, Commerce's explanation of its decision to use the non-contemporaneous ES financial statements is reasonable and supported by substantial evidence.

> **2.  Whether ES' financial statements were representative of the business operations of Wanek, Millennium and Comfort Bedding**

The court concludes that Commerce determined reasonably that the ES financial statements were representative of the business operations of Wanek, Millennium and Comfort Bedding.

"'[A] surrogate value must be as representative of the situation in the NME country as is feasible,' [but] Commerce need not 'duplicate the exact production experience of the [foreign] manufacturers at the expense of choosing a surrogate value" for that value to constitute the "best available information."  *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (Fed. Cir. 1999) (quoting *Nation Ford Chem. Co. v. United States*, 21 CIT 1371, 1375, 985 F. Supp. 133, 137 (1997)).  Moreover, "[t]he 'best available information' concerning the valuation of a particular factor of production

may constitute information from the surrogate country that is directly analogous to the production experience of the NME producer . . . or it may not." *Id.*

Plaintiffs argue that the ES financial statements were not representative for three reasons. *See* Pls. MJAR Br. at 20-24.

### a.    Difference in size of business operations

Plaintiffs argue first that the ES financial statements were not representative of the business operations of Wanek, Millennium and Comfort Bedding in Vietnam because of the difference in size between the business operations of ES and those of Wanek, Millennium and Comfort Bedding. *Id.* at 20-21. Plaintiffs assert that "[t]he disparity in revenue shows that [ES] is a much smaller company than either [SF] or Wanek, and Commerce should not base the surrogate financial ratios on [ES'] financial statements because they do not represent the actual business size of the Ashley Respondents." *Id.* at 21.

In the *Final Determination*, Commerce explained that its "practice is to disregard the magnitude of a company's revenue when choosing the appropriate surrogate financial statements to calculate ratios." IDM at 31. Commerce cited two prior proceedings in which it stated that its practice is to disregard company size as a basis upon which to determine the representative nature of a company's financial statements, unless specific record evidence indicates otherwise. *Id.* at 31 n.219 (citing *Wooden Bedroom Furniture from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and New Shipper Reviews*, 74 Fed. Reg. 41,374 (Dep't of Commerce Aug. 17, 2009) and accompanying IDM (Dep't of Commerce Aug. 10, 2009) at 39); *Certain Steel Threaded Rod from the People's Republic of China: Final*

*Determination of Sales at Less than Fair Value*, 74 Fed. Reg. 8,907 (Dep't of

Commerce Feb. 27, 2009) and accompanying IDM (Dep't of Commerce Feb. 20, 2009)

at 12 (finding that "without additional record evidence" to suggest that financial

statements are not representative, "the company's size alone is . . . not a sufficient

basis upon which to exclude financial statements from consideration."); *see also*

*Lifestyle Enter., Inc. v. United States*, 35 CIT 158, 176-77, 768 F. Supp. 2d 1286, 1306

(2011) ("Commerce can rely on certain financial surrogate companies' financial

statements even where distortions based on economies of scale exist .......").

Commerce explained that "there is no information that establishes that using

[ES'] financial statements, which show less revenues than Ashley Group, would lead to

distortive financial ratios due to this difference in revenue."  IDM at 31.  Accordingly,

Commerce's determination to not consider company size in its "analysis of the

appropriate financial statements to use for the final determination" was reasonable.  *Id.*

### b.    Difference in nature of business operations

Plaintiffs argue next that the differences in the nature of ES' business operations

and those of Wanek, Millennium and Comfort Bedding render unreasonable

Commerce's selection of the ES financial statements.  Pls. MJAR Br. at 20-22.

Specifically, plaintiffs insist that the business operations of ES focus primarily on retail

"with miniscule manufacturing," whereas the operations of Wanek, Millennium and

Comfort Bedding focus primarily on manufacturing.  *Id.* at 22.

Plaintiffs also allege that ES' registered volume of "import purchases from its

foreign holding company," Dubai Manufacturing Company LLC ("Dubai Manufacturing"),

suggest that ES "is primarily engaged in resale of imported merchandise and retail

rather than manufacturing." *Id.* at 21. In this regard, plaintiffs explain that some of ES'

showroom retail expenses are five times greater than its factory rent, "indicating

significantly greater involvement in retail than production." *Id.* at 20.

In the *Final Determination*, Commerce explained that the ES financial statements

do not "identify the nature of the[] purchases from Dubai Manufacturing" and that

plaintiffs "failed to cite to record evidence showing that import purchases relate to

mattresses purchases [sic] from Dubai Manufacturing." IDM at 32. Accordingly,

Commerce did "not consider[] sundry expenses illustrative with regards to [ES] business

practices." *Id.*

Further, Commerce stated that "Note 1 to the [ES] financial statements explains

that [ES] is involved in the manufacturing of all types and kinds of mattresses." *Id.* at

34. Indeed, Note 1 describes ES as "a manufacturing company basically into the

manufacturing of all types and kinds of mattresses." Pet'rs' SV Comments at Ex. 11.

In view of the foregoing, Commerce determined reasonably that ES is involved in

manufacturing operations.

### c.    Retail activities

Plaintiffs argue also that "Commerce's reliance on [ES] is further discredited"

because "Wanek, Millennium and Comfort Bedding do not own or operate any

showrooms nor engage in any retail activities in Vietnam." Pls. MJAR Br. at 22.

In the *Final Determination*, Commerce maintained that the ES financial

statements were reflective of the Ashley Respondents' business operations because,

like ES, "record evidence demonstrates that Ashley Group in Vietnam does incur

showroom expenses." IDM at 31. Commerce explained that "petitioners provided an

Ashley Furniture HomeStore in Ho Chi Minh City, Vietnam webpage along with its [sic] claim that Ashley HomeStore has at least one showroom in Vietnam." *Id.* Commerce noted that "[t]he webpage has a section called 'About the Store,' in which Ashley HomeStore explains that it has a showroom for customers to visit." *Id.*

Plaintiffs argue that "[u]nrebutted evidence submitted in the earliest stages of the investigation directly contradict [sic] the Petitioner's [sic] false accusation." Pls. MJAR Br. at 22; *see* Pls. MJAR Reply Br. at 8-9. Plaintiffs allege that "[d]espite clear evidence on the record to the contrary, Commerce accepted Petitioners' allegation at face value." Pls. MJAR Br. at 22.

In the original proceeding, petitioners claimed that "Ashley Furniture has at least one showroom in Vietnam and, as noted, also produces mattresses in Vietnam." *See* Other from Cassidy Levy Kent (USA) LLP to Sec'y of Commerce Pertaining to Mattress Pet'rs Suppl. Questionnaire to Petition (Apr. 8, 2020) ("Pet'rs' Suppl. Questionnaire Resp.") at Ex. I-Supp-5, PR 23-24, PJA Tab 3 (footnote omitted).

The Ashley Respondents filed a rebuttal pursuant to 19 C.F.R. § 351.301(c)(1)(v) in which they stated that "[p]etitioners erroneously asserted that Ashley owns Homestore Ho Chi Minh, a licensee store located in Vietnam." *See* Letter from Mowry & Grimson PLLC to Sec'y of Commerce Pertaining to Ashley Resp. to Comments (Apr. 17, 2020) ("Ashley Rebuttal 2020"), PR 41, PJA Tab 4. The Ashley Respondents explained that "Homestore Ho Chi Minh is not owned by Ashely [sic] or any Vietnam factory related to Ashley." *Id.*

Defendant argues that the Ashley Respondents' rebuttal was "unsupported" and notes that the "webpage for Ashley Furniture HomeStore stated, 'Visit your nearest

Ashley HomeStore showroom today.'"  Def.'s Mot. Partially Dismiss and Resp. Pls.' Mot.

J. Agency Record ("Def. MJAR Br.") at 18-19, ECF No. 45-46 (quoting Pet'rs' Suppl.

Questionnaire Resp. at Ex. IX-Supp-9).

At oral argument, defendant explained that "[t]here's a presumption . . . that

Commerce reviews all of the record evidence" and that Commerce explained in the IDM

that it believed that Ashley owned the showroom described on the webpage.  MJAR

Oral Arg. Tr. at 16:12-18, ECF No. 65.

Plaintiffs argued that "the idea that Commerce actually weighed those two facts

is entirely post hoc information from the brief."  *Id.* at 16:19-21.

The court is unable to conclude whether plaintiffs' allegation is true.  Plaintiffs'

rebuttal is not accompanied by factual support of any kind.  Rather, it is a flat assertion

against Commerce's explanation in the IDM.  *See* Ashley Rebuttal 2020.

Even so, the indeterminacy of this issue is not outcome-determinative.

Commerce has otherwise demonstrated that the ES financial statements are reflective

of the business operations of Wanek, Millennium and Comfort Bedding.  *See supra*

Sections I.F.2.a-b; *Shandong Huarong*, 25 CIT at 837, 159 F. Supp. 2d at 718 (2001)

("[T]he Court will not disturb an agency determination if its factual findings are

reasonable and supported by the record as a whole, even if there is some evidence that

detracts from the agency's conclusion."); *Altx*, 370 F.3d at 1116 ("[T]he possibility of

drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's finding from being supported by substantial evidence.").

Even if the SF financial statements *are* more representative of the mix of

business activities in which the Ashley Respondents are involved, Commerce's

conclusion that they are not the "best available information" given their reference to

subsidies that Commerce has found previously to be countervailable is reasonable.

*See supra* Section I.E; 19 U.S.C. § 1677b(c)(1).

Accordingly, Commerce's explanation that the ES financial statements are

representative of the business operations of Wanek, Millennium and Comfort Bedding is

supported by substantial evidence.

## II.    Commerce's use of the Cohen's *d* test

### A.    Background

In the *Preliminary Determination*, Commerce determined that "the differential

pricing analysis used in recent investigations may be instructive for purposes of

examining whether to apply an alternative comparison method in this investigation."

PDM at 25.

Commerce stated that "the differential pricing analysis used in this preliminary

determination examines whether there exists a pattern of export prices for comparable

merchandise that differ significantly among purchasers, regions, or time periods." *Id.* at

25-26.  Commerce explained that "[i]n the first stage of the differential pricing analysis

used here, the 'Cohen's *d* test' is applied." *Id.* at 26.  Commerce determined to apply its

differential pricing analysis despite the objections of the Ashley Respondents.  *See id.* at

27-28.  Commerce's differential pricing analysis was left unchanged in the *Final

Determination*.  *See Final Determination*.

In *Ashley Furniture I*, the Court reserved examination of plaintiffs' claim regarding

Commerce's use of the Cohen's *d* test because of the possibility that Commerce would

reconsider its use on remand.  46 CIT at ___, 607 F. Supp. 3d at 1244.

Commerce on remand did not discuss its use of the Cohen's *d* test, nor do parties refer to it in their comments on the Remand Results. *See* Remand Results*;* Pls. Br.; Def. Br.; Def.-Intervenors Br.  Accordingly, the court will rule on Commerce's use of the Cohen's *d* test as presented in the *Preliminary Determination*.[7]

### B.    Legal framework

After calculating normal value in an AD proceeding, Commerce will then determine the "weighted average dumping margin." *Best Mattresses*, 47 CIT at __, 622 F. Supp. 3d at 1360.  To do so, Commerce "will use the average-to-average method unless the Secretary determines another method is appropriate in a particular case." 19 C.F.R. § 351.414(c)(1).  The average-to-average method "involves a comparison of the weighted average of the normal values with the weighted average of the export prices (and constructed export prices) for comparable merchandise." *Id.* § 351.414(b)(1).

Commerce is authorized to use the average-to-transaction method as an alternative "only if 'there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time,' and if Commerce 'explains why such differences cannot be taken into account' using alternative methods." *Best Mattresses*, 47 CIT at __, 622 F. Supp. 3d at 1361 (quoting 19 U.S.C. § 1677f-1(d)(1)(B)).

---

[7] Nor did Commerce mention its use of the Cohen's *d* test in the final results. *See Final Determination*.  Instead, Commerce affirmed the differential pricing analysis in the Final Analysis Memorandum.  *See* Mem. from Dep't of Commerce to File Pertaining to Ashley Group Final Analysis Mem. (Mar. 28, 2021) ("Final Analysis Memorandum") at 5-6, CR 694, CJA Tab 14.  For that reason, the court will treat Commerce's use of the Cohen's *d* test as unchanged in the final results.

Commerce will conduct a differential pricing analysis to determine whether to use
the average-to-transaction method rather than the average-to-average method. *Id.*;
*Stupp Corp. v. United States*, 5 F.4th 1341, 1346.

Commerce first "segments export sales into subsets based on region,
purchasers, and time periods." *Best Mattresses*, 47 CIT at __, 622 F. Supp. 3d at 1361;
*Differential Pricing Analysis; Request for Comments* ("*Differential Pricing Analysis*"), 79
Fed. Reg. 26,720, 26,722-23 (Dep't of Commerce May 9, 2014). After that, Commerce
applies the Cohen's *d* test, a "generally recognized statistical measure of the extent of
the difference in the means between a test group and a comparison group." *Differential
Pricing Analysis* at 26,722; *see Best Mattresses*, 47 CIT at __, 622 F. Supp. 3d at 1361.

**C.    Analysis**

The court concludes that plaintiffs do not have standing to challenge
Commerce's use of the Cohen's *d* test.[8]

Plaintiffs argue that "Commerce's determination to apply the Cohen's *d* test to
the Ashley Respondents was . . . unreasonable and not in accordance with law." Pls.
MJAR Br. at 47. Specifically, plaintiffs assert that the "results of Commerce's Cohen's *d*
test are unreasonable as applied to the Ashley Respondents' sales data" because
"Commerce's analysis . . . includes data which [sic] violate the assumptions present in

---

[8] The fact that plaintiffs have standing to challenge other aspects of the IDM and the
Remand Results does not mean that plaintiffs also have standing to challenge
Commerce's use of the Cohen's *d* test. "[S]tanding is not dispensed in gross." *Lewis v.
Casey*, 518 U.S. 343, 358 n.6 (1996). "Rather, a plaintiff must demonstrate standing for
each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*,
554 U.S. 724, 734 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006))
(internal quotation marks omitted) (collecting cases).

the Cohen's *d* test, generates incorrect or misleading results, and is thus inappropriate for application to the Ashley Respondents' sales." *Id.* at 44.

In response, defendant raises two arguments. First, defendant argues that plaintiffs do not have standing. Defendant explains that plaintiffs have not suffered an injury resulting from Commerce's use of the Cohen's *d* test because Commerce in fact used the average-to-average method to determine the margin of dumping. *See* Def. MJAR Br. at 34. Second, defendant argues that plaintiffs have failed to exhaust administrative remedies with respect to this claim. *Id.*

Defendant asserts that "plaintiffs do not possess standing" because they "have failed to show an injury-in-fact or an actual case or controversy arising from Commerce's use of the average-to-average methodology." *Id.*

The "irreducible constitutional minimum of standing" requires three elements: (1) plaintiffs must have suffered an injury in fact; (2) there must be a causal connection between the injury and the conduct objected to; and (3) it must be likely that the injury will be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

The Supreme Court has defined an "injury in fact" as "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (internal quotation marks omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Defendant argues that "plaintiffs have not alleged an 'injury-in-fact' with respect to Commerce's application of differential pricing because Commerce used the 'average-to-average' method and not the 'average-to-transaction' method." Def. MJAR Br. at 39.

Moreover, defendant explains that "the results of the Cohen's *d* test did not change Commerce's calculation of a weighted-average dumping margin" for the Ashley Respondents. *Id.* Defendant insists that "there is no injury that would be redressed by a favorable decision." *Id.*

In the *Preliminary Determination*, Commerce determined that although "75.60 percent of [plaintiffs'] export sales pass the Cohen's *d* test, and . . . [there is] a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or time periods," the average-to-average method was nonetheless appropriate. PDM at 28.

Further, Commerce determined that "there is not a meaningful difference in the weighted-average dumping margins when calculated using the average-to-average method and an alternative method based on the average-to-transaction method applied to the U.S. sales which pass the Cohen's *d* test." *Id.*

Plaintiffs rely on *Stupp*, a case in which the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") explained that the violation of the assumptions that the data groups being compared are normally distributed, have equal variability and are equally numerous "can subvert the usefulness of the interpretative cutoffs, transforming what might be a conservative cutoff into a meaningless comparator." *Stupp,* 5 F.4th at 1360. Plaintiffs argue that, like in *Stupp*, Commerce here "failed to explain whether the Ashley Respondents' sales data conformed with the underlying assumptions necessary for the Cohen's *d* test, specifically whether the test and comparison groups were normally distributed, equally variable, and equally numerous." Pls. MJAR Br. at 46-47.

Plaintiffs' reliance on *Stupp* is misguided.  There, the Federal Circuit examined Commerce's use of a "hybrid approach in which it applie[d] the alternative average-to-transaction method to those transactions passing the Cohen's *d* test and the average-to-average method to the remainder of the transactions."  *Stupp*, 5 F.4th at 1347.  Here, Commerce applied the average-to-average method exclusively.  *See* Final Analysis Memorandum at 5-6.

The court concludes that plaintiffs did not suffer an injury in fact.  Commerce employs the differential pricing analysis, and thereby the Cohen's *d* test, to determine whether to select an alternative comparison methodology.  *See Differential Pricing Analysis*.  Because Commerce's use of the test here did *not* result in the selection of an alternative comparison methodology, there is nothing more than a "conjectural" or "hypothetical" injury here.  *Lujan*, 504 U.S. at 560; *see* PDM at 25-28.  Accordingly, plaintiffs have failed to establish the "irreducible constitutional minimum" of standing.[9]  *Lujan*, 504 U.S. at 560.

## CONCLUSION

For the foregoing reasons, the court sustains the Remand Results and the relevant portions of the *Final Determination*.  Judgment will enter accordingly.

/s/ Timothy M. Reif
Timothy M. Reif, Judge

Dated:  December 20, 2024
       New York, New York

---

[9] The court need not reach defendant's second argument that "plaintiffs have failed to exhaust their administrative remedies" with respect to this claim because plaintiffs have not established standing to challenge Commerce's use of the Cohen's *d* test.  Def. MJAR Br. at 34.